RUTAN & TUCKER, LLP
Proud Usahacharoenporn (State Bar No. 278204)
pusaha@rutan.com
Briana Richmond (State Bar No. 301824)
brichmond@rutan.com
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone:   714-641-5100
Facsimile:   714-546-9035

Attorneys for Plaintiff
CONSUMERDIRECT, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMERDIRECT, INC., a Nevada corporation,<br><br>       Plaintiff,<br><br>    vs<br><br>PENTIUS, LLC, a Delaware limited liability company; ARRAY US, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br><br>**2. VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT [15 U.S.C. § 1125(d)]**<br><br>**3. FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION [15 U.S.C. § 1125(a)]**<br><br>**4. INTENTIONAL INTERFERENCE WITH CONTRACT**<br><br>**5. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**6. VIOLATION OF CAL. BUS. AND PROFS. CODE § 17200**<br><br>**7. COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT**<br><br>**8. TRADE LIBEL**<br><br>**9. UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Rutan & Tucker, LLP
*attorneys at law*

Plaintiff ConsumerDirect, Inc. ("Plaintiff") for its Complaint against defendants Pentius LLC ("Pentius"), Array US, Inc. ("Array"), and DOES 1 through 10, inclusive (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This action arises out of Defendants' scheme to infringe on Plaintiff's trademarks and domain names, defame Plaintiff, and unfairly compete with Plaintiff by using unlawful spoof websites, deceptive pricing, and other unfair practices to unlawfully compete with, and to deliberately damage Plaintiff.  Plaintiff seeks injunctive relief, damages, disgorgement, restitution, statutory penalties, punitive damages, attorneys' fees, and costs for trademark infringement, cybersquatting, false designation of origin, intentional interference with contract, intentional interference with prospective economic advantage, violation of California Business and Professions Code section 17200, *et seq*., and common law unfair competition, trade libel, and unjust enrichment.

## PARTIES

2.      Plaintiff is a Nevada Corporation with its principal place of business at 16795 Von Karman Ave., Suite 230, Irvine CA 92606.  Plaintiff has filed the required "Statement and Designation by Foreign Corporation" with the California Secretary of State in order to do business in California.

3.      On information and belief, Defendant Pentius is a Delaware limited liability company with its registered agent located at 8 The Green, Suite R, Dover, DE and its principal place of business located at 1201 N. Orange Street, Suite 7381, Wilmington, DE 19801.

4.      On information and belief, Defendant Array is a Delaware corporation with its registered agent located at 1209 Orange Street, Wilmington, DE, and its principal place of business located at 6 St. Johns Lane, New York, NY 10013.

5.      On information and belief, Plaintiff alleges that each of the defendants named herein as Does 1 through 10, inclusive, performed, participated in, or abetted

in some manner, the acts alleged herein, proximately caused the damages alleged below, and is liable to Plaintiff for the damages and relief sought herein.

6.     On information and belief, Plaintiff alleges that, in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the defendants was the agent and employee of each of the other defendants and was at all times acting within the course and scope of such agency and employment with the knowledge and approval of each of the other defendants.

7.     The identities of the individuals and entities named as Doe defendants herein are not presently known, but Plaintiff will seek to amend the Complaint to properly identify them when their proper names have been ascertained.

8.     On information and belief, at all times mentioned herein there existed a unity of interest and ownership between Defendants, such that any individuality and separateness among them has ceased, and that Defendants, and each of them, are the alter egos of each other.  On information and belief, Defendants have used the assets of the Defendants for each of their own purposes and uses and caused the assets of the other Defendants to be transferred to them without adequate consideration and without following corporate formalities.  On information and belief, Defendants have made payments to, and paid the expenses of, one another unrelated to their own respective businesses.

9.     On information and belief, Defendants have exercised complete control and dominance over one another, and have failed to follow corporate formalities.  On information and belief, each of the Defendants directly received for themselves the benefits of the transactions described herein and commingled assets and obligations of each other's with their own in contravention of the fiction of their separate existence.  Adherence to the fiction of the separate existence of Defendants as entities distinct from one another would permit an abuse of the corporate privilege and would promote a fraud and/or injustice.

**JURISDICTION AND VENUE**

10.     This action arises, in part, under the Lanham Act, 15 U.S.C. section 1114 *et seq.,* section 1125 *et seq.*  This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) & (b), and pendent jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are joined with substantially related claims under the Lanham Act.

11.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs and is between citizens of different states.

12.     This Court has personal jurisdiction over Defendants because, on information and belief, Defendants conduct business in and from this state using an interactive website that infringes on Plaintiff's trademarks and have directed their wrongdoing at Plaintiff in this state as alleged herein.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (3) because a substantial part of the events giving rise to the claims occurred in this District where Plaintiff maintains its principal place of business.

**FACTUAL ALLEGATIONS**

**A.     Background: Plaintiff is an Industry Leader in Credit Report and Monitoring Services**

14.     Plaintiff is an industry leader in consumer self-help financial services, including credit management, credit reporting services, credit counseling, and credit monitoring since at least 2009.  Plaintiff provides these services through numerous of its own websites such as smartcredit.com, idlock.com, and creditmonitoring.com.  Plaintiff also partners with other financial services companies and creates white labels and co-brands for them, which allows Plaintiff's partners to display and utilize Plaintiff's financial services on the partners' websites.

15.     Since at least as early as 2009, and before Defendants used any similar mark, Plaintiff or its predecessor-in-interest has continuously and prominently used

the Marks: (1) "SMARTCREDIT" and "SMARTCREDIT.COM" (the "SMARTCREDIT Marks"); (2) "IDLOCK" and "IDLOCK.COM" (the "IDLOCK.COM Marks"); and (3) CREDITMONITORING.COM (the "CREDITMONITORING Mark") to denote the source of its high-quality products and services.

16.     Plaintiff owns several federal trademark registrations on the United States Patent and Trademark Office's ("USPTO") Principal Register, including for the Mark "SMARTCREDIT" for goods and services in Classes 35, 36, and 42, Registration No. 6068903 dated June 2, 2020 and the Mark "SMARTCREDIT.COM" for goods and services in Classes 35, 36, and 45, Registration No. 3819295 dated July 13, 2010.  The Registration Certificates for the SMARTCREDIT Marks are attached hereto as Exhibits 1 and 2.  The SMARTCREDIT Marks is valid and subsisting and in full force and effect and constitutes conclusive evidence of Plaintiff's exclusive right to use the SMARTCREDIT Marks throughout the United States with respect to, *inter alia*, consumer self-help financial services.

17.     Plaintiff has committed significant amounts of time, effort, and money over the course of more than 12 years to developing a widely respected reputation through which the SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark have acquired secondary meaning indicating Plaintiff as the source of its high-quality goods and services.  Thus, before the acts complained of in this Complaint, members of the general consumer population, including over 4 million consumers who are members of Plaintiff's websites, recognized the SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark as exclusive source identifiers for goods and services relating to consumer self-help financial services as originating from, sponsored, or approved by Plaintiff.

18.     On information and belief, Plaintiff has the exclusive right to use the SMARTCREDIT Marks, IDLOCK.COM Marks, and

1  CREDITMONITORING.COM Mark in interstate commerce, and Plaintiff's use has
2  been exclusive since it first adopted the SMARTCREDIT Marks, IDLOCK.COM
3  Marks, and CREDITMONITORING.COM Mark with the exception of unauthorized
4  uses such as by Defendants as described in this Complaint.

5      19.    The SMARTCREDIT Marks, IDLOCK.COM Marks, and
6  CREDITMONITORING.COM Mark are valid and subsisting and remain in full
7  force and effect.

8      20.    Plaintiff has widely advertised, promoted, and sold goods and services
9  under its SMARTCREDIT Marks, IDLOCK.COM Marks, and
10  CREDITMONITORING.COM Mark in numerous and diverse advertising media
11  including print and the internet to promote the strength and renown of its
12  SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM
13  Mark.  Plaintiff has achieved a high level of commercial success in selling products
14  and services bearing or sold in connection with its SMARTCREDIT Marks,
15  IDLOCK.COM Marks, and CREDITMONITORING.COM Mark and has built a
16  valuable reputation and substantial goodwill, with which the SMARTCREDIT
17  Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark have
18  become synonymous.

19  **B.    Defendants Create Spoofs of Plaintiff's Websites, Infringe on**
20       **Plaintiff's Marks, and Engage In Other Unfair Competition**

21      21.    Defendants are competitors of Plaintiff who also provide consumer
22  self-help financial services and creates white labels and co-brands for other
23  companies to allow them to display and utilize Defendants' financial services on
24  their websites.

25      22.    Plaintiff recently discovered that Defendants have engaged in a variety
26  of fraudulent, unlawful, and unfair competitive acts directed at Plaintiff and at others
27  in the industry as detailed below.  Despite Plaintiff's cease and desist demand,
28  Defendants have failed and refuse to cease their wrongdoing, thus necessitating this

Rutan & Tucker, LLP
*attorneys at law*

1  lawsuit.

2      23.    Defendants' unfair business practices have been used to interfere with

3  and transfer millions of dollars in business away from Plaintiff's relationships with

4  its partner companies, including but not limited to, identityclub.com and its affiliates

5  ariusgroup.com & idclub.com, which has caused and is continuing to cause Plaintiff

6  harm.

7                  *Cybersquatting, Infringement, and False Designation*

8      24.    After Plaintiff's adoption and use of the SMARTCREDIT Marks,

9  IDLOCK.COM Marks, and CREDITMONITORING.COM Mark, Defendants

10  created financial services websites using infringing marks for the specific purpose of

11  unfairly competing with Plaintiff.  Specifically, Defendants created and operate: (1)

12  smartcreditview.com and smartcreditcollege.com, which are spoofs of Plaintiff's

13  website smartcredit.com; (2) theidlock.com, which is a spoof of Plaintiff's website

14  idlock.com; and (3) creditmonitoringsolutions.com, which is a spoof of Plaintiff's

15  website creditmonitoring.com (collectively, the "Cybersquatting Websites").  Upon

16  information and belief, Defendants intentionally created these Cybersquatting

17  Websites, which are confusingly similar to Plaintiff's website domains, with the bad

18  faith intent to profit from the goodwill that Plaintiff has built through its

19  SMARTCREDIT Marks, IDLOCK.COM Marks, and

20  CREDITMONITORING.COM Mark.

21      25.    Within the spoof websites, Defendants use the marks

22  "smartcreditview," "smartcreditcollege," and "theidlock," (hereinafter collectively

23  referred to as the "Infringing Marks"), which infringe on Plaintiff's

24  SMARTCREDIT Marks and IDLOCK.COM Marks.  Defendants' marketing

25  channels are highly similar to Plaintiff's marketing channels for its own goods and

26  services.

27      26.    Defendants are currently using the Cybersquatting Websites and

28  Infringing Marks in advertising, offering for sale and selling their financial services,

which use began well after Plaintiff's adoption and use of the SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark.

27. Defendants are not authorized to use the Cybersquatting Websites or Infringing Marks, or any domains or marks confusingly similar to the SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark in connection with their goods and services, nor are Defendants affiliated with Plaintiff.

28. Given the distinctive nature of the SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark, Defendants' use of the Cybersquatting Websites, SMARTCREDIT Marks and the IDLOCK.COM Marks or marks confusingly similar, including the Infringing Marks, is likely to cause confusion, mistake and deception such that members of the public are likely to be confused as to the affiliation, connection or relationship between Plaintiff and Defendants, and confused into believing Defendants' goods and services are endorsed by, sponsored by, or affiliated with Plaintiff when they are not.

29. In fact, Defendants' Cybersquatting Websites and Infringing Marks have already led to consumer confusion. Plaintiff has received numerous phone calls from consumers complaining and demanding refunds and the closing of their accounts, but upon further inquiry it was discovered that they signed up for membership with one of Defendants' Cybersquatting Websites and not one of Plaintiff's websites.

30. Especially given all of Defendants' other unlawful activities as alleged herein, any perceived association by consumers or the industry between Defendants' websites and Plaintiff causes direct harm to Plaintiff.

31. Plaintiff sent a cease and desist letter to Defendants on November 15, 2021, but Defendants refused to stop using the Cybersquatting Websites and Infringing Marks. Defendants have continued to refuse to cease and desist from use of the Cybersquatting Websites and Infringing Marks, continuing the financial

1  injury and damages to Plaintiff in an amount to be determined and rendering

2  Defendants' acts in violation of the Lanham Act willful.  As such, this is an

3  exceptional case within the meaning of the Lanham Act, 15 U.S.C. section 1117,

4  thereby entitling Plaintiff to damages, attorneys' fees, and costs.

5       32.    Plaintiff seeks injunctive relief to halt the irreparable harm caused by

6  Defendants' online and other advertising of financial services in a manner that

7  infringes the SMARTCREDIT Marks, IDLOCK.COM Marks, and

8  CREDITMONITORING.COM Mark.  Without an injunction, Defendants will

9  continue to offer financial services that infringe on the SMARTCREDIT Marks,

10  IDLOCK.COM Marks, and CREDITMONITORING.COM Mark.

11       *Unfair Competition and Extortion Relating to Spoof Websites*

12       33.    On information and belief, Defendants have attempted to, and in some

13  instances has succeeded, extort Plaintiff's partners into working with Defendants

14  instead of Plaintiff by creating spoofs of Plaintiff's partners' websites and

15  threatening to use these spoof websites to dilute Plaintiff's partners' brands, damage

16  their reputations, and steal away their consumers.  Defendants have also created and

17  deployed spoofs of Plaintiff's partner's websites in retaliation when Plaintiff's

18  partner rejects Defendants' invitation to transfer business away from Plaintiff to

19  Defendants.

20       34.    Defendants also pre-create various turn-key spoof websites, including

21  spoof websites of nationally known and trademarked brands, and market these turn-

22  key spoof websites to Plaintiff's partners as an incentive to stop doing business with

23  ConsumerDirect.  Defendants present these turn-key spoof websites and represent,

24  among other things, that businesses can simply select from 6 to 8 premade websites

25  that are ready to go, while concealing crucial information, such as the premade

26  websites are spoofs of other brands, and that permission has not been granted to

27  Defendants to use 3rd party protected trademarks and other intellectual property

28  depicted in the websites.

35.     On information and belief, Defendants created and operate, or have operated, the following spoof websites in addition to the Cybersquatting Websites, among others: (1) wisecreditkarma.com, a spoof of Credit Karma's creditkarma.com; (2) myficofuture.com, a spoof of myfico.com; (3) mycreditbliss.com, a spoof of creditbliss.com; (4) myfreecreditscoresnow.com, a spoof of myfreescorenow.com; (5) creditlifelock.com, a spoof of Norton's lifelock.com; (6) 3bcreditwatch.com, a spoof of Experian's creditwatch.com; and (7) truecreditview.com, a spoof of TransUnion's truecredit.com.[1]

36.     On information and belief, Defendants have set up a network of shell companies to operate these spoof websites in an attempt to hide their involvement, and then attempted to further hide the existence of the shell companies by recently taking all mention of these shell companies off of the websites.  For example, creditmonitoringsolutions.com used to state that a shell company, "Callandor, LLC" was the "proud owner of this website," but it has now been changed to state that "creditmonitoringsolutions.com is the proud owner of this website" in an attempt to conceal the website's connection to the shell company.  Additionally, each individual website is, or was before the ownership information was deliberately concealed, portrayed as being owned by a different company; i.e.,

---

[1]   Other such spoof websites include, but are not limited to: myscore.com, checkfreescore.com, clickfreescore.com, clickyourscores.com, identityprotect.com, secure.freescoreconnect.com, checkcredittoday.com, creditcosmo.com, creditscorefun.com, creditscoresforme.com, freecreditscoreseeker.com, getidentityprotect.com, goldencreditscores.com, goldfew.com, mycreditcosmo.com, scorehug.com, 3goldencreditscores.com, freescoreclick.com, havisant.com, lovemyscores.com, ocuseek.com, procredit.com, tenchant.com, tenzant.com, and trontus.com.  Defendants are constantly deactivating and reactivating their websites, likely in recognition of the illegality of their websites and/or in response to red flags that many in the industry have raised about their legitimacy.  For example, Defendants' websites wisecreditkarma.com and truecreditview.com appear to have been taken down completely as of Nov 1st, 2021 but are now live again as of Nov 14th, 2021.

checkfreescore.com (UU Marketing), 3freeonlinescores.com (Qualfour, LLC), 3gldscr.com (Golden Few LLC), as well as many others.  Each of these shell companies has an associated address that appears to be unoccupied, some even available for rent; i.e., UU Marketing at 5100 Buckeystown Pike Suite 250, Frederick, MD 21704 and Manna Marketing Group, LLC at 4845 Pearl East Circle Suite 101 Boulder, CO 80301.

37.    Defendants' shell companies,[2] and the random persons identified as owning the companies, are not qualified to be running credit report and monitoring businesses.  For example, truecreditview.com was registered to an individual by the name of Brett Horan, who is related to other individuals identified as the registered owners of the other spoof websites.  Mr. Horan has a longstanding career in the landscaping business, which is actively and currently being promoted on his social media account, yet he has no experience whatsoever in the credit report or monitoring industry or anything similar.  This demonstrates that these individuals are being used by Defendants to obfuscate ownership of the shell companies.

38.    Despite Defendants' attempt to hide their involvement, Plaintiff is informed and believes that Defendants are behind each of these spoof websites because they all share the same ASN and IP addresses tracing back to a company called System Admin, LLC, which is owned by Michael LaSala, who is a Director of Pentius and files all of Pentius' annual reports.  Many of the shell companies under which the websites are operated are also connected to Mr. LaSala.  Moreover, there are substantial similarities between all of the websites, including nearly

---

[2]    These include, but are not limited to: Promutus, Barbaros LLC, Boudica LLC, Cosemblant, CredCall, Crown Voice, Fraktle LLC dba Boudica, Fraktle LLC dba Enjeo, Gem Marketing LLC, Golden Few LLC, Golden Scores LLC, Habeor LLC, Norscore Inc., Norscore LLC, Payvant LLC, Pentius Holding Inc., Pentius Inc., Reportech LLC, Star Bright Services LLC, Strevik LLC, System Admin LLC, Tanasie Scores LLC, TelBasis LLC, Trivase LLC, Voyso LLC, YZ Commerce LLC, and Bresone LLC.

1  identical footers and member services.  On information and belief, Defendants

2  directly manage over 450 of these websites[3] that have been established by Mr.

3  LaSala.

4      39.    Plaintiff and others have demanded that Defendants cease and desist

5  these unlawful activities of creating spoof websites and using them to unfairly

6  compete, but Defendants have refused.

7                              *Trade Libel*

8      40.    On information and belief, Defendants falsely told partners of Plaintiff

9  that Plaintiff provides consumers with outdated credit reports that are up to two

10 weeks old, in an attempt to divert the partners' business from Plaintiff to

11 Defendants.  These representations are false, and Defendants have no basis for

12 believing them to be true.

13          *Unfair Competition Relating to Merchant Processing Accounts*

14     41.    On information and belief, Defendants fail to timely answer their

15 customer service lines in response to requests to cancel memberships, which has

16 resulted in an alarming number of chargebacks.  Rather than dealing with consumer

17 calls and resulting chargebacks in a proper manner required by Card Processing

18 Networks, Defendants created hundreds of merchant processing accounts[4] using

19 their hundreds of fraudulent shell corporations and hundreds of fraudulent websites

20 in an attempt to hide the significant consumer service and chargeback problems.

21 These merchant processor accounts have also been set up under various names of

22

23 [3]   These include, but are not limited to these strange and nefarious website names:
   SVCRT.com, CRDFX.com, GETIDP.com, CHKSCR.com, CRSCR.com,
24 CSFRME.com, SCRHUG.com, CSMBLT.com, GFW*3GLDSCR.com,
   GLDSCR.com, RPTMYSCORE.com, SRVTS.com, GLDFEW.com,
25 SCRSHIN.com, SCRSWT.com, SCRZNI.com, and SCCRSH.com.

26 [4]   The merchant processing IDs include, but are not limited to: Norscore LLC,
   CredCall LLC, Norscore Inc., GoldenFew LLC, Golden Scores LLC, Tanasie
27 Scores LLC, Identech LLC, Repairtech LLC, Reportech LLC, Cosemblant LLC,
   and Promeritum Limited.
28

1   friends and families of those associated with Defendants to further conceal

2   ownership of these issues.

3         42.     For example, a member of Defendants' smartcreditview.com spoof

4   website reported that their credit card was charged by three different merchant

5   processors under three different website names for their smartcreditview.com

6   membership fees using the billing names of smartcreditviewcom,

7   scorechecksecurecom, and mycreditviewercom over the course of just six

8   consecutive months.

9                *Unfair Competition Relating to 3-Bureau Credit Reports*

10        43.     It is industry standard for credit report companies such as Plaintiff and

11   Defendants to pay different prices to the credit reporting agencies depending on

12   whether they are purchasing: (1) individual credit reports from one credit reporting

13   agency; or (2) 3-Bureau Credit Reports ("3B Reports") that combine credit reports

14   from the three main credit reporting agencies.  Per the credit reporting agencies'

15   standard contracts, the higher 3B Reports price must be paid even if the credit

16   reporting companies purchase individual credit reports for the purpose of presenting

17   them as 3B Reports or the equivalent.

18        44.     Defendants circumvented these requirements by purchasing credit

19   reports individually, at lower prices, and then packaging them together and selling

20   them to consumers as "3B Reports" at prices substantially lower than the established

21   3B Reports costs that all other credit companies are bound to pay.  Defendants have

22   thus deceptively presented these 3B Reports to consumers as legitimate 3B Reports,

23   when, in fact, they are not legitimate.  Furthermore, Defendants employ

24   sophisticated measures to deliberately obfuscate this conduct.  Such conduct is

25   prohibited by industry standards and the effects of such conduct is to significantly

26   threaten or harm competition because Defendants are selling 3B Reports at prices

27   that are significantly lower than all other credit companies' costs.

28

Rutan & Tucker, LLP
*attorneys at law*

1   *Fraud and Misrepresentation Relating to Relationships with Credit Reporting*

2   *Agencies*

3       45.    Defendants misrepresented in marketing materials and in recent

4   publicly available video footage that Array purchases products directly from the all

5   three main credit reporting companies, but Array does not have valid contracts

6   directly with all three credit reporting companies.  For those credit reporting

7   agencies that Defendants do have any relationship with, Defendants are violating the

8   terms of those relationships by fraudulently ordering credit reports and

9   misclassifying the use thereof as 3B Reports, as detailed above.

10   *Reselling of Consumer Information*

11       46.    Defendants also admitted in recent publicly available video footage to

12   sharing raw consumer data freely with third parties.  On information and belief,

13   Defendants' websites send full, raw, and unredacted credit report data to third

14   parties.  This use of consumer data is fraudulent, improper, and unfair given

15   Defendants make specific representations to consumers about the privacy and use of

16   their personal information, and presumably have provided contractual assurances

17   that match industry standards stating that they will not share consumer information

18   with anyone other than the consumer to whom it pertains.  This conduct also

19   violates the GLB Privacy Rule and Safeguards Rule by failing to properly advise

20   consumers about how their personal information is processed.

21   *Failure to Safeguard and Secure Consumer Information*

22       47.    On information and belief, Defendants fail to employ meaningful

23   security controls to adequately protect the confidentiality, integrity, and availability

24   of the sensitive personal information of consumers.  Within Defendants' website,

25   there are multiple references to PCI requirements for transferring and storing credit

26   report data, yet no further evidence of Defendants actually obtaining PCI

27   compliance is shown within the site.  Moreover, PCI is the authority that upholds the

28   standards for credit card and payment processing data practices, and not the storing

of credit report data.  The use of these terms is an attempt, by Defendants, to misrepresent the security of the credit report data sharing and lack of proper data storing practices.

48.    Defendants websites also have a list of APIs that lacks meaningful security because they do not limit the delivery of the credit data, therefore allowing the data to be stored by each third-party partner in an unregulated method.  The failure to have proper security measures in place puts consumers and other providers at risk of data breaches, in violation of various protections such as the Gramm-Leach-Bliley Act (16 C.F.R. § 314.3), Cal. Civ. Code § 1798.81.5, and Cal. Civ. Code § 1798.150.

### *Compliance with Laws & Regulations*

49.    Defendants fail to comply with some of the most basic laws & regulations, for example, Defendants operate numerous websites with no service of process contact information in violation of Cal Corporations Code § 1502; operate websites with no working or viable contact information in violation of Civil Code §§ 1798.83 and 1798.130; operate websites (including the spoofs of Plaintiff's websites) with Terms & Conditions and Privacy links that do not work in in violation of Cal Bus. And Prof. Code § 22575 *et seq.*; and list data sharing practices that directly conflict with the California Consumer Privacy Act and other such similar regulations, with which the websites falsely claim compliance.

## **FIRST CAUSE OF ACTION**

### **Federal Trademark Infringement**

### **[15 U.S.C. § 1114]**

50.    Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

51.    By the acts and omissions set forth above, Defendants have infringed and continue to infringe Plaintiff's federally registered trademark rights in violation

of Section 32 of the Lanham Act, 15 U.S.C. section 1114.  Defendants' conduct and use of the SMARTCREDIT Marks or marks confusingly similar to the SMARTCREDIT Marks is likely to cause confusion, mistake, and deception among the general purchasing public as to the affiliation, connection, association, origin, sponsorship or approval of Defendants' goods and services, and interfere with Plaintiff's ability to use its SMARTCREDIT Marks to indicate a single quality control source of goods and services.

52.     Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law.  Plaintiff is therefore entitled to a preliminary and permanent injunction against further infringing conduct by Defendants.

53.     Defendants have profited and are profiting by such infringement and Plaintiff has been, and is being, damaged by such infringement.  Plaintiff is therefore entitled to recover damages from Defendants in an amount to be proved at trial as a consequence of Defendants' infringing activities.

54.     Plaintiff sent a cease and desist letter to Defendants on November 15, 2021, but Defendants refused to stop using the Infringing Marks.  Defendants have continued to refuse to cease and desist from use of the Infringing Marks, causing financial injury and damages to Plaintiff in an amount to be determined and rendering Defendants' acts in violation of the Lanham Act willful.  As such, this an exceptional case within the meaning of the Lanham Act, 15 U.S.C. section 1117, thereby entitling Plaintiff to damages, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

### Violation of the Anti-Cybersquatting Consumer Protection Act

### [15 U.S.C. § 1125(d)]

55.     Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

56. Defendants' acts as alleged herein with respect to their Cybersquatting Websites constitute a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

57. As alleged above, Plaintiff has valid and subsisting ownership rights in the SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark, which marks are distinctive and famous.

58. Defendants' aforesaid use of the Cybersquatting Websites is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods and services, in that purchasers are likely to believe that Plaintiff authorizes or controls the advertising, offering, or sale of Defendants' goods and services described above, or that Defendants are associated with or authorized by Plaintiff to advertise, offer, or sell those goods and services.

59. Defendants use the Cybersquatting Websites with a bad faith intent to profit from the distinctiveness and goodwill of Plaintiff's SMARTCREDIT Marks, IDLOCK.COM Marks, and CREDITMONITORING.COM Mark.

60. Defendants' conduct constitutes violations of the Anti-Cybersquatting Consumer Protection Act that has violated, and unless restrained and enjoined by this Court will continue to violate, Plaintiff's rights to its domain names, and has caused irreparable harm, damage, and injury to Plaintiff's goodwill and business reputation.

61. Plaintiff has been and continues to be irreparably injured as a result of Defendants' infringement and wrongful acts and has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction requiring Defendants to forfeit and cancel the Cybersquatting Websites. Plaintiff is further entitled to statutory damages under the Anti-Cybersquatting Consumer Protection Act.

62. Plaintiff sent a cease and desist letter to Defendants on November 15, 2021, but Defendants refused to stop using the Cybersquatting Websites.

1   Defendants have continued to refuse to cease and desist from use of the

2   Cybersquatting Websites, causing financial injury and damages to Plaintiff in an

3   amount to be determined and rendering Defendants' acts willful.  As such, this an

4   exceptional case entitling Plaintiff to damages, attorneys' fees, and costs.

5   **<u>THIRD CAUSE OF ACTION</u>**

6   **False Designation of Origin and Unfair Competition**

7   **[15 U.S.C. § 1125(a)]**

8       63.    Plaintiff repeats and incorporates by this reference each and every

9   allegation contained in each of the preceding paragraphs, inclusive, as though set

10   forth in full.

11       64.    Defendants' acts as alleged herein also constitute false designation of

12   origin and unfair competition in violation of Lanham Act section 43(a), 15 U.S.C.

13   section 1125(a).

14       65.    Defendants' aforesaid advertising, offering for sale, and sale of services

15   in connection with the Infringing Marks is likely to cause confusion, or to cause

16   mistake, or to deceive as to the affiliation, connection, or association of Defendants

17   with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods and

18   services, in that purchasers are likely to believe that Plaintiff authorizes or controls

19   the advertising, offering, or sale of Defendants' goods and services described above,

20   or that Defendants are associated with or authorized by Plaintiff to advertise, offer,

21   or sell those goods and services.

22       66.    Defendants' use in commerce of Plaintiff's SMARTCREDIT Marks

23   and IDLOCK.COM Marks, or marks confusingly similar to those marks, in

24   connection with Defendants' services constitutes a false designation of the origin

25   and/or sponsorship of such services, and falsely describes and represents such

26   services.

27       67.    Defendants' conduct constitutes unfair competition that has violated,

28   and unless restrained and enjoined by this Court will continue to violate, Plaintiff's

Rutan & Tucker, LLP
*attorneys at law*

1  trademark rights, and has caused irreparable harm, damage, and injury to Plaintiff's
2  goodwill and business reputation.

3       68.    Plaintiff has been and continues to be irreparably injured as a result of
4  Defendants' infringement and wrongful acts and has no adequate remedy at law.
5  Plaintiff is therefore entitled to a permanent injunction against further infringing and
6  unlawful conduct by Defendants.

7       69.    Defendants have profited and are profiting by such infringement and
8  Plaintiff has been and is being damaged by such infringement.  Plaintiff is therefore
9  entitled to recover damages from Defendants in an amount to be proved at trial as a
10  consequence of Defendants' infringing and unlawful activities.

11       70.    Plaintiff sent a cease and desist letter to Defendants on November 15,
12  2021, but Defendants refused to stop using the Infringing Marks.  Defendants have
13  continued to refuse to cease and desist from use of the Infringing Marks, causing
14  financial injury and damages to Plaintiff in an amount to be determined and
15  rendering Defendants' acts in violation of the Lanham Act willful.  As such, this an
16  exceptional case within the meaning of the Lanham Act, 15 U.S.C. section 1117,
17  thereby entitling Plaintiff to damages, attorneys' fees, and costs.

18  **FOURTH CAUSE OF ACTION**
19  **Intentional Interference With Contract**

20       71.    Plaintiff repeats and incorporates by this reference each and every
21  allegation contained in each of the preceding paragraphs, inclusive, as though set
22  forth in full.

23       72.    Plaintiff had valid contracts with partner companies such as, but not
24  limited to, identityclub.com and its affiliates ariusgroup.com & idclub.com to which
25  Defendants were not a party.

26       73.    On information and belief, Defendants knew of the existence of
27  Plaintiff's contracts with its partners and, with the intent to interfere with such
28  contracts, caused a disruption of such contracts by, among other things, threatening

1  Plaintiff's partners with spoof websites and offering unfair 3B Reports prices, as
2  further alleged above.

3      74.    Defendants' misconduct is the direct and proximate cause of damages
4  to Plaintiff.

5      75.    Plaintiff is entitled to compensatory damages in an amount to be
6  determined at trial as well as disgorgement of all revenues and profits associated
7  with Defendants' interference.

8      76.    Defendants' misconduct was malicious, oppressive, and in reckless
9  disregard of Plaintiff's rights under California law.  Actual harm has been inflicted
10 on Plaintiff as a result of that misconduct, and Plaintiff is therefore entitled to an
11 award of punitive damages in an amount sufficient to punish Defendants for their
12 actions.

13     77.    Plaintiff has been and continues to be irreparably injured as a result of
14 Defendants' interference and has no adequate remedy at law.  Plaintiff is therefore
15 entitled to a permanent injunction against further interference by Defendants.

### FIFTH CAUSE OF ACTION

**Intentional Interference With Prospective Economic Advantage**

18     78.    Plaintiff repeats and incorporates by this reference each and every
19 allegation contained in each of the preceding paragraphs, inclusive, as though set
20 forth in full.

21     79.    Plaintiff had existing economic relationships with partner companies
22 such as, but not limited to, identityclub.com and its affiliates ariusgroup.com &
23 idclub.com to which Defendants were not a party and that were reasonably likely to
24 produce an economic advantage to Plaintiff.

25     80.    On information and belief, Defendants knew of the existence of
26 Plaintiff's relationships with its partners and, with the intent to interfere with such
27 relationships, caused an actual disruption of such relationships by, among other
28 things, threatening Plaintiff's partners with spoof websites and offering unfair 3B

Rutan & Tucker, LLP
*attorneys at law*

1  Reports prices, as further alleged above.

2      81.   Defendants' conduct was independently wrongful because it infringed

3  upon Plaintiff's and others' intellectual property rights and constituted fraudulent

4  and unlawful conduct as detailed above.

5      82.   Defendants' misconduct is the direct and proximate cause of damages

6  to Plaintiff.

7      83.   Plaintiff is entitled to compensatory damages in an amount to be

8  determined at trial as well as disgorgement of all revenues and profits associated

9  with Defendants' interference.

10      84.   Defendants' misconduct was malicious, oppressive, and in reckless

11  disregard of Plaintiff's rights under California law.  Actual harm has been inflicted

12  on Plaintiff as a result of that misconduct, and Plaintiff is therefore entitled to an

13  award of punitive damages in an amount sufficient to punish Defendants for their

14  actions.

15      85.   Plaintiff has been and continues to be irreparably injured as a result of

16  Defendants' interference and has no adequate remedy at law.  Plaintiff is therefore

17  entitled to a permanent injunction against further interference by Defendants.

18              **<u>SIXTH CAUSE OF ACTION</u>**

19      **Unfair Competition per Cal. Business & Professions Code § 17200**

20      86.   Plaintiff repeats and incorporates by this reference each and every

21  allegation contained in each of the preceding paragraphs, inclusive, as though set

22  forth in full.

23      87.   Plaintiff has suffered injury in fact and has lost money as a result of

24  Defendants' unfair competition, including by losing partners such as, but not limited

25  to, identityclub.com and its affiliates ariusgroup.com & idclub.com, and therefore

26  has standing to pursue this claim.

27      88.   Defendants' conduct and actions as alleged herein, including without

28  limitation Defendants' trademark infringement, cybersquatting, spoofing scheme,

1   unfair pricing, fraud on the public, and violation of other laws as detailed above,

2   constitute unfair, unlawful, and fraudulent conduct.  Defendants have no valid or

3   legitimate purpose for such conduct except to unfairly benefit Defendants at

4   Plaintiff's expense.

5         89.    Plaintiff is entitled to restitutionary damages and because Defendants

6   are likely to continue with their unlawful conduct absent an injunction, Plaintiff is

7   entitled to a preliminary and permanent injunction.

8                      **SEVENTH CAUSE OF ACTION**

9                      **Common Law Unfair Competition**

10        90.    Plaintiff repeats and incorporates by this reference each and every

11  allegation contained in each of the preceding paragraphs, inclusive, as though set

12  forth in full.

13        91.    Plaintiff has suffered injury in fact and has lost money as a result of

14  Defendants' unfair competition, including by losing partners such as, but not limited

15  to, identityclub.com and its affiliates ariusgroup.com & idclub.com, and therefore

16  has standing to pursue this claim.

17        92.    Defendants' conduct and actions as alleged herein, including without

18  limitation Defendants' trademark infringement, cybersquatting, spoofing scheme,

19  unfair pricing, fraud on the public, and violation of other laws as detailed above,

20  constitute unfair, unlawful, and fraudulent conduct.  Defendants have no valid or

21  legitimate purpose for such conduct except to unfairly benefit Defendants at

22  Plaintiff's expense.

23        93.    Plaintiff is entitled to restitutionary damages and because Defendants

24  are likely to continue with their unlawful conduct absent an injunction, Plaintiff is

25  entitled to a preliminary and permanent injunction.

26  ///

27  ///

28  ///

Rutan & Tucker, LLP
*attorneys at law*

2530/102119-0036
17203577

-22-
COMPLAINT

## EIGHTH CAUSE OF ACTION

### Trade Libel

94.     Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

95.     Defendants made false statements about Plaintiff to Plaintiff's partners, including that Plaintiff obtains outdated credit reports, without any basis for believing the statements to be true.  Such statements had a defamatory meaning because they lowered Plaintiff's reputation in the industry.

96.     Defendants intentionally made these false statements with the intent to harm Plaintiff and to steal business from Plaintiff.

97.     Plaintiff is entitled to compensatory damages in an amount to be determined at trial as well as disgorgement of all revenues and profits associated with Defendants' trade libel.

98.     Defendants' misconduct was malicious, oppressive, and in reckless disregard of Plaintiff's rights under California law.  Actual harm has been inflicted on Plaintiff as a result of that misconduct, and Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendants for their actions.

99.     Plaintiff has been and continues to be irreparably injured as a result of Defendants' interference and has no adequate remedy at law.  Plaintiff is therefore entitled to a permanent injunction against further interference by Defendants.

## NINTH CAUSE OF ACTION

### Unjust Enrichment

100.    Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

101.    Defendants' wrongful acts unjustly enriched Defendants by allowing

them to avoid the time and cost of lawfully conducting their business and abiding by industry standards, laws, and regulations that other credit reporting companies must abide by.

102. On information and belief, Defendants' wrongful acts unjustly enriched Defendants by allowing them to wrongfully benefit from years of effort and experience by simply copying Plaintiff's intellectual property and diverting business from Plaintiff.

103. Defendants' misconduct is the direct and proximate cause of damages to Plaintiff, and Plaintiff is entitled to compensatory damages in an amount to be determined at trial, as well as disgorgement of all revenues and profits associated with Defendants' wrongdoing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an order and judgment against Defendants as follows:

1. For an Order that Defendants, and each of them, their owners, partners, agents, servants, distributors, affiliates, employees, representatives, and all those in privity or acting in concert with Defendants or on their behalf, be permanently enjoined and restrained from, directly or indirectly:

a. Selling, offering to sell, advertising, displaying, or using the Infringing Marks, or any derivative thereof or any other mark similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the sale, advertising, marketing and promotion of their financial services;

b. Operating the Cybersquatting Websites;

c. Creating or operating any further spoof websites of Plaintiff's websites;

d. Extorting or attempting to extort Plaintiff's partners with use of any spoof websites or other similar harmful or threatening tactics;

1           e.      Making any further false statements about Plaintiff;

2           f.      Purchase individual credit reports for the purpose of deceptively

3 packaging them as 3B Reports or the equivalent;

4           g.      Making any further false statements about Defendants'

5 relationships with the credit reporting agencies;

6           h.      Sharing consumer credit report information with third parties

7 without the consumers' express permission;

8           i.      Operating websites with insufficient security measures; and

9           j.      Creating and using multiple merchant processing accounts for

10 each website in an attempt to conceal chargebacks and customer service

11 deficiencies.

12        2.      For an order requiring Defendants to deliver to Plaintiff's attorneys

13 within thirty (30) days after the entry of any injunction, to be impounded or

14 destroyed by Plaintiff, all graphics, literature, signs, labels, prints, packages,

15 wrappers, containers, advertising and promotional materials, products and any other

16 written materials or items in Defendants' possession or control that bear the

17 Infringing Marks, or any other mark similar thereto, together with all means and

18 materials for making or reproducing the same, pursuant to 15 U.S.C. section 1118,

19 and other applicable laws;

20        3.      For an order requiring Defendants to permanently deactivate the

21 Cybersquatting Websites;

22        4.      For an order requiring Defendants to file with the Clerk of this Court

23 and serve Plaintiff, within thirty (30) days after the entry of any preliminary or

24 permanent injunction, a report in writing, under oath, setting forth in detail the

25 manner and form in which Defendants have complied with 1 through 3 above;

26        5.      For an award of Defendants' profits and Plaintiff's damages according

27 to proof at trial;

28        6.      For an order requiring Defendants to account for and pay to Plaintiff all

1  gains, profits and advantages derived by Defendants from the unlawful activities

2  alleged herein, and/or as a result of unjust enrichment;

3       7.    For statutory penalties;

4       8.    For an award of pre-judgment interest at the highest rate allowed by

5  law;

6       9.    For punitive damages;

7       10.    For restitution;

8       11.    For an award of Plaintiff's attorneys' fees, costs and expenses,

9  including but not limited to expert witness fees, incurred in this action, pursuant to

10  15 U.S.C. section 1117 and any other applicable statutes; and

11       12.    For such further relief as this Court shall deem just and proper.

12

13  Dated: December 1, 2021          Respectfully submitted

14                  RUTAN & TUCKER, LLP

15

16            By:  */s/ Proud Usahacharoenporn*

                  Proud Usahacharoenporn

17                    Attorneys for Plaintiff
                  ConsumerDirect, Inc.

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial

3     on all claims which are triable to a jury in this action.

4

5     Dated:  December 1, 2021                                    RUTAN & TUCKER, LLP

6

7                                                     By: */s/ Proud Usahacharoenporn*
                                                          Proud Usahacharoenporn
8                                                         Attorneys for Plaintiff
                                                          ConsumerDirect, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rutan & Tucker, LLP**
*attorneys at law*

2530/102119-0036
17203577

-27-
COMPLAINT