ROBERT J. NOLAN (Bar No. 235738)
robert.nolan@dlapiper.com
MATTHEW F. MILLER (Bar No. 172661)
matt.miller@dlapiper.com
HECTOR E. COREA (Bar No. 318971)
hector.corea@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel: 415.836.2500 | Fax: 415.836.2501

Attorneys for Defendant
ARRAY US INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMERDIRECT, INC., a Nevada corporation<br><br>     Plaintiff,<br>  v.<br><br>PENTIUS, LLC, a Delaware limited liability company; ARRAY US, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>     Defendants. | CASE NO. 8:21-CV-01968<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date:   February 8, 2022<br>Time:   10:00 a.m.<br>Crtrm:  6B, 6th Floor<br><br>Complaint Filed: December 1, 2021<br>Trial Date: None set |

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 9

II.   FACTUAL ALLEGATIONS ................................................................ 10
      A.    Plaintiff's Allegations of Misconduct ....................................... 11
      B.    Nonactionable and Irrelevant Inflammatory Allegations ..................... 12

III.  LEGAL STANDARD ........................................................................ 14

IV.   LEGAL ARGUMENT ....................................................................... 14
      A.    The Complaint Fails to State Any Claim for the Reasons Set Forth in
            Pentius' Motion to Dismiss ..................................................... 14
      B.    The Complaint Fails to Plausibly Plead Trademark Infringement ....... 15
      C.    The Complaint Fails to State an Anti-Cybersquatting Claim ............. 16
      D.    The Complaint Fails to State an Intentional Interference Claim ......... 18
      E.    Plaintiffs Fail to State a UCL Section 17200 Claim ...................... 23
            1.    Plaintiff's UCL Claim Fails as a Whole for Lack of Standing ..... 23
            2.    The Complaint Fails to Plausibly Allege a Claim Under Any
                  Prong of the UCL ......................................................... 25
      F.    Plaintiff Fails to State a Common Law Unfair Competition Claim ..... 28
      G.    The Complaint Fails to State A Trade Libel Claim ....................... 28
      H.    Plaintiff Cannot Allege a Plausible Unjust Enrichment Claim .......... 31

V.    PLAINTIFF'S EQUITABLE CLAIMS FAIL BECAUSE IT HAS NOT
      ALLEGED INADEQUATE REMEDIES AT LAW ...................................... 32

VI.   CONCLUSION .............................................................................. 33

# TABLE OF AUTHORITIES

Page

**CASES**

*A. F. Arnold & Co. v. Pac. Pro. Ins., Inc.,*
    27 Cal. App. 3d 710 (1972) ...................................................................21, 22

*Ahmadi v. Nationstar Mortgage, LLC,*
    2016 WL 7495826 (C.D. Cal. Mar. 31, 2016) ...................................... 14

*Almont Ambulatory Surgery Ctr., LC v. UnitedHealth Grp., Inc.,*
    No. CV 14-3053-MWF(VBKX), 2015 WL 12777091
    (C.D. Cal. Feb. 12, 2015) ....................................................................27

*Amid v. Hawthorne Cmty. Med. Grp., Inc.,*
    212 Cal. App. 3d 1383 (1989) ............................................................ 19

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
    7 Cal. 4th 503 (1994) .........................................................................20

*Arcsoft, Inc. v. Cyberlink Corp.,*
    153 F. Supp. 3d 1057 (N.D. Cal. 2015) .............................................. 17

*Arevalo v. Bank of Am. Corp.,*
    850 F. Supp. 2d 1008 (N.D. Cal. 2011) ..............................................32

*Baggett v. Hewlett-Packard Co.,*
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ..............................................32

*Beckett v. Urb.,*
    No. CV 15-1407-R, 2015 WL 12552044 (C.D. Cal. July 6, 2015) ................... 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................14, 15, 20

*Bluestem Advisors LLC v. Eventure Interactive, Inc.,*
    No. SACV1602085AGJCGX, 2017 WL 3047895
    (C.D. Cal. Apr. 17, 2017) .................................................................. 21

*Bravado Int'l Grp. Merch. Servs., Inc. v. Gearlaunch, Inc.,*
    No. CV-16-08657 MWF (CWx), 2017 WL 5592911, at *2
    (C.D. Cal. June 15, 2017) .................................................................. 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

*Campos v. Metabolic Rsch., Inc.*,
  No. CV 09-9445-VBF(DTBX), 2010 WL 11597578
  (C.D. Cal. Apr. 27, 2010) ................................................................ 32

*Causey v. Portfolio Acquisitions, LLC, et al.*,
  No. 2:10-CV-2781-KJM-EFB-PS, 2012 WL 3915137
  (E.D. Cal. Sept. 7, 2012) ................................................................ 24

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) .................................................................... 26

*Code Rebel, LLC v. Aqua Connect, Inc.*,
  No. CV 13-4539, 2013 WL 5405706 ...................................... 29, 30

*Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC*,
  No. CV 20-5486 DSF (ADS), 2021 WL 3193224 (C.D. Cal. June 15, 2021)... 24

*DirecTV, LLC v. E&E Enterprises Glob., Inc.*,
  No. 2:17-06110-DDP-PLA, 2018 WL 707964 (C.D. Cal. Feb. 5, 2018) .......... 26

*DSPT Int'l, Inc. v. Nahum*,
  624 F.3d 1213 (9th Cir. 2010) ........................................................ 16

*Dunham v. Cty. of Monterey*,
  No. 18-CV-04467-EDL, 2019 WL 4305515 (N.D. Cal. Sept. 11, 2019) .......... 29

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ....................................................... 31

*Eldorado Stone v. Renaissance Stone, Inc.*,
  No. 04–cv–2562 JM, 2005 WL 5517731 (S.D. Cal. Aug. 9, 2005)................. 30

*Elec. Indus. Serv. Bureau, Inc. v. Phila. Indemnity Co.*,
  18-cv-2345-EDL, 2018 WL 7286502 (N.D. Cal. July 11, 2018) ..................... 27

*Erlich v. Etner*,
  224 Cal. App. 2d 69 (1964) ............................................................ 30

*F.M. Tarbell Co. v. A & L Partners, Inc.*,
  No. CV 10-1589 PSG EX, 2011 WL 1153539 (C.D. Cal. Mar. 23, 2011)........ 22

*First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*,
  569 F. Supp. 2d 929 (N.D. Cal. 2008).............................................. 30

4

*Ford v. Lehman Brothers Bank, FSB, et al.*,
   No. C-12-00842-CRB, 2012 WL 2343898 (N.D. Cal. June 20, 2012)..............23

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*,
   No. SACV1500789CJCDFMX, 2015 WL 12696203
   (C.D. Cal. Sept. 15, 2015) .................................................................................29

*Gemsa Enterprises, LLC v. Pretium Packaging, L.L.C.*,
   No. 821CV00844JVSJDEX, 2021 WL 4538376 (C.D. Cal. Sept. 7, 2021)......28

*Gemsa Enterprises, LLC v. Pretium Packaging, LLC*,
   No. SACV21844JVSJDEX, 2021 WL 4551200 (C.D. Cal. July 27, 2021),
   *reconsideration denied sub nom*..........................................................................28

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)......................................................33

*Glesby Bldg. Materials Com v. 6233 San Leandro Street Par*,
   No. RG08402634, 2009 WL 6405345 (Cal. Super. Mar. 27, 2009).................28

*Green Crush LLC v. Paradise Splash I, Inc.*,
   No. SACV1701856CJCJDEX, 2018 WL 4940824 (C.D. Cal. Mar. 8, 2018)...25

*Guess, Inc. v. Superior Ct.*,
   176 Cal. App. 3d 473 (1986) .............................................................................29

*Hana Fin., Inc. v. Hana Bank*,
   500 F. Supp. 2d 1228 (C.D. Cal. 2007)..............................................................14

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011)...........................................................................31

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013), *as amended on denial of reh'g*
   *and reh'g en banc* (July 8, 2013) .......................................................................24

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
   No. CV 14-03954 DDP, 2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) ............31

*In re ConAgra Foods Inc.*,
   908 F. Supp. 2d 1090 (C.D. Cal. 2012)..............................................................31

*In re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ...................................................... 33

*Ingels v. Westwood One Broad. Servs., Inc.*,
   129 Cal. App. 4th 1050 (2005) ........................................................................... 25

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
   70 F. Supp. 3d 1105 (ND. Cal. 2014) ................................................................ 28

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*,
   12 F.Supp.2d 1035 (C.D. Cal. 1998) ............................................................ 30, 31

*Jensen v. Quality Loan Service Corp.*,
   702 F.Supp.2d 1183 (E.D. Cal. 2010) ................................................................ 24

*Kane v. Delong*,
   No. CV 13-05021-KAW, 2014 WL 894587 (N.D. Cal. Mar. 4, 2014) ............. 19

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................... 27

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134, 63 P.3d 937 (2003) ............................................................... 18

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ....................................................................................... 24

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
   998 F. Supp. 2d 890 (C.D. Cal. 2014) ............................................................... 18

*Lazo v. Bank of America, N.A.*,
   No. C-12-00762-LB, 2012 WL 1831577 (N.D. Cal. May 18, 2012) ................. 24

*Leader v. Health Indus. of Am., Inc.*,
   89 Cal. App. 4th 603 (2001) .............................................................................. 19

*Lesley v. Ocwen Fin. Corp., et al.*,
   No. SA-CV-12-1737-DOC-JPRx, 2013 WL 990668
   (C.D. Cal. Mar. 13, 2013) ................................................................................. 27

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*,
   No. CV119514PSGJCGX, 2013 WL 12123772 (C.D. Cal. Feb. 26, 2013) ...... 25

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

*Marcus v. Bank of Am., NA*,
 No. CV 19-1747 PA, 2019 WL 6357254 (C.D. Cal. Aug. 15, 2019) ............... 23

*Melchior v. New Line Prods., Inc.*,
 106 Cal. App. 4th 779 (2003) ............................................................... 31

*name.space, Inc. v. Internet Corp. for Assigned Names &*
 *Numbers*, No. CV 12-8676 PA ....................................................... 20, 21

*New.Net, Inc. v. Lavasoft*,
 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................................ 30

*Oliver v. Ralphs Grocery Co.*,
 654 F.3d 903 (9th Cir. 2011) ............................................................... 15

*OneWest Bank v. Corporation Trust Co.*,
 2012 WL 12952320 (C.D. Cal. Mar. 5, 2010) .................................... 14

*Pacific Gas & Electric Co. v. BearStearns & Co.*,
 50 Cal.3d 1118 (1990) ......................................................................... 18

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
 946 F. Supp. 2d 957 (N.D. Cal. 2013), aff'd,
 609 F. App'x 497 (9th Cir. 2015) ...................................................... 22

*Precise Aerospace Mfg., Inc. v. MAG Aerospace Indus., LLC*,
 No. CV 17-01239 RGK (AJW), 2018 WL 3390151
 (C.D. Cal. Feb. 16, 2018) .................................................................. 25

*Robertson v. Dean Witter Reynolds, Inc.*,
 749 F.2d 530 (9th Cir. 1984) ............................................................... 14

*Saldate v. Wilshire Credit Corp.*,
 711 F. Supp. 2d 1126 (E.D. Cal. 2010) ......................................... 23, 25

*Santa Barbara Smokehouse, Inc. v. Aquachile, Inc.*,
 No. CV 19-10733-RSWL-JEM, 2020 WL 6743592 (C.D. Cal. July 7, 2020) .. 26

*Simonyan v. Ally Fin. Inc.*,
 No. CV 12-8495-JFW ........................................................................ 21

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020) ............................................................... 32

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

*Summit Machine Tool Manufacturing Corp. v. Victor GNC Systems, Inc.*,
  7 F. 3d 1434 (9th Cir. 1993) ............................................................. 18

*Sybersound Recs., Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ......................................................... 22

*Tatung Co. v. Shu Tze Hsu*,
  43 F. Supp. 3d 1036 (C.D. Cal. 2014) ............................................. 19

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................... 27

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ........................................................... 14

*Zaback v. Kellogg Sales Co.*,
  2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) .................................. 33

*Zora Analytics, LLC v. Sakhamuri*,
  No. 3:13-CV-639-JM (WMC), 2013 WL 4806510 (S.D. Cal. Sept. 9, 2013) ... 19

**STATUTES**

15 U.S.C. § 1125 ..................................................................................... 16

15 U.S.C. § 1125(c) ................................................................................ 17

15 U.S.C. § 1125(c)(2) ........................................................................... 17

15 U.S.C. § 1125(d)(ii)(II) ..................................................................... 17

15 U.S.C. § 1127 ..................................................................................... 16

Cal. Bus. & Prof. Code § 17200 ............................................... 10, 23, 25

Cal. Bus. & Prof. Code § 17204 .................................................... 23, 24

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..................................................... 15, 16, 27, 28

Fed. R. Civ. P. 12(b)(6) .......................................................................... 14

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

# I.     INTRODUCTION

Having failed to provide a competent business product or service in the ever-evolving credit data accessibility market, Plaintiff ConsumerDirect, Inc. ("CD" or "Plaintiff") now seeks to regain marketshare through litigation. Though littered primarily with scattershot, extraneous, false facts understandably alleged only "on information and belief," CD nevertheless seeks this Court's assistance to prevent Array US Inc. ("Array") and Pentius, LLC ("Pentius" and together with Array, "Defendants") from lawful competition simply and only because CD recently failed in that competitive marketplace.

Plaintiff's claims fail for numerous reasons, both collectively and independently. Defendants are separate legal entities with distinct businesses. Array is a business-to-business company that does not own or operate the websites alleged in the Complaint or sell credit reports to consumers, like CD.[1] Array has not and could not engage in the conduct alleged because it does not sell products to consumers.

With respect to the Lanham Act claims, Array does not own or operate the websites at issue. Further, Array has not engaged in unfair competition that would support a claim thereunder. With respect to the common law tort claims, CD alleges various claims related to a single customer—ID Club. No other "at issue" contracts or economic relationships are alleged. CD has repeatedly threatened ID Club with legal action – going so far as to engage in outright extortion, with counsel for CD not only lodging untrue allegations against Defendants, but directly stating to counsel for ID Club: "we reiterate our demand that your client immediately cease & desist all relations with Pentius & Array." ID Club has repeatedly responded noting that the

---

[1] It is also distinct from Pentius, as set forth in Pentius' Motion to Dismiss filed concurrently herewith, in which Array joins.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

1   allegations CD has made are untrue. Accordingly, the fourth and fifth claims for
2   intentional interference should be dismissed with prejudice.

3       Plaintiff's Unfair Competition Law claim ("UCL") under California Business
4   & Professions Code section 17200, *et al.*, is little more than a citation of naked
5   elements unsupported by the correlative facts. CD lacks standing to bring such a claim
6   because it has not alleged what money or property was allegedly lost. CD alleges
7   claims under all three prongs—unfair, unlawful, and fraudulent—yet fails to plead
8   fraud with particularity. Moreover, there is no unfair, unlawful, or fraudulent conduct
9   that CD alleges Array engaged in whatsoever. CD's final common law claims for
10  unfair competition, trade libel, and unjust enrichment also fail to meet basic pleading
11  elements and should be dismissed with prejudice.

12      All the while, and through the means of this misguided suit, CD actively
13  engages in unfair competition, making false, disparaging, and defamatory statements
14  to Array's investors and customers and threatening individuals by phone, letter, and
15  email. CD is attempting to use this case and strained interpretations of the litigation
16  privilege to cloak it and its counsel's deleterious conduct with "privilege." Defendants
17  intend to bring counterclaims seeking damages and injunctive relief based on this
18  conduct, and seek to recover fees under the Lanham Act, which provides for such
19  recovery where, as here, a party has brought frivolous claims to obtain an advantage
20  outside of the litigation, unrelated to securing a favorable judgment. Array requests
21  the Complaint be dismissed with prejudice.

22  ## II.    FACTUAL ALLEGATIONS

23      CD is a provider of "consumer self-help financial services, including credit
24  management, credit reporting services, credit counseling, and credit monitoring since
25  at least 2009." Compl. ¶ 14. CD alleges that Defendants are "competitors of Plaintiff
26  who also provide consumer self-help financial services" and create "white labels and

27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

co-brands for other companies to allow them to display and utilize Defendants' financial services on their websites." *Id*. ¶ 21.

### A.   Plaintiff's Allegations of Misconduct

The Complaint bases its claims on boilerplate allegations that "Defendants have engaged in a variety of fraudulent, unlawful, and unfair competitive acts directed at Plaintiff" that transferred "millions of dollars in business away from Plaintiff's relationships with its partner companies," including "identityclub.com and its affiliates ariusgroup.com & idclub.com," which has allegedly "caused and is continuing to cause Plaintiff harm." *Id*. ¶ 22-23.

CD alleges "Plaintiff or its predecessor-in-interest" used the marks "SMARTCREDIT," "SMARTCREDIT.COM," "IDLOCK," "IDLOCK.COM," and "CREDITMONITORING.COM" ("Plaintiff's Marks") since 2009. *Id*. ¶ 15. Plaintiff avers to owning a trademark registration for only the "SMARTCREDIT" and "SMARTCREDIT.COM" marks. *Id*. ¶ 16. CD further alleges that it "has committed significant amounts of time, effort, and money" to develop the SMARTCREDIT, IDLOCK.COM, and CREDITMONITORING.COM marks but avers on "information and belief" it has "the exclusive right to use" these marks. *Id*. ¶ 18.

The crux of the Complaint relies on CD's claim that "Defendants created [and operate] financial services websites" that allegedly infringe on Plaintiff's Marks. *Id.* ¶ 24. Specifically, CD alleges, "on information and belief," that Defendants "intentionally created" four "spoof" websites—smartcreditview.com," "smartcreditcollege.com," "theidlock.com," and "creditmonitoringsolutions.com"— that CD alleges are "confusingly similar to Plaintiff's website domains" and designed to "profit from the goodwill" of CD's alleged marks. *Id*. CD conclusorily alleges that Defendants use these "spoof" marks for the "advertising," "sale," and "selling" of their "financial services." *Id*. ¶ 26. CD cannot actually allege that Defendants own or operate these websites – Defendants do not. To the extent CD contends these are

1    "spoof" websites, that term has no legal meaning or import, and even a cursory

2    examination of the websites against CD's purported websites shows little to no

3    similarities. *See* RJN, Exs. 1-7.

4        A review of the websites themselves, including publicly-available domain

5    records, reveals no reference to Defendants' companies or their services. *Id*. In fact,

6    the documents that are incorporated by reference herein reflect that Defendants do not

7    own any of the claimed "spoof" websites. *Id*. Here, CD has chosen to use the term

8    "spoof" precisely because the websites do not infringe on any trademark owned by or

9    registered to CD, and CD cannot allege any facts demonstrating any alleged

10   infringement. Accordingly, CD's frivolous Lanham Act claims, and all other claims

11   based on these third-party websites, should be dismissed.

12       In support of its trade libel claim, the Complaint states a single allegation that

13   "[o]n information and belief, Defendants falsely told partners of Plaintiff that Plaintiff

14   provides consumers with outdated credit reports . . . in an attempt to divert the

15   partners' business from Plaintiff to Defendants." *Id*. ¶ 40.

16   **B.    Nonactionable and Irrelevant Inflammatory Allegations**

17       Aside from the aforementioned infringement and trade libel allegations, the

18   Complaint's remaining allegations concern wholly irrelevant contentions pled solely

19   to disparage Defendants' reputation in the marketplace. *Id*. ¶¶ 33-49. For instance,

20   CD devotes considerable attention to alleged "turnkey spoof" websites purportedly

21   created and used by Defendants to dilute third-party marks, including unidentified

22   "partners" of CD, all based on "information and belief." *Id*. ¶¶ 33-38. CD claims the

23   third-party non-infringing websites owned by certain customers are "spoofs" because

24   they, like thousands of other websites on the internet, offer credit reports from the

25   three credit reporting agencies – Transunion, Experian and Equifax – for sale. CD

26   nowhere alleges it was harmed by such websites or any cognizable basis for standing.

27   *Id*. CD's beef is largely with the credit reporting agencies and the prices they charge

28

CD, with which CD is clearly unhappy. The mere fact that Defendant was able to negotiate better deals with these agencies does not give rise to CD's undeniably frivolous legal claims. Moreover, the only allegations that attempt to tie Defendants to any of these "spoof" websites is a single sentence that "Plaintiff is informed and believes that Defendants" own the websites because they "all share the same ASN and IP addresses tracing back to a [nonparty] company called System Admin, LLC," that such company "is owned by Michael LaSala," and that Mr. LaSala is "a Director of Pentius and files all of Pentius' annual reports." *Id.* ¶ 38.

The vague, conclusory allegations in Paragraph 38 of the Complaint do not come close to stating any valid claim. CD does not even name any specific "spoof" website allegedly operated by System Admin, LLC or Mr. LaSala, let alone Array or Pentius. Nor does it allege with specificity *anything* on any "spoof" website which supposedly supports any claim by CD *against anyone*, whether against System Admin, LLC itself, Mr. LaSala, Array, or Pentius. And even if Paragraph 38 detailed anything on a website which allegedly supported a claim by CD (it doesn't), the Complaint also fails adequately to allege either Pentius or Array bear legal liability for such alleged conduct.

In short, the allegations in Paragraph 38 fail adequately to plead that any specific website engaged in conduct supporting a claim by CD, let alone against either Array or Pentius. Worse still, CD appears to contend that its ill-pled claims should be allowed to proceed on information and belief because CD does not have access to the registration records of the websites due to the protections afforded by the GDRP (General Data Protection Regulation). Hiding behind the GDPR does not provide cover for alleging frivolous federal claims.

CD also makes conclusory averments that Defendants "fail to timely answer their customer service lines;" obtain 3-Bureau credit reports that are "not legitimate . . . at lower prices;" purportedly "resell" and fail to secure consumer information; and

1   apparently "fail to comply" with "basic laws and regulations," through websites that

2   lack "service of process [ ] information." *Id.* ¶¶ 41-49. These allegations are based on

3   "information and belief" and CD nowhere even avers (nor could it) either its own

4   standing or how these allegations could support any claim for relief. *Id.*

5   **III.   LEGAL STANDARD**

6        A complaint must be dismissed as a matter of law under Rule 12(b)(6) when it

7   (1) "lack[s] a cognizable legal theory," or (2) states "insufficient facts under a cognizable

8   legal claim." *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.

9   1984); *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1232 (C.D. Cal. 2007).

10  While well-pled factual allegations in a complaint generally are assumed to be true, the

11  court may not accept as true unreasonable inferences or conclusory legal allegations.

12  *See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). At bottom, the

13  "[f]actual allegations must be enough to raise a right to relief above the speculative

14  level" and the complaint must include "enough facts to state a claim to relief that is

15  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

16  **IV.   LEGAL ARGUMENT**

17       **A.   <u>The Complaint Fails to State Any Claim for the Reasons Set Forth</u>**

18            **<u>in Pentius' Motion to Dismiss</u>**

19       At the outset, the Complaint fails to state any claims for the same reasons set

20  forth in Pentius' concurrently-filed Motion to Dismiss. Specifically, the Complaint

21  fails adequately to plead its alter ego allegations, on which all of its claims are based.

22  That pleading failure, alone, dictates dismissal of the Complaint in its entirety. The

23  Complaint also engages in conclusory group pleading and fails to distinguish between

24  any conduct attributable to each Defendant. *See e.g.*, *OneWest Bank v. Corporation*

25  *Trust Co.*, 2012 WL 12952320 (C.D. Cal. Mar. 5, 2010) ("Plaintiffs' allegations fail

26  to meet the basic pleading requirements of Rule 8(a) because they lump all of the

27  defendants together."); *Ahmadi v. Nationstar Mortgage, LLC*, 2016 WL 7495826 *2

28

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF<br>DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

1  (C.D. Cal. Mar. 31, 2016) (complaint must "indicate which individual defendant or

2  defendants [are] responsible for which alleged wrongful act."). Array joins in that

3  motion and has concurrently filed a joinder.

4      CD's claims also sound in fraud, yet CD fails to meet Rule 9(b)'s heightened

5  pleading standard for such claims. (*See* Pentius Motion to Dismiss). Aside from CD's

6  failure to state a claim under notice pleading standards (as discussed below), CD

7  wholly fails to meet the heightened pleading standards of Rule 9(b). The Complaint

8  should be dismissed accordingly.

9      **B.   The Complaint Fails to Plausibly Plead Trademark Infringement**

10      While the pleading standard is liberal, it requires pleading "more than labels

11  and conclusions, and a formulaic recitation of the elements of a cause of action will

12  not do." *Twombly*, 550 U.S. at 556. Stated differently, "the complaint must provide

13  'the defendant [with] fair notice of what the . . . claim is and the grounds upon which

14  it rests.'" *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (quoting

15  *Twombly*, 550 U.S. at 555).

16      The Complaint provides no detail as to the goods or services Defendants

17  offered under the allegedly infringing trademarks, alleging only that Defendants are

18  "advertising, offering for sale and selling [Defendants'] financial services" on four

19  different websites. Compl. ¶ 26. The Complaint, however, is bereft of detail as to the

20  type or nature of these "financial services."

21      The pleading here is similar to that in *Bravado Int'l Grp. Merch. Servs., Inc. v.

22  Gearlaunch, Inc.*, where the Court granted a motion to dismiss due to plaintiff's

23  failure to identify "how any act of infringement or unfair competition was

24  accomplished . . . ; when any of the incidents underlying [the] claims occurred; or

25  who among the gaggle of named Defendants specifically accomplished each alleged

26  act." No. CV-16-08657 MWF (CWx), 2017 WL 5592911, at *2 (C.D. Cal. June 15,

27  2017). Here, CD makes sweeping statements about various websites, none of which

28

Array owns and all of which offer different services. CD peppers the Complaint with broad statements about "Defendants" without reference to purportedly infringing acts. None of these allegations give Defendants notice of what "financial services" or products or services are alleged to be offered under the purportedly infringing marks. The Complaint's conclusory allegations against multiple defendants fail to provide notice of which defendants are alleged to have committed which actions.

Thus, the Complaint fails to meet even the basic standards of notice pleading, not to mention falling well short of the heightened standard of pleading under Rule 9(b), which, as is set forth in Pentius' Motion to Dismiss, is required here. It must be dismissed on this basis alone.

### C.    The Complaint Fails to State an Anti-Cybersquatting Claim

In an Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125, *et al.* ("ACPA") claim, a plaintiff must show that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218–19 (9th Cir. 2010). CD's claims under the ACPA fail because the Complaint fails to (1) allege that Defendants use domain names; and (2) allege any domain names are identical or confusingly similar to CD's trademarks.

The Complaint fails to allege that either Defendant registered, trafficked in, or used a domain name. The Complaint speaks only generally of alleged "creat[ion] and operat[ion]" of websites, not domain names. A "domain name" is "any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 U.S.C. § 1127. The ACPA only prohibits use of domain names.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

The Complaint references certain domain names "Defendants" allegedly "created and operate," but these allegations relate to "websites," not domain names. The only time the Complaint references Defendants' purported domain names, it calls them "spoofs" of CD's websites and collectively refers to them as the "Cybersquatting *Websites*." Compl. ¶ 24. Thus, the Complaint only alleges Defendants "created and operated" websites (without alleging *which* Defendant "created and operated" *which* websites), not that Defendants used any "domain names," as required by the ACPA.

Moreover, the Complaint fails to allege the domain names referenced in it are confusingly similar to CD's purported trademarks—yet another fatal flaw. Instead, the Complaint merely alleges, conclusorily, that "Defendants" purported websites are "spoofs" of CD's websites (*Id.* ¶ 24), even though the Defendants are two wholly separate companies that do not co-own anything. It also alleges that "Defendants" use various marks "which infringe on Plaintiff's SMARTCREDIT Marks and IDLOCK.COM Marks. *Id.* The Complaint never alleges that Defendants' purported websites—regardless of who owns those sites—are identical or confusingly similar to CD's purported trademarks.

Finally, while the Complaint alleges CD's marks are "famous," it fails to properly plead fame. A domain name may violate the ACPA if it is "identical or confusingly similar to or dilutive" of the plaintiff's famous trademark. 15 U.S.C. § 1125(d)(ii)(II). To establish a famous mark, a pleading must state sufficient allegations that its "mark is a household name." *Beckett v. Urb.*, No. CV 15-1407-R, 2015 WL 12552044, at *4 (C.D. Cal. July 6, 2015) (analyzing fame under 15 U.S.C. 1125(c)); *see also Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) (there is a "high bar to establishing dilution fame under 15 U.S.C. 1125(c)(2)."). Conclusory claims of fame are insufficient. *Id.* CD merely alleges that, over a 12-year period, it has "4 million consumers who are members of" its websites. Compl. ¶ 17. Without any further basis, CD claims that "members of the general

1   consumer population" recognize CD's purported trademarks. These allegations fall
2   far short of establishing famous marks.[2] For these reasons, CD's claims under the
3   ACPA should be dismissed.

4   **D.    The Complaint Fails to State an Intentional Interference Claim**

5       The Court should dismiss the Fourth and Fifth Causes of Action for tortious
6   interference with contract and prospective economic advantage. Taken at face value,
7   the allegations in support of the claims describe open market competition not
8   actionable under the law. At most, the Complaint only sets forth boilerplate recitations
9   of the claim's elements without factual support.

10      Under California law, intentional interference with contract or prospective
11  economic advantage requires (1) either a contract between plaintiff and a third party
12  or an economic relationship between the plaintiff and some third party, with the
13  probability of future economic benefit to the plaintiff; (2) the defendant's knowledge
14  of the contract or relationship; (3) intentional acts by the defendant to disrupt the
15  contract or relationship; (4) actual disruption of performance of the contract or the
16  relationship; and (5) economic harm to the plaintiff proximately caused by the acts of
17  the defendant. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,
18  1154, 63 P.3d 937, 950 (2003); *Pacific Gas & Electric Co. v. BearStearns & Co.*, 50
19  Cal.3d 1118, 1126 (1990). "Knowledge and intent are essential elements of an
20  intentional interference claim." *Summit Machine Tool Manufacturing Corp. v. Victor*
21  *GNC Systems, Inc.*, 7 F. 3d 1434, 1442 (9th Cir. 1993). Furthermore, "a plaintiff must
22  plead that the defendant engaged in an act that is wrongful apart from the interference
23  itself." *Korea Supply Co.*, 29 Cal. 4th at 1154.

24

25

---

26  [2] "The elements of federal and common law unfair competition claims are the same
27  as trademark infringement. *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F.
    Supp. 2d 890, 897–98 (C.D. Cal. 2014).

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

**Lack of Contract or Probable Economic Relationship:** At the outset, the Complaint identifies one contracting party/prospective economic relationship: "identityclub.com and its affiliates ariusgroup.com & idclub.com," but does not set forth any facts concerning which particular Defendant(s) committed the acts to interfere with such third parties. This alone warrants dismissal. *See Zora Analytics, LLC v. Sakhamuri*, No. 3:13-CV-639-JM (WMC), 2013 WL 4806510, at *6 (S.D. Cal. Sept. 9, 2013) (dismissing interference claims where the court could not determine each defendant's role in the alleged interference).

Moreover, the Complaint does not limit the intentional interference claims to such third parties, instead claiming relief for interference with all "partner companies such as, but **not limited to** [identityclub.com]." Compl. ¶¶ 72, 79 (emphasis added). To the extent CD seeks relief concerning unidentified third parties, CD's claim fails as a matter of law for lack of specificity. *See Amid v. Hawthorne Cmty. Med. Grp., Inc.*, 212 Cal. App. 3d 1383, 1392 (1989) ("appellant failed to sufficiently plead [] an economic relationship with a third party . . . [because] appellant's references to 'his medical practice, and in his right of employment with individual patients that he evaluated and treated, and that he might evaluate and treat in the future' [was] inadequate."); *Leader v. Health Indus. of Am., Inc.*, 89 Cal. App. 4th 603, 608 (2001) (affirming dismissal of tortious interference claim given lack "'of factual allegations that establish the prospective business relationships.'").

**No Scienter:** The Complaint fails to plausibly plead intent or knowledge. This is because CD's allegations of intent, based "[o]n information and belief," have no factual support, merely stating in a conclusory manner that "Defendants know of the existence of Plaintiff's relationships [and contracts] with its partners." Compl. ¶¶ 73, 80; *see Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1062 (C.D. Cal. 2014) (dismissing claims "because they are based on 'information and belief,' without providing 'the factual basis for the belief.'"); *Kane v. Delong*, No. CV 13-05021-

KAW, 2014 WL 894587, at *4 (N.D. Cal. Mar. 4, 2014) (dismissing claim based on information and belief that defendants' sales "were made in bad faith," but "Plaintiffs fail [] to specify which facts form the basis of this belief.").

The Complaint also fails to identify any facts supporting a plausible inference that Defendants **purposefully** interfered with any contracts or third-party business expectancies. *See name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-8676 PA PLAX, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013), *aff'd*, 795 F.3d 1124 (9th Cir. 2015) (dismissing tortious interference with contract and business expectancy claims because conclusory allegations concerning knowledge of the plaintiff's relationships with clients are insufficient under *Twombly*).

**No "Wrongful Act":** The Complaint similarly fails to plausibly allege a "wrongful act" supporting an intentional interference claim. For one, as set forth in this Motion and Pentius' Motion to Dismiss, CD fails to plead any viable causes of action against any specified Defendant and, accordingly, failed to plead an independent wrongful act that could form the basis of its interference claims. *See id.* (because plaintiff failed to state viable claims for antitrust and trademark infringement, plaintiff failed to plead independent wrong act to form basis of interference claim).

In fact, even if CD could state a plausible claim, such endeavor would be futile as the Complaint does not tie any "wrongful act" of any other claim to the tortious interference claim. For instance, CD alleges Defendants' conduct was "wrongful because it infringed upon Plaintiff's and others intellectual property rights[.]" Compl. ¶ 81. This allegation is logically incoherent given Defendants' alleged infringement of **CD's websites** has no connection to any wrongful act that interferes with a **third party contractual/business relationship**. If anything, the allegation describes tortious interference with CD's own products/services, which is nonactionable. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994) ("Under

California law, tortious interference claims may only be maintained against "stranger[s] to a contract" or "noncontracting parties."); *Bluestem Advisors LLC v. Eventure Interactive, Inc.*, No. SACV1602085AGJCGX, 2017 WL 3047895, at *4 (C.D. Cal. Apr. 17, 2017) (dismissing contractual tortious interference claim based on allegations of harm to the plaintiff [this appears to be an erroneous reference to CD, as opposed to the plaintiff in the cited case], who is "no stranger to the contracts" at issue). CD's other allegation that Defendants engaged in a wrongful act based on their "fraudulent and unlawful conduct as described above" is wholly conclusory and lacks specificity. *Id.*; *see name.space, Inc.*, 2013 WL 2151478, at *8 (dismissal of intentional interference claims warranted based on "conclusory allegations").

At most, the complaint avers only that Defendants committed a wrongful act by (1) "threatening Plaintiff's partners with spoof websites," and (2) "offering unfair 3B reports prices, as further alleged above." Compl. ¶ 80. The former theory, based "[o]n information and belief," is unintelligible as the Complaint fails to explain **how** Defendant's "extort[ing]" CD's unidentified partners into "working with Defendants" constitutes a "wrongful" act. *Id.* ¶ 33; *see Simonyan v. Ally Fin. Inc.*, No. CV 12-8495-JFW FMOX, 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) ("factual allegations . . . based on 'information and belief' [that] contain nothing more than a rote recitation of the required elements" warrant dismissal).

The Complaint's allegations describe basic market competition in that Defendants won over CD's unidentified "partners" by marketing Defendants' "white label" financial services to prospective clients, Compl. ¶¶ 21, 33, 73, 80; such acts are not wrongful as they are not "beyond those of a mere competitor securing business for himself." *A. F. Arnold & Co. v. Pac. Pro. Ins., Inc.*, 27 Cal. App. 3d 710, 716 (1972).

The Complaint's remaining wrongful act theory focused on "offering unfair 3B reports prices" is even less compelling, as it suggests Defendants obtained business

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

by offering their services at "prices substantially lower than" CD and other competitors. Compl. ¶ 44. The only claimed "wrongfulness" is that CD **could not offer the same price**. This cannot plausibly give rise to an inference of any "wrongful conduct" by Defendants. *See A. F. Arnold & Co.*, 27 Cal. App. 3d at 716 ("the facts pleaded by a plaintiff must show an intent to do something which takes the defendant's acts beyond those of a mere competitor securing business").

**Absence of Disruption and Attendant Harm:** The Complaint does not plead any actual disruption that plausibly caused CD harm. Specifically, CD alleges that Defendants "caused a disruption" by "threatening Plaintiff's **partners** with spoof websites and **offering unfair 3B Reports prices**," and that such conduct was "the direct and proximate cause of damages to Plaintiff." Compl. ¶¶ 73-74, 80, 82 (emphasis added). Yet CD nowhere explains, specifically, how the act of offering prices to third parties or allegedly assisting with any specific third-party websites caused any type of actionable harm to **CD**. *See Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (affirming dismissal of tortious interference claim where the plaintiff "merely states . . . it 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted.'"); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 979–80 (N.D. Cal. 2013), aff'd, 609 F. App'x 497 (9th Cir. 2015) (striking intentional interference claims under California anti-SLAPP statute because counterplaintiff "offers no specific evidence that a contract exists, that the contract was breached or disrupted, or that [the defendant] suffered damages.").

These pleading deficiencies are fatal and warrant complete dismissal of the intentional interference claims. *See F.M. Tarbell Co. v. A & L Partners, Inc.*, No. CV 10-1589 PSG EX, 2011 WL 1153539, at *4-5 (C.D. Cal. Mar. 23, 2011) (dismissing intentional interference claims where plaintiff raised "cryptic[]" and conclusory allegations rather than asserting "specific facts" in support of each element of claims).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

### E.    Plaintiffs Fail to State a UCL Section 17200 Claim

The Complaint fails to plausibly establish an Unfair Competition Law claim under California Business and Professions Code section 17200 ("UCL"). For one, CD fails to establish any standing based on a loss of specific money or property. Moreover, the Complaint fails to state a claim under any prong of the UCL.

#### 1.    *Plaintiff's UCL Claim Fails as a Whole for Lack of Standing*

The Court should dismiss the Sixth claim for lack of standing. The Complaint fails to allege specific facts tying Defendant's conduct to any alleged harm.

California's Proposition 64, which was enacted in 2004 and codified in California Business and Professions Code § 17204, created stricter eligibility requirements for individuals, like CD, pursuing UCL claims. *See Ford v. Lehman Brothers Bank, FSB, et al.*, No. C-12-00842-CRB, 2012 WL 2343898, *8 (N.D. Cal. June 20, 2012) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 316 (2009)). Section 17204 now limits standing to bring a UCL claim to specified public officials and private persons who "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1137 (E.D. Cal. 2010); *Marcus v. Bank of Am., NA*, No. CV 19-1747 PA (FFMX), 2019 WL 6357254, at *12 (C.D. Cal. Aug. 15, 2019). An absence of facts describing the money or property allegedly lost is fatal to a UCL claim. *Saldate*, 711 F.Supp.2d at 1137; *Marcus*, 2019 WL 6357254, at *12.

Here, CD grounds its UCL claim on a single conclusory allegation that "Plaintiff has suffered injury in fact and has lost money . . . by losing partners such as, but not limited to, identityclub.com and its affiliates ariusgroup.com & idclub.com[.]" Compl. ¶ 87. Such allegation lacks any facts describing the particular **money** or **property** lost and, therefore, renders the claim nonactionable. *See Saldate*, 711 F.Supp.2d at 1137 (E.D. Cal. 2010) (granting motion to dismiss for lack of standing where UCL "claim offers an insufficient, bare allegation that 'Plaintiff has

1    suffered various damages and injuries according to proof at trial'"); *Jensen v. Quality*

2    *Loan Service Corp*., 702 F.Supp.2d 1183, 1199 (E.D. Cal. 2010) (granting motion to

3    dismiss for lack of standing because complaint "is conclusory as to lost money" where

4    Plaintiff simply alleged "'out of pocket monetary damages.'").

5        Even worse, the Complaint does not allege facts that tie any particular conduct

6    by either Defendant to any alleged loss. Indeed, CD nowhere explains **how** either

7    Defendant allegedly "interfere[d] with" CD's "relationships with its [former] partner

8    companies . . . identityclub.com and [] ariusgroup.com & idclub.com[.]" Compl. ¶ 23;

9    *see Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on*

10   *denial of reh'g and reh'g en banc* (July 8, 2013) (UCL claim requires showing that

11   plaintiff has "'suffered injury in fact and has lost money or property **as a result of the**

12   **unfair competition.'")** (emphasis added) (quoting Cal. Bus. & Prof. Code § 17204);

13   *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) ("[t]he phrase 'as a

14   result of' in its plain and ordinary sense means 'caused by' and requires a showing of

15   a causal connection or reliance on the alleged misrepresentation.").

16       This boilerplate pleading is inadequate to establish standing and therefore the

17   UCL claim must be dismissed in its entirety. *See Diamond Resorts U.S. Collection*

18   *Dev., LLC v. Pandora Mktg., LLC*, No. CV 20-5486 DSF (ADS), 2021 WL 3193224,

19   at *4 (C.D. Cal. June 15, 2021) (dismissing UCL claim brought against competitor

20   where "specific harm" alleged is "not related to" Defendant's conduct); *Causey v.*

21   *Portfolio Acquisitions, LLC, et al*., No. 2:10-CV-2781-KJM-EFB-PS, 2012 WL

22   3915137, *8 (E.D. Cal. Sept. 7, 2012) (granting motion to dismiss for lack of standing

23   where plaintiffs failed to allege "that they suffered any *economic* injury as a result of

24   [defendants'] conduct"); *Lazo v. Bank of America, N.A.*, No. C-12-00762-LB, 2012

25   WL 1831577, *12 (N.D. Cal. May 18, 2012) (dismissing UCL claim where plaintiffs

26   alleged "that they 'have suffered injury in fact and [have] lost money due to paying

27

28

1  higher monthly payments than promised and unwarranted fees,' . . . [but] never allege

2  what these fees were, how much they were, or why they were improper").

3              2.   *The Complaint Fails to Plausibly Allege a Claim Under Any*

4                   *Prong of the UCL*

5                   a.   *There is No Plausible Claim under the Unlawful Prong*

6        The Court should dismiss the UCL claim for failure to allege a predicate

7  violation to the extent the claim is premised on the unlawful prong. To state a claim

8  for an "unlawful" business practice under the UCL, a plaintiff must plausibly establish

9  a violation of another law. *See Saldate*, 711 F. Supp. 2d at 1138; *Ingels v. Westwood*

10  *One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot

11  be liable under § 17200 for committing 'unlawful business practices' without having

12  violated another law."); *Precise Aerospace Mfg., Inc. v. MAG Aerospace Indus., LLC*,

13  No. CV 17-01239 RGK (AJW), 2018 WL 3390151, at *8 (C.D. Cal. Feb. 16, 2018)

14  (stating claims under the UCL are derivative of federal, state, and local laws and "fail

15  [when] the derivative claim also fails.").

16        As discussed above and set forth in Pentius' concurrently-filed Motion to

17  Dismiss, CD fails to plausibly allege any predicate federal or state law claims in the

18  Complaint. Thus, because "[p]laintiff has failed to state a claim for any of its causes

19  of action, [p]laintiff has not stated a claim for unfair business practices based on this

20  other conduct either." *Green Crush LLC v. Paradise Splash I, Inc.*, No.

21  SACV1701856CJCJDEX, 2018 WL 4940824, at *4 (C.D. Cal. Mar. 8, 2018); *see*

22  *also Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*, No.

23  CV119514PSGJCGX, 2013 WL 12123772, at *8 (C.D. Cal. Feb. 26, 2013) (failure

24  to allege a violation of the Lanham Act precludes recovery under the UCL for the

25  same conduct).

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

b.   *There is No Plausible Claim under the Unfair Prong*

The Complaint also fails to state a plausible UCL "unfair" practices claim. At most, the Complaint alleges that Defendants' conduct impacted CD but fails to plausibly allege facts reflecting significant harm to competition in the marketplace.

To state a UCL "unfairness" claim arising from "a direct competitor's unfair act or practice," a plaintiff must allege facts that "threaten[ ] an incipient violation of an antitrust law, or violate[ ] the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threaten[ ] or harm[ ] competition." *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 187 (1999).

Here, CD levies a single conclusory allegation that "Defendants' conduct and actions as alleged herein, including without limitation Defendants' trademark infringement, cybersquatting, spoofing scheme, unfair pricing, fraud on the public, and violation of other laws as detailed above, constitute unfair [ ] conduct." Compl. ¶ 88. This allegation does not set forth facts. The only facts that can be reasonably gleaned from the Complaint concern allegations that Defendants infringed CD's websites and inexplicably "transfer[ed] millions of dollars in business away from CD's relationships with its partner companies, including but not limited to, identityclub.com and its affiliates ariusgroup.com & idclub.com." *Id.* ¶¶ 23-40.

Yet such allegations reflect harms that affect only CD and fail to articulate what conduct, if any, "significantly threatens" competition in the marketplace. *DirecTV, LLC v. E&E Enterprises Glob., Inc*., No. 2:17-06110-DDP-PLA, 2018 WL 707964, at *5 (C.D. Cal. Feb. 5, 2018) (dismissal of UCL claim proper where "the specific harms alleged in the FAC chiefly impact E&E as DirecTV's competitor rather than "significantly threaten[ing] or harm[ing] competition.").

This lack of factual exposition warrants dismissal of the UCL claim to the extent it is based on the "unfairness" prong. *See Santa Barbara Smokehouse, Inc. v.*

*Aquachile, Inc*., No. CV 19-10733-RSWL-JEM, 2020 WL 6743592, at *7 (C.D. Cal. July 7, 2020) (dismissing the claim because the alleged facts did not "meet[] the high standard of immoral, unethical, oppressive, or unscrupulous."); *Elec. Indus. Serv. Bureau, Inc. v. Phila. Indemnity Co*., 18-cv-2345-EDL, 2018 WL 7286502, at *5 (N.D. Cal. July 11, 2018) (finding plaintiff's complaint did not state a claim under the "unfair" prong where plaintiff made "conclusory allegations" that "merely respond[ ] that its factual allegations are sufficient" to show an unfair act); *Lesley v. Ocwen Fin. Corp., et al.*, No. SA-CV-12-1737-DOC-JPRx, 2013 WL 990668, *7 (C.D. Cal. Mar. 13, 2013) ("Plaintiffs' claim also fails under the second test because they do not allege that Defendants' conduct was unethical in more than conclusory terms.").

> c.    *There is No Plausible Claim under the Fraud Prong*

The Complaint also fails to state a claim under the fraud prong because it does not identify any alleged misrepresentations with the requisite level of factual particularity.  Unfair Competition Law claims that are brought under the "fraudulent" prong must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009). At a minimum, the claimant must plead specific facts, such as time, place, persons, statements, and explanations of why any representations are misleading. *See Kearns*, 567 F.3d at 1125.

Here, the Complaint only contains conclusory allegations as to alleged "spoof websites" without any explanation of particular representations on such websites, when the representations were made, or their misleading nature. Compl. ¶¶ 22-30. Moreover, on their face, the alleged spoof websites **are not misleading** because they are **distinct** from CD's alleged marks (e.g., "smartcreditview.com and smartcreditcollege.com" vs. CD's "website smartcredit.com"). *See* RJN, Exs. 1-7. The only remaining fraud allegation consists of a brief trade libel allegation similarly lacking any specifics. *Id.* ¶ 40; *see Almont Ambulatory Surgery Ctr., LC v.*

*UnitedHealth Grp., Inc.*, No. CV 14-3053-MWF(VBKX), 2015 WL 12777091, at *13 (C.D. Cal. Feb. 12, 2015) ("the Court agrees that the UCL claim fails to plead with requisite specificity the allegations supporting the 'fraudulent' prong").

This paucity of CD's factual allegations falls well short of Rule 9(b), and CD thus fails to state a UCL claim under the fraudulent prong. *See Gemsa Enterprises, LLC v. Pretium Packaging, LLC*, No. SACV21844JVSJDEX, 2021 WL 4551200, at *8 (C.D. Cal. July 27, 2021), *reconsideration denied sub nom*; *Gemsa Enterprises, LLC v. Pretium Packaging, L.L.C.*, No. 821CV00844JVSJDEX, 2021 WL 4538376 (C.D. Cal. Sept. 7, 2021) (dismissing UCL claim where claim failed to identify the speaker, the recipient, the place, and content of the misrepresentations).

### F. <u>Plaintiff Fails to State a Common Law Unfair Competition Claim</u>

CD fails to plausibly allege a common law unfair competition claim. Here, CD's common law claim is derivative in that it incorporates all of "Defendants' conduct and actions as alleged herein[.]" Compl. ¶ 92. Consequently, CD's common law unfair competition claims falls with the primary Lanham Act claims given the Complaint's boilerplate allegations that are insufficient to plausibly infer any entitlement to relief. *See Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1134 (ND. Cal. 2014) ("The Ninth Circuit 'has consistently held that state common law claims of unfair competition ... are 'substantially congruent' to claims made under the Lanham Act.'"); *Glesby Bldg. Materials Com v. 6233 San Leandro Street Par*, No. RG08402634, 2009 WL 6405345 (Cal. Super. Mar. 27, 2009) (dismissing common law unfair competition claim where plaintiff failed to "explain . . . how Defendant's conduct of withholding a security deposit is unfair competition.").

### G. <u>The Complaint Fails to State A Trade Libel Claim</u>

The Court should dismiss the Complaint's eighth claim for Trade Libel. This is because the allegations supporting the claim are boilerplate, conclusory, and lack any specificity. Crucially, the Complaint also fails to identify any special damages.

As an initial matter, "to state a claim for trade libel, a plaintiff must allege facts demonstrating '(1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages.'" *Code Rebel, LLC v. Aqua Connect, Inc*., No. CV 13-4539 RSWL (MANx), 2013 WL 5405706, at *4 (C.D. Cal. Sep. 24, 2013) (quoting *Aetna Casualty and Surety Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988)). "[M]ost courts apply some sort of heightened pleading standard to trade libel claims[.]" *G.U.E. Tech, LLC v. Panasonic Avionics Corp*., No. SACV1500789CJCDFMX, 2015 WL 12696203, at *4 (C.D. Cal. Sept. 15, 2015) (collecting cases). "At a minimum, necessary defamation allegations must identify the time and place of publication as well as the speaker, the recipient of the statement, the substance of the statements, and, in the case of trade libel, special damages." *Code Rebel, LLC v. Aqua Connect, Inc*., No. CV 13-4539 RSWL MANX, 2013 WL 5405706, at *4 (C.D. Cal. Sept. 24, 2013).

Here, in support of the trade libel claim, the Complaint sets forth a single allegation that "Defendants made false statements about Plaintiff to Plaintiff's partners, including that Plaintiff obtains outdated credit reports, without any basis for believing the statements to be true," and that such "statements had a defamatory meaning because they lowered Plaintiff's reputation in the industry." Compl. ¶¶ 40, 5. Such allegation is bereft of any necessary facts showing **who made the statement**, (e.g., which Pentius or Array employee, if any), **to whom it was made** (e.g., which of CD's "partners" heard the statement), **how the statement was defamatory** (e.g., whether CD's credit reports are factually "outdated"), or even **when it was made** (e.g., the facts as alleged do not plausibly suggest the statement is actionable given the two-year statute of limitations for trade libel). *See Guess, Inc. v. Superior Ct*., 176 Cal. App. 3d 473, 475 (1986) (trade libel claims subject to two-year statute of limitations); *Dunham v. Cty. of Monterey*, No. 18-CV-04467-EDL, 2019 WL 4305515, at *7 (N.D. Cal. Sept. 11, 2019) (claims subject to dismissal where "the

assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute [of limitations] was tolled.").

This lack of factual specificity is fatal and warrants dismissal of the trade libel claim. *See Code Rebel*, 2013 WL 5405706, at *4 (dismissing trade libel claim because "Plaintiff fails to identify the specific time and location of each alleged statement."); *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc*., 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (dismissing trade libel claim where the plaintiff failed to identify the speaker, recipient, time, or content of the alleged statement); *Eldorado Stone v. Renaissance Stone, Inc*., No. 04–cv–2562 JM, 2005 WL 5517731, at *3 (S.D. Cal. Aug. 9, 2005) (dismissing trade libel claim where plaintiff failed to identify the author or speaker, recipient, time, and location of each allegedly libelous statement).

More importantly, the Complaint fails to allege any facts demonstrating special damages,[3] instead relying on a boilerplate allegation that "Plaintiff is entitled to compensatory damages in an amount to be determined at trial[.]" Compl. ¶ 97. This fails to meet even the lowest standard of special damages requiring allegations "showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication[.]" *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1047 (C.D. Cal. 1998).

Consequently, the trade libel claim must also be dismissed for failure to plausibly allege any special damages. *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004) (dismissing trade libel claim because "Plaintiff's

---

[3] The Complaint also demands "disgorgement" as a remedy for trade libel. Compl. ¶ 97. This relief is not cognizable under California law, which only permits "special damages" for defamatory statements. *See Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964) (trade libel "plaintiff must prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special damages") (citations omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

1    complaint does not even specify the amount of damage, and simply refers to an

2    amount to be ascertained at trial."); *Isuzu*, 12 F. Supp. 2d at 1047 (finding a claim for

3    special damages from "the loss of revenue from wholesale and retail sales of

4    [plaintiff]" to be a bare allegation of pecuniary loss and therefore inadequate);

5    *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP

6    MANX, 2014 WL 6892141, at \*4 (C.D. Cal. Nov. 5, 2014) (dismissing trade libel

7    claim because "Plaintiffs did not set forth any factual allegations other than that

8    Plaintiffs lost sales, market share, and customer goodwill.").

9    **H.    Plaintiff Cannot Allege a Plausible Unjust Enrichment Claim**

10    The Complaint does not plausibly plead an unjust enrichment claim. First,

11    several California courts have held that unjust enrichment is not a cognizable cause

12    of action. Even were it otherwise, such claim should be dismissed where, as here, it

13    seeks relief duplicative of other claims, including CD's UCL claim.

14    First, a line of California cases hold that "there is no cause of action in

15    California for unjust enrichment." *Melchior v. New Line Prods., Inc*., 106 Cal. App.

16    4th 779, 793 (2003). Rather, the appropriate cause of action is one for restitution. *See*

17    *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *see also Hill v.*

18    *Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a

19    cause of action, just a restitution claim."). For this reason alone, CD's unjust

20    enrichment claim must be dismissed as implausible. *See In re ConAgra Foods Inc*.,

21    908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) (dismissing the claim with prejudice

22    because "under California law, a cause of action for unjust enrichment is not

23    cognizable.")

24    Second, were the Court to find that unjust enrichment is a cognizable claim,

25    dismissal is still warranted where the claim is duplicative by seeking the same relief

26    sought in other claims. Here, as relief for the unjust enrichment claim, the Complaint

27    seeks "disgorgement of all revenues and profits associated with Defendants'

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

wrongdoing," which is the same relief sought in its intentional interference and trade libel claims. Compl. ¶¶ 75, 83, 97. CD also seeks "restitution"—which is the only relief available under an unjust enrichment theory—for its UCL and common law unfair competition claims. *Id.* ¶¶ 89, 93.

Thus, the Court should dismiss the unjust enrichment claim with prejudice as "the unjust enrichment claim will add nothing to [its] available relief." *See Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1271 (C.D. Cal. 2007); *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1028 (N.D. Cal. 2011) (dismissing unjust enrichment claim with prejudice where "Plaintiffs' claims . . . seek restitution as a remedy."); *Campos v. Metabolic Rsch., Inc.*, No. CV 09-9445-VBF(DTBX), 2010 WL 11597578, at *2 (C.D. Cal. Apr. 27, 2010) ("Here, because there is no showing that other remedies are inadequate and unjust enrichment may be dismissed as an invalid claim").

## V.   PLAINTIFF'S EQUITABLE CLAIMS FAIL BECAUSE IT HAS NOT ALLEGED INADEQUATE REMEDIES AT LAW

CD's UCL (Sixth Claim) and unjust enrichment (Ninth Claim) must be dismissed because they only allow for equitable relief, and the Complaint makes clear that legal remedies under the Lanham Act (First and Third Claims), Cybersquatting (Second Claim), and tortious interference, (Fourth and Fifth Claims) claims in the form of money damages are adequate.

The "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL, [or for unjust enrichment] in a diversity action." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). A plaintiff cannot proceed with equitable claims where: (1) "the operative complaint does not allege that [plaintiff] lacks an adequate legal remedy"; or (2) the plaintiff alleges legal claims for money damages that mirror any available equitable restitution. *Id.* Citing *Sonner*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT

district courts have dismissed UCL and unjust enrichment claims where "there is nothing in the [complaint] to suggest that monetary damages would not make Plaintiff [] whole." *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) ("this principle applies to claims for equitable relief under both the UCL and CLRA"); *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) (same); *Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (same).

Here, the UCL and unjust enrichment claims are based on the same predicate facts—that Defendants allegedly engaged in "unfair competition" through "spoof websites" that took market share away from CD. Compl. ¶¶ 88, 101. Yet the Complaint's Lanham Act, Cybersquatting, and tortious interference claims all incorporate the same allegations and seek "compensatory" and "statutory" damages for the same alleged harms. *Id.* ¶¶ 50, 53, 55, 61, 63, 69, 71, 75, 78, 83.

## VI.  CONCLUSION

Array respectfully requests that the Complaint be dismissed in its entirety.

Dated: January 10, 2022                **DLA PIPER LLP (US)**

By: */s/ Robert J. Nolan*
      ROBERT J. NOLAN
      MATTHEW F. MILLER
      HECTOR E. COREA

      Attorneys for Defendant
      ARRAY US INC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ARRAY US INC.'S MOTION TO DISMISS THE COMPLAINT