UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01968-JVS (ADSx)                     Date   April 4, 2022

Title      ConsumerDirect, Inc. v. Pentius, LLC et al.

Present: The
Honorable          **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**      **[IN CHAMBERS] <u>Order Regarding Motions to Dismiss the First Amended Complaint [58, 61] and Motion to Stay [62]</u>**

There are three motions presently before the Court:

*First*, Defendant Array US Inc. ("Array") moves to dismiss Plaintiff ConsumerDirect Inc.'s ("ConsumerDirect") First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Array MTD, Dkt. 58.  ConsumerDirect opposes the motion.  Array Opp'n, Dkt. 73.  Array filed a Reply in support of its Motion.  Dkt. 77.

*Second*, Defendants Pentius, LLC ("Pentius") and System Admin, LLC ("System Admin") move to dismiss ConsumerDirect's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Pentius MTD, Dkt. 61.  ConsumerDirect opposes the motion.  Opp'n to Pentius MTD, Dkt. 72.  Pentius and System Admin filed a Reply in support of their Motion.  Pentius Reply iso MTD, Dkt. 81.

*Third*, Array moves to stay discovery in this action pending resolution of the Defendants motions to dismiss the First Amended Complaint.  Mot. to Stay, Dkt. 62.  To the extent the Court grants in part Defendants' motions to dismiss, Array request that the Court stay all discovery until closure of the pleadings—that is, upon the determination of any further motions to dismiss and filing of Defendants' answers to any future amended complaint.  <u>Id.</u>  ConsumerDirect opposes the motion. Opp'n to Mot. to Stay, Dkt. 75.  Array filed a Reply in support of its Motion.  Dkt. 80.

For the following reasons, the Court **GRANTS in part** and **DENIES in part** the motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     8:21-cv-01968-JVS (ADSx)                    Date     April 4, 2022

Title     ConsumerDirect, Inc. v. Pentius, LLC et al.

## I. BACKGROUND

### A.     Factual Allegations

The following background is drawn from Plaintiffs' First Amended Complaint ("FAC") (Dkt. 22).

ConsumerDirect is an industry leader in consumer self-help financial services, including credit management, credit reporting services, credit counseling, and credit monitoring since at least 2009. FAC, Dkt. 22, ¶ 12. ConsumerDirect provides these services through numerous of its own websites such as smartcredit.com, idlock.com, and creditmonitoring.com. Id. ConsumerDirect also partners with other financial services companies and creates white labels and co-brands for them, which allows ConsumerDirect's partners to display and utilize its financial services on the partners' websites. Id. Among other things, ConsumerDirect's websites offer memberships that allow customers to view and track their credit scores and reports, receive credit alerts, learn about credit, and use tools to resolve any disputed or fraudulent items that appear on their credit reports. Id. ConsumerDirect also offers identity theft monitoring and financial management tools through its websites. Id.

Since at least 2009, and before Defendants used any similar marks, ConsumerDirect or its predecessor-in-interest has continuously and prominently used the marks: (1) "SMARTCREDIT" and "SMARTCREDIT.COM" (the "SMARTCREDIT Marks"); (2) "IDLOCK" and "IDLOCK.COM" (the "IDLOCK.COM Marks"); and (3) CREDITMONITORING.COM (the "CREDITMONITORING.COM Mark") (collectively, the "Marks") to denote the source of its products and services. Id. ¶ 20. ConsumerDirect owns several federal trademark registrations on the United States Patent and Trademark Office's ("USPTO") Principal Register, including for the SMARTCREDIT Marks. Id. ¶ 21.

ConsumerDirect alleges that it has committed significant time, effort, and money over the course of more than twelve years to developing a widely-respected reputation through with the Marks have acquired secondary meaning indicating ConsumerDirect as the source of its goods and services. Id. ¶ 22. Thus, it alleges that before the acts complained of in this Complaint, members of the general consumer population, including over four-million consumers who are members of ConsumerDirect's websites,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-cv-01968-JVS (ADSx)                Date  April 4, 2022

Title  ConsumerDirect, Inc. v. Pentius, LLC et al.

recognized the Marks as exclusive source identifiers for goods and services relating to consumer self-help financial services as originating from, sponsored, or approved by Plaintiff.  Id.  Accordingly, ConsumerDirect believes that it has the exclusive right to use the Marks in interstate commerce, and ConsumerDirect's use has been exclusive since it adopted the Marks with the exception of unauthorized uses such as by Defendants.  Id. ¶ 23.

Pentius and Array are competitors of ConsumerDirect who also provide consumer self-help financial services and create white labels and co-brands for other companies to allow them to display and utilize Pentius and Array's financial services on their websites. Id. ¶ 26.  ConsumerDirect alleges that it recently discovered that Pentius and Array have engaged in a variety of acts directed at ConsumerDirect and at others in the industry in order to interfere with and transfer millions of dollars in business away from ConsumerDirect's relationships with its partner companies, which has caused and is continuing to cause it harm.  Id. ¶ 28.

ConsumerDirect alleges that System Admin, Callandor, CTH, and Hotbills are alter egos of Pentius because in all aspects of the business, these companies actually function as one single entity.  Id. ¶ 14.  It further alleges that these entities are grossly undercapitalized, fail to observe corporate formalities, do not pay any dividends, are insolvent, do not have their own officers or directors (or if they do, they are completely overlapping with Pentius's officers and directors), do not have legitimate corporate records, siphoned funds from Pentius, and are merely a facade for the operations of Pentius.  Id.  Thus, ConsumerDirect alleges that those entities' corporate form was fraudulently abused by Pentius in an attempt to obscure Pentius' involvement in the wrongdoing.  Id.

The FAC further alleges that after ConsumerDirect adopted and began using the Marks, Pentius, through its alter ego companies, created financial services websites using infringing marks and domain names for the specific purpose of unfairly competing with ConsumerDirect.  Id. ¶ 29.  Array, in collusion with Pentius, operates and provides the application programming interface platform and other services to these websites, knowing them to be infringements of Plaintiff's websites.  Id.  Specifically, Pentius, also through its alter ego companies, created and registered the following domain names, among others, which Array operates and uses: (1) smartcreditview.com and smartcreditcollege.com, which ConsumerDirect alleges are confusingly similar to its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |

| | |
|---|---|
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |

website smartcredit.com; (2) theidlock.com, which ConsumerDirect alleges is confusingly similar to its website idlock.com; and (3) creditmonitoringsolutions.com, propercreditmonitoring.com, credithivemonitor.com, honestcreditmonitoring.com, and creditmonitormaster.com, which ConsumerDirect alleges to be confusingly similar to its website creditmonitoring.com. Id. ConsumerDirect alleges that Defendants intentionally created and operated these domains with the bad faith intent to profit from the goodwill that ConsumerDirect has built through its Marks. Id. ¶ 29. Within these websites, Defendants used the marks "smartcreditview," "smartcreditcollege," and "theidlock," which ConsumerDirect alleges to infringe on its SMARTCREDIT and IDLOCK.COM Marks. Id. ¶ 30.

**B.    Procedural Background**

ConsumerDirect brought suit alleging eight causes of action against Defendants: (1) Federal Trademark Infringement (15 U.S.C. § 1114); (2) Violation of the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)); (3) False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a)); (4) Intentional Interference of Contract; (5) Intentional Interference with Prospective Economic Advantage; (6) Violation of Cal. Bus. and Prof. Code § 17200; (7) Common Law Unfair Competition and Trademark Infringement; and (8) Unjust Enrichment.

## II. LEGAL STANDARD

**A.    Motion to Dismiss for Failure to State a Claim – Rule 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |

| | |
|---|---|
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |

"'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555).  Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

**B.      Motion to Stay Discovery**

A district court may stay proceedings pursuant to its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  "The exertion of this power calls for the exercise of a sound discretion." CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).  The competing interests that a district court must weigh in deciding whether to grant a stay include the following: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." Id. (citing Landis, 299 U.S. at 254–55).[1]

**III.  DISCUSSION**

**A.      Alter Ego Liability**

Defendants first argue that all of ConsumerDirect's claims should be dismissed because the FAC does not adequately plead alter ego liability.  Pentius MTD at 4–5.  However, ConsumerDirect contends that it does adequately allege alter ego liability, and even so, none of its claims are dependent solely on alter ego liability.  Pentius Opp'n at 7.

"Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors." Robbins v. Blecher, 52 Cal. App. 4th 886, 892 (1997) (internal quotation marks omitted).  However, "[u]nder the alter ego doctrine, . . .

---

[1] Hereinafter, the Court will refer to these competing interests as the "Landis stay factors."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |
|---|---|---|---|

| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |
|---|---|

a court may disregard the corporate entity and treat the corporations acts as if they were done by the persons actually controlling the corporation." Id.  Courts apply the doctrine "when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose[.]" Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538 (2000).  A plaintiff needs to plead two elements to invoke the alter ego doctrine: "First, there much be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."  Id.  Courts consider a number of factors to determine whether the alter ego doctrine applies, including "inadequate capitalization, commingling of funds and other assets of the two entities," "use of one as a mere conduit for the affairs of the other, disregard of corporate formalities," and "lack of segregation of corporate records." Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc., 99 Cal. App. 4th 228, 245 (2002).

ConsumerDirect adequately pleads an alter ego theory of liability by alleging a unity of interest and ownership between Defendants and that there would be an inequitable result if each defendant's acts are treated as its alone.  Specifically, ConsumerDirect alleges that:

"These 'owners' of the websites are shell companies that exist for no purpose other than as a vehicle for fraud to obfuscate Pentius' involvement. For example, they each have an associated address that appears to be unoccupied residences or addresses of other unassociated businesses; i.e., Callandor's address was identified as 343 E. 30th St., Apt. 6E, New York, NY 10016, which is a residence and CTH's address was identified as 4091 Wooster Dr., Oceanside, CA, which is a residence. There does not seem to be any records or information available regarding these shell corporations, i.e., any corporate websites or associated employees." (FAC, ¶ 42.)

"To the extent any individuals can be traced to the shell companies, the random persons identified as associated with the companies are not qualified to be running credit report and monitoring businesses. For example, truecreditview.com was registered to an individual by the name of Brett Horan, who is related to other individuals identified as the registered owners of other copycat websites. Mr. Horan has a longstanding career in the landscaping business, which is actively and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-cv-01968-JVS (ADSx)          Date  April 4, 2022

Title  ConsumerDirect, Inc. v. Pentius, LLC et al.

currently being promoted on his social media account, yet he has no experience
whatsoever in the credit report or monitoring industry or anything similar. This
demonstrates that these individuals are being used by Pentius and Array to
obfuscate ownership of the shell companies." (FAC, ¶ 43.)

"Despite Pentius and Array's attempts to hide their involvement, Plaintiff is
informed and believes that Pentius and Array are behind each of these copycat
websites and shell companies because the websites all share similar ASN and IP
addresses tracing back to Defendant System Admin, LLC, which is owned by
Michael LaSala, who is a Director of Pentius and files all of Pentius' annual
reports." (FAC, ¶ 44.)

"Defendant System Admin is also a shell company because it reported to the
Federal Communications Commission that it does not provide any
telecommunications services as of July 26, 2019, yet still holds the registrations to
all of the copycat websites." (FAC, ¶ 44.)

"Many of the shell companies under which the websites are operated are also
connected to Mr. LaSala." (FAC, ¶ 44.)

"Moreover, there are substantial similarities between all of the copycat websites,
including nearly identical footers and member services and contact us pages.
Pentius, Array, and all of the copycat websites share identical privacy policies that
are copied nearly word for word." (FAC, ¶ 44.)

"System Admin's CEO is Martin Toha, who is also the founder and executive of
Pentius and Array." (FAC, ¶ 44.)

In support of this element, the FAC alleges, in addition to the foregoing, that
"Pentius has set up a network of shell companies, including the Alter Ego
Defendants, to register these copycat websites in an attempt to hide its and Array's
involvement, and then attempted to further hide the existence of the shell
companies by recently taking all mention of these shell companies off of the
websites." (FAC, ¶ 41.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |
|---|---|---|---|

| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |
|---|---|

Contrary to the Defendants' assertion, this is more than a mere recitation of the alter ego elements. Rather, ConsumerDirect has alleged specific facts that are sufficient to state a claim for alter ego liability.

Further, ConsumerDirect argues that the FAC alleges alter ego liability in addition to direct actions by each defendant that are sufficient to establish direct liability for each claim. Id. The Court agrees. For example, as the Court explained in detail in its preliminary injunction order, ConsumerDirect has alleged facts that, if true, would be sufficient to establish each defendant's liability for trademark infringement and cybersquatting. The Court addresses each defendant's liability as to each claim below.

**B.     Heightened Pleading Standard - Rule 9(b)**

Defendants argue that ConsumerDirect's claims should be dismissed because they sound in fraud, yet fail to meet the heightened pleading standard of Rule 9(b). See Array MTD at 13; Pentius MTD at 14–17.

A claim that does not contain an element of fraud may nonetheless be subject to Rule 9(b)'s particularity mandate if it "sounds in fraud." In re Daou Sys., 411 F.3d 1006, 1027 (9th Cir. 2005). A claim is said to be "grounded in fraud" or to "sound in fraud" when a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [the] claim." Id. (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). "In a case where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." Id. "Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." Id. Accordingly, "[w]here averments of fraud are made in a claim in which fraud is not an element . . . the proper route is to disregard averments of fraud not meeting 9(b)'s standard and then ask whether a claim has been stated." Andrews Farms v. Calcot, Ltd., 2007 WL 1701915, at *5 (E.D. Cal. June 8, 2007).

The only one of ConsumerDirect's claims that "sounds in fraud" is its UCL claim based on the "fraudulent" prong. ConsumerDirect's other claims do not "sound in fraud" because they are not based on allegations of "a unified course of fraudulent conduct." Accordingly, the heightened pleading standard of 9(b) only applies to the "fraudulent"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01968-JVS (ADSx)                Date   April 4, 2022

Title   ConsumerDirect, Inc. v. Pentius, LLC et al.

UCL claim, whereas the ordinary notice pleading standard of Rule 8(a) applies to all other claims.

## C.   Group Pleading

Defendants argue that ConsumerDirect's claims are also subject to dismissal for failure to meet Rule 8(a)'s pleading requirements by impermissibly engaging in "group pleading." Pentius MTD at 17–18. ConsumerDirect responds that the FAC contains allegations specific to each defendant such that each defendant has notice of the claims it faces and the allegations upon which they rely.

"'Courts in this circuit have held that a complaint fails to state a claim and must be dismissed if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act.'" Polsky v. Rammani, 2018 WL 6133406, at *4 (C.D. Cal. Mar. 26, 2018) (citing Ahmadi v. Nationstar Mortgage, LLC, 2016 WL 7495826 (C.D. Cal. Mar. 31, 2016)). This is because "the underlying requirement [of Federal Rule of Civil Procedure 8] is that a pleading give fair notice of the claim being asserted and the grounds upon which it rests." In re Sagent Technology, Inc., Derivative Litigation, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) (citing Conley v. Gibson, 355 U.S. 41, 47–48,(1957)). Thus, "a complaint that repeatedly refers to defendants collectively, without differentiation, is more likely to run afoul of the plausibility standard of Iqbal and Twombly." Slack v. International Union of Operating Engineers, 2014 WL 4090383, at *16 (N.D. Cal. Aug. 19, 2014) (citing In re American Apparel, Inc. Shareholder Derivative Litigation, 2012 WL 9506072, at *41 (C.D. Cal. July 31, 2012)). But group pleading may be permissible "so long as group pleading is limited to defendants who are similarly situated." Bassam v. Bank of America, 2015 WL 4127745, at *7 (C.D. Cal. July 8, 2015) (citing In re American Apparel, 2012 WL 9506072, at *41).

Here, ConsumerDirect's allegations delineate different roles different roles for the different defendants.

As to Pentius, the FAC alleges that, among other things: "Pentius [] created financial services websites using infringing marks and domain names for the specific purpose of unfairly competing with Plaintiff" (FAC, ¶ 29); "Pentius and Array also pre-create various turn-key cybersquatting websites, including copycat websites of nationally known and trademarked brands, and market these copycat websites to Plaintiff's partners

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |
|---|---|---|---|

| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |
|---|---|

such as CreditLife" (FAC, ¶ 38); "Pentius has set up a network of shell companies, including the Alter Ego Defendants, to register these copycat websites in an attempt to hide its and Array's involvement" (FAC, ¶ 41); "Pentius directly manages over 450 of these copycat websites" (FAC, ¶ 44); and "Pentius and Array falsely told partners of Plaintiff that Plaintiff provides consumers with outdated credit reports that are up to two weeks old, in an attempt to divert the partners' business from Plaintiff to Pentius and Array's websites" (FAC, ¶ 47).

As to System Admin, the FAC alleges that all of the copycat websites "share similar ASN and IP addresses tracing back to Defendant System Admin, LLC," despite reporting "to the Federal Communications Commission that it does not provide any telecommunications services as of July 26, 2019." (FAC, ¶ 44.)

Accordingly, the FAC does not group plead and thus meets Rule 8(a)'s notice pleading standard.

**D.  Federal Trademark Infringement (First Claim), Violation of the Anticybersquatting Consumer Protection Act (Second Claim), and False Designation of Origin and Unfair Competition (Third Claim)**

Defendants argue that the FAC fails to plausibly plead the first three claims for trademark infringement, cybersquatting, and false designation of origin because it fails to allege the protectability of ConsumerDirect's "ID Lock" or "creditmonitoring.com" marks.  Array MTD at 13.

To state a claim for trademark infringement, a plaintiff must allege two elements. First, that the plaintiff owns a valid and protectable trademark; and second, that a defendant used, in commerce, a similar mark without authorization in a manner that is likely to cause consumer mistake, confusion, or deception. So. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 929 (9th Cir. 2014); see also Applied Information Sciences Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007) (same standard for preliminary injunction).

*1.    Each Defendant's Alleged Liability*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-01968-JVS (ADSx)                    Date    April 4, 2022

Title    ConsumerDirect, Inc. v. Pentius, LLC et al.

As the Court explained in its Preliminary Injunction Order, ConsumerDirect alleges that System Admin knowingly hosts the websites containing the infringing material.  FAC ¶ 44.  This is sufficient to hold it liable for contributory trademark infringement and directly liable for cybersquatting.  See Vuitton Malletier, S.,A. v. Akanoc Solutions, Inc., 591 F. Supp. 2d 1098, 1111 (N.D. Cal. 2008); CrossFit, Inc. v. Paraise, 2014 WL 12508598, at *1 (S.D. Cal. Mar. 26, 2014) (explaining that "liability for cybersquatting attaches when the plaintiff proves . . . the defendant registered, trafficked in, or used a domain name").  Further, ConsumerDirect has pleaded that SystemAdmin is an alter ego of Pentius and Array such that it is directly liable for infringing its trademarks.

ConsumerDirect has also alleged facts sufficient to state claims against Pentius and Array for direct and contributory trademark infringement and cybersquatting.  Specifically, ConsumerDirect alleged that "Pentius, through the shell company Alter Ego Defendants, created financial services websites using infringing marks and domain names for the specific purpose of unfairly competing with [ConsumerDirect]."  FAC ¶ 29.  It alleges that Pentius "created and registered" the infringing domain names" and that "Array operates and uses" them.  Id.  It further alleges that "Pentius and Array also pre-create various turn-key cybersquatting websites, including copycat websites of nationally known and trademarked brands, and market these copycat websites to Plaintiff's partners."  FAC ¶ 38.

>    *2.    Strength of the Marks*

To state a claim for trademark infringement, ConsumerDirect must have a protectable trademark.  Courts classify "a mark along a spectrum of five categories ranging from strongest to weakest: arbitrary, fanciful, suggestive, descriptive, and generic."  Id.  "Generic terms do not relate exclusively to the trademark owner's product because they are common words or phrases that describe a class of goods rather than an individual product.  Japan Telecom, Inc. v. Japan Telecom Am., Inc., 287 F.3d 866, 872 (9th Cir. 2002) (internal quotation omitted).  Descriptive terms, on the other hand, "describe a person, a place or an attribute of a product."  Id.  Descriptive terms are only protectable if they have "acquired 'secondary meaning' in the minds of consumers, i.e., [they] ha[ve] become distinctive of the trademark applicant's goods in commerce."  Fillipino Yellow Pages, 198 F.3d at 1147 (internal quotation marks omitted).  Arbitrary, fanciful and suggestive marks are "deemed inherently distinctive and are automatically

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |
|---|---|---|---|

| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |
|---|---|

entitled to protection because they naturally serve to identify a particular source of a product." Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 760 (9th Cir. 2006).

Defendants do not challenge CreditDirect's "SMARTCREDIT" and "SMARTCREDIT.COM" marks upon which these claims are also based. So, the Court does not address those marks.

> i.    *ID Lock Marks*

Defendants argue that the "ID Lock" marks are merely generic or descriptive because "ID" is short for "identify" and "lock" is a term of art "used in the credit industry to mean a temporary lock or free[ze] of one's credit" that "prevents lenders and others . . . from accessing your credit report or using it to get a credit score." Array MTD at 14. But the Ninth Circuit has rejected such "breaking down of such terms into their individual (and often generic) parts" and explained that a mark should be evaluated as a "composite," and may be a "distinguishing mark even though its components individually [are not]." Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc., 198 F.3d 1143, 1148–50 (9th Cir. 1999). Accordingly, ConsumerDirect argues that "even if the terms "ID" and "lock" are generic or descriptive when looked at separately, when put together they are distinctive of [ConsumerDirect]'s goods and services, particularly given [ConsumerDirect]'s allegations that it has consistently used that name to the exclusion of others for several years before Defendants began using the confusingly similar marks." Array Opp'n at 7 (citing FAC ¶¶ 20, 22–25).

Further, ConsumerDirect contends that the term "lock" in its "ID Lock" marks is not being used to mean a temporary lock or freeze of one's credit, as Array suggests. Id. Instead, "[t]he term 'lock is being used in the sense that consumers are securing themselves against intruders who may try to steal their identity, much in the same way that a lock on a door is used to keep burglars out of a house." Id. at 7–8. Because this requires an exercise of the imagination, it argues, the marks are more than descriptive.

The Court agrees with ConsumerDirect. "ID Lock" is not generic because it does more than merely "describe a class of goods rather than an individual product." See New Kids on the Block v. New Am. Publ'g, Inc., 971 F.2d 302, 306 (9th Cir. 1992). The Court need not decide at this early stage whether the mark is descriptive or suggestive, because ConsumerDirect has pleaded a protectable mark either way. Even if the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |
|---|---|---|---|

| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |
|---|---|

accepts Defendants' argument that "ID Lock" is descriptive, ConsumerDirect has still alleged a protectable mark because it has alleged that the mark has secondary meaning. ConsumerDirect alleged secondary meaning by alleging that it has exclusively used the mark for several years before Array began using the allegedly infringing marks, that ConsumerDirect committed significant time and money to developing a reputation under the mark, and the number of users of the mark.  FAC ¶¶ 20, 22–25.

       *ii.*    *Creditmonitoring.com Mark*

As for ConsumerDirect's CREDITMONITORING.COM Mark, the same is true. A domain name such as "Booking.com" can be a protected mark if the domain, taken as a whole, signifies to consumers an association with a particular website," even if it is a generic word attached to ".com."  United States Pat. & Trademark Off. v. Booking.com B.V., 140 S. Ct. 2298, 2304–06 (2020).  In fact, "[b]ecause domain names are one of a kind, a significant portion of the public will always understand a generic '.com' term to refer to a specific business[.]" Id. at 2306.  ConsumerDirect alleges that its CREDITMONITORING.COM domain has gained secondary meaning, including evidence of its exclusive use of the domain since 2015, its volume of sales, and significant advertising expenditures.  This is sufficient to allege a protectable mark.

**E.**    **Intentional Interference of Contract (Fourth Claim) and Intentional Interference with Prospective Economic Advantage (Fifth Claim)**

Defendants argue that the Court should dismiss the Fourth and Fifth Causes of Action for tortious interference with contract and prospective economic advantage against Pentius and Array, because the FAC: (1) does not set forth any facts concerning how or which particular Defendants committed the acts to interfere with third parties; (2) fails to plausibly allege intent or knowledge; (3) fails to plausibly allege a "wrongful act" supporting an intentional interference claim; and (4) does not plead actual disruption that plausibly caused ConsumerDirect's harm.  Array MTD at 15–20.

The elements of a claim for intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |
|---|---|---|---|

| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |
|---|---|

55 (1998) (quoting Pac. Gas & Elec. Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990)).

Under California law, the elements of a claim for interference with prospective economic advantage are "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." Roy Allan Slurry Seal, Inc. v. Am. Asphalt South, Inc., 2 Cal. 5th 505, 213 (2017).

Contrary to Defendant's assertion, ConsumerDirect does allege a "wrongful act" supporting its intentional interference claim. ConsumerDirect alleges that it "had valid contracts with partner companies such as, but not limited to, Identity Club and its affiliates Arius Group and ID Club, Credit Versio, CreditLife, Novae, and Credit Admiral to which Defendants were not a party, which were likely to bring future economic benefit to [ConsumerDirect]." FAC ¶ 79. ConsumerDirect alleges that Pentius and Array solicited business from each of those third parties, knowing them to be partners with active Contracts. FAC ¶ 80. It further alleges that "with the intent to interfere with [ConsumerDirect]'s contracts," Pentius and Array "caused actual disruptions to its contracts by diverting the third parties' business away from ConsumerDirect and to Pentius and Array by, among other things, offering unfair 3B Reports prices and turn-key copycat websites (without telling the third parties that the websites violated other companies' protected domain rights." Id. These allegations are sufficient to allege that Pentius and Array committed a "wrongful act" supporting an intentional interference claim.

ConsumerDirect also alleges sufficient damages caused by Pentius and Array's actions. For example, the FAC alleges that "before Identity Club began contracting with Pentius and Array, Identity Club paid Plaintiff approximately $400,000 a month in fees, which decreased to below $160,000 a month and continues to decrease since they began working with Pentius and Array." FAC ¶ 82. These specific allegations of harm are sufficient to state claims for tortious interference with contract and prospective economic advantage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-01968-JVS (ADSx)                     Date   April 4, 2022

Title   ConsumerDirect, Inc. v. Pentius, LLC et al.

In sum, ConsumerDirect has alleged facts sufficient to state its Fourth and Fifth claims for tortious interference with contract and prospective economic advantage. Accordingly, the Court DENIES Defendants' motion to dismiss these claims.

### F.    Violation of Cal. Bus. and Prof. Code § 17200 (Sixth Claim)

Defendants contend that the Court should dismiss ConsumerDirect's UCL claim because the FAC (1) fails to establish standing based on a loss of specific money or property, and (2) fails to state a claim under any prong of the UCL.  Array MTD at 20.

#### 1.    *Standing*

Defendants argue that the Court should dismiss ConsumerDirect's UCL Claim for lack of standing.  Id.  Specifically, they contend that the FAC fails to allege specific facts tying Defendants' conduct to any alleged harm.  Id.  However, ConsumerDirect has specifically alleged that it suffered injury in fact and lost money as a result of Defendants' alleged wrongdoings.  FAC ¶¶ 82, 95 (alleging a loss of over $1 million in revenue from the disruption of one partner relationship alone).

#### 2.    *Plausible Claim under UCL Prongs*

Defendants argue that the FAC fails to plausibly allege a claim under any prong of the UCL.  Array MTD at 22.

California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

Defendants assert that the Court should dismiss the UCL claim for failure to allege a predicate violation to the extent the claim is premised on the unlawful prong.  Id. at 22.  The "unlawful" prong of the UCL treats violations of other federal, state, regulatory, or court-made law as unlawful business practices independently actionable under state law.  Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003) (citation omitted).  The FAC alleges that Defendants' acts include their "trademark infringement, cybersquatting, copycat websites, unfair pricing, fraud on the public, and violation of other laws as detailed above."  FAC ¶ 96.  So, ConsumerDirect's UCL claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |

| | |
|---|---|
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. |

is at least partially based on a violation of the Lanham Act.  "To adequately state a UCL claim based on a violation of the Lanham Act, Plaintiffs must adequately allege a violation of the Lanham Act."  Vinson v. J.M. Smucker Co., 2013 U.S. Dist. LEXIS 183515, at *8 (C.D. Cal. March 25, 2013).  Because ConsumerDirect has adequately alleged a violation of the Lanham Act, it has likewise alleged unlawful action under the UCL.

Accordingly, the Court DENIES Defendants' motion to dismiss ConsumerDirect's UCL claim.

## G.   Common Law Unfair Competition and Trademark Infringement (Seventh Claim)

Next, Defendants argue that ConsumerDirect fails to plausibly allege a common law unfair competition claim for the same reasons as its trademark infringement claims. Array MTD at 25 (citing FAC ¶ 100).  However, because these claims are largely congruent to ConsumerDirect's Lanham Act and UCL claims, they prevail for the reasons discussed above.  See Cleary v. News Corp., 30 F.3d 1255, 1262–63 (9th Cir. 1994) (explaining that state law claims of unfair competition and claims under Cal. Bus. & Prof. Code § 17200 are "substantially congruent" to claims made under the Lanham Act).

Thus, the Court DENIES Defendants' motion to dismiss ConsumerDirect's Seventh Claim for Common Law Unfair Competition and Trademark Infringement.

## H.   Unjust Enrichment (Eighth Claim)

Defendants contend that the FAC does not plausibly plead an unjust enrichment claim because "there is no cause of action in California for unjust enrichment."  Array MTD at 26–27.  The Court agrees.

There is no cause of action for unjust enrichment in California.  Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003).  "Unjust enrichment" describes an effect, not a theory of recovery.  Id.  "Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself."  Id. (internal quotations omitted).  As a result, there is "no cause of action in California for unjust enrichment." Id.; accord Doe v. Mindgeek USA Inc., 2021 WL 4167054, at *11 (C.D. Cal. Sept. 3,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | April 4, 2022 |
|---|---|---|---|
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

2021) ("Like many other courts in this district, this Court believes that unjust enrichment is not a separate cause of action in California."); Rodriguez v. Just Brands USA, Inc., 2021 WL 1985031, at *7 (C.D. Cal. May 18, 2021); Iezza v. Saxon Mortg. Serv., Inc., 2010 WL 3934041, at *2 (C.D. Cal. Sept. 28, 2010) ("Under California law, a claim for unjust enrichment cannot stand alone as an independent claim for relief."). Thus, ConsumerDirect's unjust enrichment claim does not constitute a proper cause of action and amendment would be futile.

Accordingly, the court GRANTS Defendants' motion to dismiss ConsumerDirect's standalone unjust enrichment claim with prejudice.

**I. Motion to Stay**

As the Court has already adjudicated the Motions to Dismiss, the Court **DENIES AS MOOT** Defendants' motion to stay discovery in this action pending resolution of the Defendants motions to dismiss the First Amended Complaint.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the motion.

**IT IS SO ORDERED.**