RUTAN & TUCKER, LLP
Proud Usahacharoenporn (State Bar No. 278204)
pusaha@rutan.com
Briana Richmond (State Bar No. 301824)
brichmond@rutan.com
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone:   714-641-5100
Facsimile:   714-546-9035

Attorneys for Plaintiff
CONSUMERDIRECT, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMERDIRECT, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs<br><br>PENTIUS, LLC, a Delaware limited liability company; ARRAY US, INC., a Delaware corporation; SYSTEM ADMIN, LLC, a Florida limited liability company; CTH SKIN CORP., a Delaware corporation; PENTOPS, LLC, a Delaware limited liability company; DAILY STOCKS, INC., a Delaware corporation; NECTRIS, LLC, a Utah limited liability company; CLARITY PROGRESSION, LLC, a Florida limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  8:21-cv-01968-(JVS) (ADSx)<br>Honorable James V. Selna<br>Courtroom 10C<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1.  **FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. § 1114]**<br><br>2.  **VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT [15 U.S.C. § 1125(d)]**<br><br>3.  **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION [15 U.S.C. § 1125(a)]**<br><br>4.  **INTENTIONAL INTERFERENCE WITH CONTRACT**<br><br>5.  **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>6.  **VIOLATION OF CAL. BUS. AND PROFS. CODE § 17200**<br><br>7.  **COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ConsumerDirect, Inc. ("Plaintiff") for its Complaint against defendants Pentius LLC ("Pentius"), Array US, Inc. ("Array"), System Admin, LLC ("System Admin"), CTH Skin Corp. ("CTH"), Pentops, LLC ("Pentops"), Daily Stocks, Inc. ("Daily Stocks"), Nectris, LLC ("Nectris"), Clarity Progression, LLC ("Clarity") and DOES 1 through 10, inclusive (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1.      This action arises out of Defendants' scheme to infringe on Plaintiff's trademarks and domain names, interfere with Plaintiff's contracts and relationships, and unfairly compete with Plaintiff by using unlawful cybersquatting websites, deceptive pricing, and other unfair practices to unlawfully compete with, and to deliberately damage Plaintiff.   Plaintiff seeks injunctive relief, damages, disgorgement, restitution, statutory penalties, punitive damages, attorneys' fees, and costs for trademark infringement, cybersquatting, false designation of origin, intentional interference with contract, intentional interference with prospective economic advantage, violation of California Business and Professions Code section 17200, *et seq*., and common law unfair competition, and unjust enrichment.

## PARTIES

2.      Plaintiff is a Nevada Corporation with its principal place of business at 16795 Von Karman Ave., Suite 230, Irvine CA 92606.  Plaintiff has filed the required "Statement and Designation by Foreign Corporation" with the California Secretary of State in order to do business in California.

3.      On information and belief, Defendant Pentius is a Delaware limited liability company with its registered agent located at 8 The Green, Suite R, Dover, DE and its principal place of business located at 1201 N. Orange Street, Suite 7381, Wilmington, DE 19801.

4.      On information and belief, Defendant Array is a Delaware corporation with its registered agent located at 1209 Orange Street, Wilmington, DE, and its

1   principal place of business located at 6 St. Johns Lane, New York, NY 10013.

2       5.      On information and belief, Defendant System Admin is a Florida limited

3   liability company with its registered agent located at 7901 4th Street North, Suite 300,

4   St. Petersburg, FL 33702, and its principal place of business located at 2234 N.

5   Federal Highway, Suite 453, Boca Raton, FL 33431.

6       6.      On information and belief, Defendant CTH is a Delaware corporation

7   with its registered agent located at 108 W. 13th St., Wilmington, DE 19801.

8       7.      On information and belief, Defendant Pentops is a Delaware limited

9   liability company with its registered agent located at 7901 4X St N. Suite 300, St.

10  Petersburg, FL 33702.

11      8.      On information and belief, Defendant Daily Stocks is a Delaware

12  corporation with its registered agent located at 3933 57th St., New York, NY 11377.

13      9.      On information and belief, Defendant Nectris is a Utah limited liability

14  company with its registered agent located at 1608 East River Lane, Oakley, UT

15  84055.

16      On information and belief, Defendant Clarity is a Florida limited liability

17  company with its registered agent located at 450 Grant Street, LaBelle, FL 33935.

18      10.     On information and belief, Plaintiff alleges that each of the defendants

19  named herein as Does 1 through 10, inclusive, performed, participated in, or abetted

20  in some manner, the acts alleged herein, proximately caused the damages alleged

21  below, and is liable to Plaintiff for the damages and relief sought herein.

22      11.     On information and belief, Plaintiff alleges that, in performing the acts

23  and omissions alleged herein, and at all times relevant hereto, each of the defendants

24  was the agent and employee of each of the other defendants and was at all times acting

25  within the course and scope of such agency and employment with the knowledge and

26  approval of each of the other defendants.

27      12.     The identities of the individuals and entities named as Doe defendants

28  herein are not presently known, but Plaintiff will seek to amend the Complaint to

Rutan & Tucker, LLP
*attorneys at law*

1    properly identify them when their proper names have been ascertained.

2        13.    On information and belief, at all times mentioned herein there existed a

3    unity of interest and ownership between Defendants, such that any individuality and

4    separateness among them has ceased, and that Defendants, and each of them, are the

5    alter egos of each other.  On information and belief, Defendants have used the assets

6    of the Defendants for each of their own purposes and uses and caused the assets of

7    the other Defendants to be transferred to them without adequate consideration and

8    without following corporate formalities.  On information and belief, Defendants have

9    made payments to, and paid the expenses of, one another unrelated to their own

10   respective businesses.

11       14.    On information and belief, Defendants have exercised complete control

12   and dominance over one another, and have failed to follow corporate formalities.  On

13   information and belief, each of the Defendants directly received for themselves the

14   benefits of the transactions described herein and commingled assets and obligations

15   of each other's with their own in contravention of the fiction of their separate

16   existence.  Adherence to the fiction of the separate existence of Defendants as entities

17   distinct from one another would permit an abuse of the corporate privilege and would

18   promote a fraud and/or injustice.

19       15.    Specifically, and without limitation, System Admin, Pentops, Callandor

20   LLC ("Callandor"), CTH, Hotbills LLC ("Hotbills"),[1] Daily Stocks, Nectris, and

21   Clarity (collectively, the "Alter Ego Defendants") are alter egos of Pentius because in

22   all aspects of the business, these companies actually function as one single entity.  The

23   Alter Ego Defendants are grossly undercapitalized, fail to observe corporate

24   formalities, do not pay any dividends, are insolvent, do not have their own officers

25   and directors (or if they do, they are completely overlapping with Pentius' officers

26   and directors), do not have legitimate corporate records, siphoned funds from Pentius,

27

28   [1]   Callandor and Hotbills were named defendants in this lawsuit but have been
     dismissed without prejudice pursuant to settlement agreements with those parties.

1   and are merely a facade for the operations of Pentius. The Alter Ego Defendants'
2   corporate form was fraudulently abused by Pentius in an attempt to obscure Pentius'
3   involvement in the wrongdoing, as alleged in more detail below.

4   **JURISDICTION AND VENUE**

5   16.    This action arises, in part, under the Lanham Act, 15 U.S.C. section 1114
6   *et seq.*, section 1125 *et seq.* This Court has original subject matter jurisdiction over
7   Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) & (b), and pendent
8   jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims
9   are joined with substantially related claims under the Lanham Act.

10  17.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because
11  the amount in controversy exceeds $75,000 exclusive of interest and costs and is
12  between citizens of different states.

13  18.    This Court has personal jurisdiction over Defendants because, on
14  information and belief, Defendants conduct business in and from this state using
15  interactive websites that infringe on Plaintiff's trademarks and have directed their
16  wrongdoing at Plaintiff in this state as alleged herein.

17  19.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) and (3)
18  because a substantial part of the events giving rise to the claims occurred in this
19  District where Plaintiff maintains its principal place of business.

20  **FACTUAL ALLEGATIONS**

21  **A.    Background: Plaintiff is an Industry Leader in Credit Report and**
22  **Monitoring Services**

23  20.    Plaintiff is an industry leader in consumer self-help financial services,
24  including credit management, credit reporting services, credit counseling, and credit
25  monitoring since at least 2009. Plaintiff provides these services through numerous of
26  its own websites such as smartcredit.com, idlock.com, and creditmonitoring.com.
27  Plaintiff also partners with other financial services companies and creates white labels
28  and co-brands for them, which allows Plaintiff's partners to display and utilize

Plaintiff's financial services on the partners' websites.   Among other things, Plaintiff's websites offer memberships that allow customers to view and track their credit scores and reports, receive credit alerts, learn about credit, and use tools to resolve any disputed or fraudulent items that appear on the credit report.  Plaintiff also provides identity theft monitoring and financial management tools through its websites.

21.    Since at least as early as 2009, and before Defendants used any similar mark, Plaintiff or its predecessor-in-interest has continuously and prominently used the Marks: (1) "SMARTCREDIT" and "SMARTCREDIT.COM" (the "SMARTCREDIT Marks"); (2) "IDLOCK" and "IDLOCK.COM" (the "IDLOCK.COM Marks"); and (3) CREDITMONITORING.COM (the "CREDITMONITORING Mark") to denote the source of its high-quality products and services.  The SMARTCREDIT Marks, the IDLOCK.COM Marks, and the CREDITMONITORING Mark are hereinafter collectively referred to as the "Marks."

22.    Plaintiff owns several federal trademark registrations on the United States Patent and Trademark Office's ("USPTO") Principal Register, including for the Mark "SMARTCREDIT" for goods and services in Classes 35, 36, and 42, Registration No. 6068903 dated June 2, 2020 and the Mark "SMARTCREDIT.COM" for goods and services in Classes 35, 36, and 45, Registration No. 3819295 dated July 13, 2010.  The Registration Certificates for the SMARTCREDIT Marks are attached hereto as Exhibits 1 and 2.  The SMARTCREDIT Marks are valid and subsisting and in full force and effect and constitutes conclusive evidence of Plaintiff's exclusive right to use the SMARTCREDIT Marks throughout the United States with respect to, inter alia, consumer self-help financial services.

23.    Plaintiff has committed significant amounts of time, effort, and money over the course of more than 12 years to developing a widely-respected reputation through which the Marks have acquired secondary meaning indicating Plaintiff as the source of its high-quality goods and services.  Thus, before the acts complained

of in this Complaint, members of the general consumer population, including over 4 million consumers who are members of Plaintiff's websites, recognized the Marks as exclusive source identifiers for goods and services relating to consumer self-help financial services as originating from, sponsored, or approved by Plaintiff.

24. On information and belief, Plaintiff has the exclusive right to use the Marks in interstate commerce, and Plaintiff's use has been exclusive since it first adopted the Marks with the exception of unauthorized uses such as by Defendants as described in this Complaint.

25. The Marks are valid and subsisting and remain in full force and effect.

26. Plaintiff has widely advertised, promoted, and sold goods and services under its Marks in numerous and diverse advertising media including print and the internet to promote the strength and renown of its Marks. Plaintiff has achieved a high level of commercial success in selling products and services bearing or sold in connection with its Marks and has built a valuable reputation and substantial goodwill, with which the Marks have become synonymous.

**B.     Defendants Cybersquat on Plaintiff's Websites And Infringe on Plaintiff's Marks**

27. Pentius and Array are competitors of Plaintiff who also provide consumer self-help financial services and create white labels and co-brands for other companies to allow them to display and utilize Pentius and Array's financial services on their websites.

28. Plaintiff recently discovered that Pentius and Array have engaged in a variety of fraudulent, unlawful, and unfair competitive acts directed at Plaintiff and at others in the industry as detailed below. Despite Plaintiff's cease and desist demand, Pentius and Array have failed and refuse to cease their wrongdoing, thus necessitating this lawsuit.

29. Pentius and Array's unfair business practices have been used to interfere with and transfer millions of dollars in business away from Plaintiff's

1  relationships with its partner companies, including but not limited to, Identity Club

2  and its affiliates Arius Group and ID Club, Credit Versio, CreditLife, Novae, and

3  Credit Admiral, which has caused and is continuing to cause Plaintiff harm.

4           a.  Defendants' Cybersquatting Domains Infringe On Plaintiff's

5                Marks and are Used to Unfairly Compete with Plaintiff

6       30.     After Plaintiff's adoption and use of the Marks, Pentius, through the

7  shell company Alter Ego Defendants, created financial services websites using

8  infringing marks and domain names for the specific purpose of unfairly competing

9  with Plaintiff.  Array, in collusion with Pentius, operates and provides the

10 application programming interface platform and other services to these websites,

11 knowing them to be infringements of Plaintiff's websites.  Specifically, Pentius

12 (through the Alter Ego Defendants) created and registered the following domain

13 names, among others, which Array operates and uses: (1) smartcreditview.com and

14 smartcreditcollege.com, which are confusingly similar to Plaintiff's website

15 smartcredit.com; (2) theidlock.com, which is confusingly similar to Plaintiff's

16 website idlock.com; and (3) creditmonitoringsolutions.com,

17 propercreditmonitoring.com, credithivemonitor.com, honestcreditmonitoring.com,

18 and creditmonitormaster.com, which are confusingly similar to Plaintiff's website

19 creditmonitoring.com (collectively, the "Cybersquatting Domains").  Upon

20 information and belief, Defendants intentionally created and operated these

21 Cybersquatting Domains, which are confusingly similar to Plaintiff's website

22 domains, with the bad faith intent to profit from the goodwill that Plaintiff has built

23 through its Marks.

24      31.     Within these confusingly similar websites, Defendants use the marks

25 "smartcreditview," "smartcreditcollege," and "theidlock," (hereinafter collectively

26 referred to as the "Infringing Marks"), which infringe on Plaintiff's

27 SMARTCREDIT Marks and IDLOCK.COM Marks.  Defendants' marketing

28 channels are highly similar to Plaintiff's marketing channels for its own goods and

1  services.

2        32.    Defendants are currently using the Cybersquatting Domains and

3  Infringing Marks in advertising, offering for sale and selling their financial services,

4  which use began well after Plaintiff's adoption and use of the Marks.  Specifically,

5  smartcreditview.com and creditmonitoringsolutions.com offer memberships that

6  allow customers to view and track their credit scores and reports, receive credit

7  alerts, learn about credit, and use tools to resolve any disputed or fraudulent items

8  that appear on the credit report, similar to what Plaintiff's smartcredit.com and

9  creditmonitoring.com do; smartcreditcollege.com offers a membership and sells a

10 course book to educate customers about credit and ways to improve credit, similar to

11 what Plaintiff's smartcredit.com does; theidlock.com offers a membership to a

12 product that scans for potential identity theft and fraud, alerts customers of any

13 suspicious activity, and assist with defending against and countering any identified

14 threats, similar to what Plaintiff's idelock.com does.

15       33.    Defendants are not authorized to use the Cybersquatting Domains or

16 Infringing Marks, or any domains or marks confusingly similar to the Marks in

17 connection with their goods and services, nor are Defendants affiliated with

18 Plaintiff.

19       34.    Given the distinctive nature of the Marks, Defendants' use of the

20 Cybersquatting Domains and Infringing Marks, is likely to cause confusion, mistake

21 and deception such that members of the public are likely to be confused as to the

22 affiliation, connection or relationship between Plaintiff and Defendants, and

23 confused into believing Defendants' goods and services are endorsed by, sponsored

24 by, or affiliated with Plaintiff when they are not.

25       35.    In fact, Defendants' Cybersquatting Domains and Infringing Marks

26 have already led to substantial consumer confusion.  Plaintiff has received numerous

27 phone calls and written inquiries from consumers complaining and demanding

28 refunds and the closing of their accounts, but upon further inquiry it was discovered

1  that they signed up for membership with one of Defendants' Cybersquatting

2  Domains and not one of Plaintiff's websites.

3       36.    Especially given all of Defendants' other unlawful activities as alleged

4  herein, any perceived association by consumers or the industry between Defendants'

5  websites and Plaintiff causes direct harm to Plaintiff.

6       37.    Plaintiff sent a cease and desist letter to Defendants on November 15,

7  2021, but Defendants refused to stop using the Cybersquatting Domains and

8  Infringing Marks.  Defendants have continued to refuse to cease and desist from use

9  of the Cybersquatting Domains and Infringing Marks, continuing the financial

10 injury and damages to Plaintiff in an amount to be determined and rendering

11 Defendants' acts in violation of the Lanham Act willful.  As such, this is an

12 exceptional case within the meaning of the Lanham Act, 15 U.S.C. section 1117,

13 thereby entitling Plaintiff to damages, attorneys' fees, and costs.

14      38.    Plaintiff seeks injunctive relief to halt the irreparable harm caused by

15 Defendants' online and other advertising of financial services in a manner that

16 infringes the Marks.  Without an injunction, Defendants will continue to offer

17 financial services using domain names and websites that infringe on the Marks.

18           b.   Defendants Create And Market Other Cybersquatting Websites

19      39.    Pentius and Array also pre-create various turn-key cybersquatting

20 websites, including copycat websites of nationally known and trademarked brands,

21 and market these copycat websites to Plaintiff's partners such as CreditLife, with

22 whom Plaintiff had an existing agreement and relationship, as an incentive to stop

23 doing business with Plaintiff.  Pentius and Array have presented these turn-key

24 copycat websites to Plaintiff's partners and represent, among other things, that

25 Plaintiff's partners can simply select from one of many premade websites that are

26 ready to go, while concealing crucial information, such as that the premade websites

27 are illegal copycats of other brands, and that permission has not been granted to

28 Pentius and Array to use these third parties' protected trademarks and other

1    intellectual property depicted in the premade websites.

2        40.    For example, Daniel Wilson, a representative of Array (working in

3    conjunction with Pentius, who registered these domains), marketed turn-key copycat

4    websites such as 3bcreditscore.com, 3bcreditscores.com, 3bcreditshield.com,

5    3bcreditwatch.com, credilifeguard.com, credilifelock.com, creditlifelock.com, and

6    my800creditshielf.com to CreditLife, without informing CreditLife that these are

7    actually copycat domains of other protected domains such as lifelock.com and

8    contain infringing marks within the websites.  By concealing this information from

9    CreditLife and offering the unfair pricing as detailed further below, CreditLife

10   ultimately decided to divert its business, at least in part, to Array and Pentius instead

11   of to Plaintiff.

12       41.    On information and belief, Pentius created and registered (through the

13   Alter Ego Defendant and other such shell companies) and with knowledge of the

14   infringement Array operates, or has operated, the following copycat websites in

15   addition to the Cybersquatting Domains, among others: (1) wisecreditkarma.com, a

16   copycat of Credit Karma's creditkarma.com; (2) myficofuture.com, a copycat of

17   myfico.com; (3) mycreditbliss.com, a copycat of creditbliss.com; (4)

18   myfreecreditscoresnow.com, a copycat of myfreescorenow.com; (5)

19   creditlifelock.com, a copycat of Norton's lifelock.com; (6) 3bcreditwatch.com, a

20   copycat of Experian's creditwatch.com; and (7) truecreditview.com, a copycat of

21   TransUnion's truecredit.com.[2]

---

[2]   Other such copycat websites include, but are not limited to: myscore.com,
checkfreescore.com, clickfreescore.com, clickyourscores.com, identityprotect.com,
secure.freescoreconnect.com, checkcredittoday.com, creditcosmo.com,
creditscorefun.com, creditscoresforme.com, freecreditscoreseeker.com,
getidentityprotect.com, goldencreditscores.com, goldfew.com, mycreditcosmo.com,
scorehug.com, 3goldencreditscores.com, freescoreclick.com, havisant.com,
lovemyscores.com, ocuseek.com, procredit.com, tenchant.com, tenzant.com, and
trontus.com.  Defendants are constantly deactivating and reactivating their websites,
likely in recognition of the illegality of their websites and/or in response to red flags

c. <u>Defendants Attempt To Conceal Their Involvement With The Copycat Websites</u>

42.     On information and belief, Pentius has set up a network of shell companies, including the Alter Ego Defendants, to register these copycat websites in an attempt to hide its and Array's involvement, and then attempted to further hide the existence of the shell companies by recently taking all mention of these shell companies off of the websites.  For example, creditmonitoringsolutions.com used to state that a shell company, "Callandor, LLC" was the "proud owner of this website," but it has now been changed to state that "creditmonitoringsolutions.com is the proud owner of this website" in an attempt to conceal the website's connection to the shell company.  Smartcreditview.com used to state that a shell company, "CTH Skin Corp." was the "proud owner of this website," but it has now been changed to state that "smartcreditview.com is the proud owner of this website."  Theidlock.com used to state that "Hotbills LLC is the proud owner of this website" but now states that "theidlock.com is the proud owner of this website."  Additionally, the other copycat websites are, or were before the ownership information was deliberately concealed, portrayed as being owned by a different company; i.e., checkfreescore.com (UU Marketing), 3freeonlinescores.com (Qualfour, LLC), 3gldscr.com (Golden Few LLC), as well as many others.  Although Defendants do not disclose the owners of the other Cybersquatting Domains, Plaintiff has since learned that smartcreditcollege.com is registered to Daily Stocks, Inc., propercreditmonitoring.com and honestcreditmonitoring.com are registered to Nectris, LLC, and credithivemonitor.com and creditmonitormaster.com are registered to Clarity Progression, LLC.

---

that many in the industry have raised about their legitimacy.  For example, Defendants' websites wisecreditkarma.com and truecreditview.com appear to have been taken down completely as of November 1, 2021 but are now live again as of November 14, 2021 and continue to be live as of January 17, 2022.

43.     These "owners" of the websites are shell companies that exist for no purpose other than as a vehicle for fraud to obfuscate Pentius' involvement.  For example, they each have an associated address that appears to be unoccupied residences or addresses of other unassociated businesses; i.e., Callandor's address was identified as 343 E. 30th St., Apt. 6E, New York, NY 10016, which is a residence and CTH's address was identified as 4091 Wooster Dr., Oceanside, CA, which is a residence.  There does not seem to be any records or information available regarding these shell corporations, i.e., any corporate websites or associated employees.

44.     To the extent any individuals can be traced to the shell companies, the random persons identified as associated with the companies are not qualified to be running credit report and monitoring businesses.  For example, truecreditview.com was registered to an individual by the name of Brett Horan, who is related to other individuals identified as the registered owners of other copycat websites.  Mr. Horan has a longstanding career in the landscaping business, which is actively and currently being promoted on his social media account, yet he has no experience whatsoever in the credit report or monitoring industry or anything similar.  This demonstrates that these individuals are being used by Pentius and Array to obfuscate ownership of the shell companies.

45.     Despite Pentius and Array's attempts to hide their involvement, Plaintiff is informed and believes that Pentius and Array are behind each of these copycat websites and shell companies because the websites all share similar ASN and IP addresses tracing back to Defendant System Admin, LLC, which is owned by Michael LaSala, who is a Director of Pentius and files all of Pentius' annual reports.  Defendant System Admin is also a shell company because it reported to the Federal Communications Commission that it does not provide any telecommunications services as of July 26, 2019, yet still holds the registrations to all of the copycat websites.  Many of the shell companies under which the websites are operated are

also connected to Mr. LaSala.  Moreover, there are substantial similarities between all of the copycat websites, including nearly identical footers and member services and contact us pages.  Pentius, Array, and all of the copycat websites share identical privacy policies that are copied nearly word for word.  On information and belief, Pentius directly manages over 450 of these copycat websites[3] that have been established by Mr. LaSala.  System Admin's CEO is Martin Toha, who is also the founder and executive of Pentius and Array.  The CTO for Array is Phillip Zedalis, who is also the Director of Development at Pentius.  Array stated in a publically-available video that it is a "spin-off" of Pentius.

46.     As further evidence that Pentius and Array are behind these copycat websites, on approximately April 14, 2020, Plaintiff received an online inquiry from Paul Quintal asking about Plaintiff's products, before Plaintiff learned of the copycat websites.  Mr. Quintal represented that he worked for an online marketing company called Credmo that operated a website called identityprotect.com, which bore all the same markings as the other copycat websites.  The address listed for contact of identityprotect.com was 445 Dexter Ave., Suite 4050, Montgomery, Alabama, which was an executive suite maintained by Regis, an unrelated business.  Upon further investigation, Mr. Quintal was identified as the EVP and COO for Pentius.  Plaintiff is informed and believes that Mr. Quintal contacted Plaintiff in order to obtain information about Plaintiff to use in their scheme described herein.

47.     Plaintiff is informed and believes that Pentops is a wholly-owned subsidiary and alter ego of Pentius because, in addition to the other allegations contained herein, Pentius is Pentops' only named manager, and they share the same addresses and officers.  Plaintiff is informed and believes that Pentius and Array use

---

[3]   These include, but are not limited to these strange and nefarious website names: SVCRT.com, CRDFX.com, GETIDP.com, CHKSCR.com, CRSCR.com, CSFRME.com, SCRHUG.com, CSMBLT.com, GFW*3GLDSCR.com, GLDSCR.com, RPTMYSCORE.com, SRVTS.com, GLDFEW.com, SCRSHIN.com, SCRSWT.com, SCRZNI.com, and SCCRSH.com.

1   Pentops to provide the credit data to the Cybersquatting Domains, with Pentops'
2   knowledge of the infringing conduct alleged above.

3       48.   Plaintiff and others have demanded that Defendants cease and desist
4   these unlawful activities of creating copycat websites and using them to unfairly
5   compete, but Defendants have refused.

6   **C.   Defendants Engage In Other Acts Of Unfair Competition**

7           a.   Defendants Communicate False Information About Plaintiff to
8           Plaintiff's Partners

9       49.   On information and belief, Pentius and Array falsely told partners of
10   Plaintiff that Plaintiff provides consumers with outdated credit reports that are up to
11   two weeks old, in an attempt to divert the partners' business from Plaintiff to
12   Pentius and Array's websites.  These representations are false, and Defendants have
13   no basis for believing them to be true.

14           b.   Defendants Engage In Unfair Competition Relating to Merchant
15           Processing Accounts

16       50.   On information and belief, Pentius and Array fail to timely answer their
17   customer service lines in response to requests to cancel memberships, which has
18   resulted in an alarming number of chargebacks.  Rather than dealing with consumer
19   calls and resulting chargebacks in a proper manner required by Card Processing
20   Networks, Pentius and Array created hundreds of merchant processing accounts[4]
21   using their hundreds of fraudulent shell corporations and hundreds of fraudulent
22   websites in an attempt to hide the significant consumer service and chargeback
23   problems.  These merchant processor accounts have also been set up under various
24   names of friends and families of those associated with Defendants to further conceal

25

26   [4]   The merchant processing IDs include, but are not limited to: Norscore LLC,
27   CredCall LLC, Norscore Inc., GoldenFew LLC, Golden Scores LLC, Tanasie
Scores LLC, Identech LLC, Repairtech LLC, Reportech LLC, Cosemblant LLC,
28   and Promeritum Limited.

1  ownership of these issues.

2      51.   For example, a member of Defendants' smartcreditview.com copycat

3  website reported that their credit card was charged by three different merchant

4  processors under three different website names for their smartcreditview.com

5  membership fees using the billing names of smartcreditviewcom,

6  scorechecksecurecom, and mycreditviewercom over the course of just six

7  consecutive months.

8          c.  <u>Defendants Deceptively Market "3B Reports" And Circumvent</u>

9                <u>Industry Standards.</u>

10      52.   It is industry standard for credit report companies such as Plaintiff and

11  Defendants to pay different prices to the credit reporting agencies depending on

12  whether they are purchasing: (1) individual credit reports from one credit reporting

13  agency; or (2) 3-Bureau Credit Reports ("3B Reports") that combine credit reports

14  from the three main credit reporting agencies ("CRAs").  This is because the three

15  main CRAs have reciprocity agreements between them that require them to pay each

16  other when using another's data within 3B Reports.  As such, as a uniform rule

17  across the industry, these three main CRAs cannot sell 3B Reports to credit report

18  companies at below a certain minimum cost as set by the costs they have to pay each

19  other.  In order to ensure that credit report companies purchasing data from the

20  CRAs do not try to circumvent these higher 3B Reports costs by purchasing credit

21  reports separately from each CRA and combining them into a "3B Report" package,

22  each of the CRA's standard contracts require credit report companies to pay the

23  higher 3B Reports price even if the credit reporting companies purchase individual

24  credit reports for the purpose of presenting them as 3B Reports or the equivalent.

25      53.   Pentius, Array, and Pentopscircumvented these requirements by

26  purchasing credit reports individually, at lower prices, and then packaging them

27  together and selling them to consumers as "3B Reports" at prices substantially lower

28  than the established 3B Reports costs that all other credit companies are bound to

pay, in violation of the CRA's rules and industry standard.  Defendants have thus deceptively presented these 3B Reports to consumers as legitimate 3B Reports, when, in fact, they are not legitimate and not sanctioned by the CRAs.  Furthermore, Defendants employ sophisticated measures to deliberately obfuscate this conduct. For example, Array uses credit reports that are purchased through Pentius and Pentops from the CRAs in order to hide from the CRAs that they are circumventing the 3B Reports pricing.  Such conduct is prohibited by industry standards and the effects of such conduct is to significantly threaten or harm competition because Defendants are selling 3B Reports at prices that are significantly lower than all other credit companies' costs.

d. <u>Defendants Engage In Fraud and Misrepresentation Relating to Relationships with CRAs</u>

54.   Pentius and Array misrepresented in marketing materials and in recent publicly available video footage that Array purchases products directly from the all three main CRAs, but Array does not have valid contracts directly with all three CRAs and is likely using Pentius and/or Pentops' relationships with those CRAs. For those CRAs that Defendants do have any relationship with, Defendants are violating the terms of those relationships by fraudulently ordering credit reports and misclassifying the use thereof as 3B Reports, as detailed above.

e. <u>Defendants Fraudulently and Improperly Resell Consumer Information</u>

55.   Pentius and Array also admitted in recent publicly available video footage to sharing raw consumer data freely with third parties.  On information and belief, Defendants' websites send full, raw, and unredacted credit report data to third parties.  This use of consumer data is fraudulent, improper, and unfair given Defendants make specific representations to consumers about the privacy and use of their personal information, and presumably have provided contractual assurances that match industry standards stating that they will not share consumer information

1 with anyone other than the consumer to whom it pertains.  This conduct also

2 violates the GLB Privacy Rule and Safeguards Rule by failing to properly advise

3 consumers about how their personal information is processed.

4           f.  Defendants Fail to Safeguard and Secure Consumer Information

5           56.    On information and belief, Pentius and Array fail to employ meaningful

6 security controls to adequately protect the confidentiality, integrity, and availability

7 of the sensitive personal information of consumers.  Within Defendants' website,

8 there are multiple references to Payment Card Industry Data Security Standards

9 ("PCI") for transferring and storing credit report data, yet no further evidence of

10 Defendants actually obtaining PCI compliance is shown within the site.  Moreover,

11 PCI is the authority that upholds the standards for credit card and payment

12 processing data practices, and not the storing of credit report data.  Defendants also

13 represent that their websites are secured by McAfee, when, in fact, they are not.

14 The use of these terms is an attempt, by Defendants, to misrepresent the security of

15 the credit report data sharing and lack of proper data storing practices.

16           57.    Defendants websites also have a list of APIs that lacks meaningful

17 security because they do not limit the delivery of the credit data, therefore allowing

18 the data to be stored by each third-party partner in an unregulated method.  The

19 failure to have proper security measures in place puts consumers and other providers

20 at risk of data breaches, in violation of various protections such as the Gramm-

21 Leach-Bliley Act (16 C.F.R. § 314.3), Cal. Civ. Code § 1798.81.5, and Cal. Civ.

22 Code § 1798.150.

23           g.  Defendants Fail To Comply With Applicable Laws &
24               Regulations

25           58.    Defendants fail to comply with some of the most basic laws &

26 regulations, for example, Defendants operate numerous websites with no service of

27 process contact information in violation of Cal Corporations Code § 1502; operate

28 websites with no working or viable contact information in violation of Civil Code

§§ 1798.83 and 1798.130; operate websites (including the copycats of Plaintiff's websites) with Terms & Conditions and Privacy links that do not work in violation of Cal Bus. And Prof. Code § 22575 *et seq.*; and list data sharing practices that directly conflict with the California Consumer Privacy Act and other such similar regulations, with which the websites falsely claim compliance.

## FIRST CAUSE OF ACTION

**Federal Trademark Infringement Against Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks**

**[15 U.S.C. § 1114]**

59.     Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

60.     By the acts and omissions set forth above, Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks have infringed and continue to infringe Plaintiff's federally registered trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. section 1114.  Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks's conduct and use of the SMARTCREDIT Marks or marks confusingly similar to the SMARTCREDIT Marks is likely to cause confusion, mistake, and deception among the general purchasing public as to the affiliation, connection, association, origin, sponsorship or approval of their goods and services, and interfere with Plaintiff's ability to use its SMARTCREDIT Marks to indicate a single quality control source of goods and services.

61.     Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law.  Plaintiff is therefore entitled to a preliminary and permanent injunction against further infringing conduct by Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks.

62.     Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily

Stocks have profited and are profiting by such infringement and Plaintiff has been, and is being, damaged by such infringement.  Plaintiff is therefore entitled to recover damages from Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks in an amount to be proved at trial as a consequence of their infringing activities.

63.     Defendants are, at a minimum, liable for contributory infringement. Specifically, Plaintiff is informed and believes that smartcreditview.com is registered to CTH Skin Corp. and smartcreditcollege.com is registered to Daily Stocks. and that both of these entities contract with Array, who provides application protocol interfaces ("APIs") and branding services, and provides a host of other services to the infringing websites.  Pentius and System Admin are Array's designated hosting service provider for these infringing websites; Pentius provides "technology platform management services to Array, including data center co-location, internet connectivity for the data center, software and hardware, domain hosting and IT security management services" and fulfills these services "through Pentius' wholly owned subsidiary, System Admin."  System Admin "owns the IP addresses to which those websites are or were directed."  Pentops provides the credit data to these infringing websites.  Pentius, System Admin, Array, and Pentops provide these services to the infringing websites knowing them to be infringing.

64.     Plaintiff sent a cease and desist letter to Defendants on November 15, 2021, but Defendants refused to stop using the Infringing Marks.  Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks have continued to refuse to cease and desist from use of the Infringing Marks, causing financial injury and damages to Plaintiff in an amount to be determined and rendering their acts in violation of the Lanham Act willful.  As such, this an exceptional case within the meaning of the Lanham Act, 15 U.S.C. section 1117, thereby entitling Plaintiff to damages, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

### Violation of the Anti-Cybersquatting Consumer Protection Act Against All Defendants

### [15 U.S.C. § 1125(d)]

65.     Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

66.     Defendants' acts as alleged herein with respect to their Cybersquatting Domains constitute a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

67.     As alleged above, Plaintiff has valid and subsisting ownership rights in the Marks, which marks are distinctive and famous.

68.     Defendants' aforesaid use of the Cybersquatting Domains is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods and services, in that purchasers are likely to believe that Plaintiff authorizes or controls the advertising, offering, or sale of Defendants' goods and services described above, or that Defendants are associated with or authorized by Plaintiff to advertise, offer, or sell those goods and services.

69.     Defendants use the Cybersquatting Domains with a bad faith intent to profit from the distinctiveness and goodwill of Plaintiff's Marks.

70.     Defendants' conduct constitutes violations of the Anti-Cybersquatting Consumer Protection Act that has violated, and unless restrained and enjoined by this Court will continue to violate, Plaintiff's rights to its domain names, and has caused irreparable harm, damage, and injury to Plaintiff's goodwill and business reputation.

Defendants are, at a minimum, liable for contributory infringement. Specifically, Plaintiff is informed and believes that smartcreditview.com is

registered to CTH Skin Corp., smartcreditcollege.com is registered to Daily Stocks. theidlock.com is registered to Hotbills, creditmonitoringsolutions.com is registered to Callandor, propercreditmonitoring.com and honestcreditmonitoring.com are registered to Nectris, and credithivemonitor.com and creditmonitormaster.com are registered to Clarity, and that all of these entities contract with Array, who provides application protocol interfaces ("APIs") and branding services, and provides a host of other services to the infringing websites.  Pentius and System Admin are Array's designated hosting service provider for these infringing websites; Pentius provides "technology platform management services to Array, including data center co-location, internet connectivity for the data center, software and hardware, domain hosting and IT security management services" and fulfills these services "through Pentius' wholly owned subsidiary, System Admin."  System Admin "owns the IP addresses to which those websites are or were directed."  Pentops provides the credit data to these infringing websites.  Pentius, System Admin, Array, and Pentops provide these services to the infringing websites knowing them to be infringing.

71.  Plaintiff has been and continues to be irreparably injured as a result of Defendants' infringement and wrongful acts and has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction requiring Defendants to forfeit and cancel the Cybersquatting Domains.  Plaintiff is further entitled to statutory damages under the Anti-Cybersquatting Consumer Protection Act.

72.  Plaintiff sent a cease and desist letter to Defendants on November 15, 2021, but Defendants refused to stop using the Cybersquatting Domains. Defendants have continued to refuse to cease and desist from use of the Cybersquatting Domains, causing financial injury and damages to Plaintiff in an amount to be determined and rendering Defendants' acts willful.  As such, this an exceptional case entitling Plaintiff to damages, attorneys' fees, and costs.

## **THIRD CAUSE OF ACTION**

### **False Designation of Origin and Unfair Competition Against Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks**
### **[15 U.S.C. § 1125(a)]**

73.    Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

74.    Defendants' acts as alleged herein also constitute false designation of origin and unfair competition in violation of Lanham Act section 43(a), 15 U.S.C. section 1125(a).

75.    Defendants' aforesaid advertising, offering for sale, and sale of services in connection with the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods and services, in that purchasers are likely to believe that Plaintiff authorizes or controls the advertising, offering, or sale of Defendants' goods and services described above, or that Defendants are associated with or authorized by Plaintiff to advertise, offer, or sell those goods and services.

76.    Defendants' use in commerce of Plaintiff's SMARTCREDIT Marks and IDLOCK.COM Marks, or marks confusingly similar to those marks, in connection with Defendants' services constitutes a false designation of the origin and/or sponsorship of such services, and falsely describes and represents such services.

77.    Defendants' conduct constitutes unfair competition that has violated, and unless restrained and enjoined by this Court will continue to violate, Plaintiff's trademark rights, and has caused irreparable harm, damage, and injury to Plaintiff's goodwill and business reputation.

Defendants are, at a minimum, liable for contributory infringement.

Specifically, Plaintiff is informed and believes that smartcreditview.com is registered to CTH Skin Corp., smartcreditcollege.com is registered to Daily Stocks. and theidlock.com is registered to Hotbills, and that all of these entities contract with Array, who provides application protocol interfaces ("APIs") and branding services, and provides a host of other services to the infringing websites.  Pentius and System Admin are Array's designated hosting service provider for these infringing websites; Pentius provides "technology platform management services to Array, including data center co-location, internet connectivity for the data center, software and hardware, domain hosting and IT security management services" and fulfills these services "through Pentius' wholly owned subsidiary, System Admin." System Admin "owns the IP addresses to which those websites are or were directed."  Pentops provides the credit data to these infringing websites.  Pentius, System Admin, Array, and Pentops provide these services to the infringing websites knowing them to be infringing.

78.    Plaintiff has been and continues to be irreparably injured as a result of Defendants' infringement and wrongful acts and has no adequate remedy at law. Plaintiff is therefore entitled to a permanent injunction against further infringing and unlawful conduct by Defendants.

79.    Defendants have profited and are profiting by such infringement and Plaintiff has been and is being damaged by such infringement.  Plaintiff is therefore entitled to recover damages from Defendants in an amount to be proved at trial as a consequence of Defendants' infringing and unlawful activities.

80.    Plaintiff sent a cease and desist letter to Defendants on November 15, 2021, but Defendants refused to stop using the Infringing Marks.  Defendants have continued to refuse to cease and desist from use of the Infringing Marks, causing financial injury and damages to Plaintiff in an amount to be determined and rendering Defendants' acts in violation of the Lanham Act willful.  As such, this an exceptional case within the meaning of the Lanham Act, 15 U.S.C. section 1117,

thereby entitling Plaintiff to damages, attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION

### Intentional Interference With Contract Against Pentius and Array

81.     Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

82.     Plaintiff had valid contracts with partner companies such as, but not limited to, Identity Club and its affiliates Arius Group and ID Club, Credit Versio, CreditLife, Novae, and Credit Admiral to which Defendants were not a party, which were likely to bring future economic benefit to Plaintiff.

83.     Pentius and Array solicited business from each of these third parties, knowing them to be partners of Plaintiff with active contracts.  Pentius and Array, with the intent to interfere with Plaintiff's contract, caused actual disruptions to Plaintiff's contracts with these third parties by diverting their business away from Plaintiff and to Pentius and Array by, among other things, offering unfair 3B Reports prices and turn-key copycat websites (without telling the third parties that the websites violated other companies' protected domain rights), as further alleged above.  Pentius and Array's conduct was further wrongful given their failure to comply with security standards and other regulations as detailed above.

84.     At the time of these actions, Pentius and Array knew these third parties to be partners of Plaintiff because it is patently obvious from looking at the third parties' websites that they are associated with Plaintiff.  For example, Credit Versio and Novae are cobrands of Plaintiff, so their websites had domain names that started with smartcredit.com, i.e., smartcredit.com/novae and smartcredit.com/creditversio. Identity Club is a white label[5] of Plaintiff's, and Plaintiff's product as displayed on all of its white labels is unique because it contains patented action buttons that

---

[5]   A white label is a product or service provided by one company (Plaintiff) to other companies for use on the other companies' websites.

connect consumers directly to their creditors to address credit issues and is the only such product that contains a horizontal sliding credit report.  Credit Admiral had a referral relationship with Plaintiff wherein their website would direct users to Plaintiff's smartcredit.com website.  These actions, coupled with their use of the Infringing Marks and the Cybersquatting Domains, make clear that Pentius and Array intentionally interfered with Plaintiff's partners.

85.     Defendants' misconduct is the direct and proximate cause of damages to Plaintiff.  For example, before Identity Club began contracting with Pentius and Array, Identity Club paid Plaintiff approximately $400,000 a month in fees, which decreased to below $160,000 a month and continues to decrease since they began working with Pentius and Array, amounting to well over $1 million in damages to Plaintiff from the disruption of that relationship alone through the filing of this complaint, which damages continue to accrue.

86.     Plaintiff is entitled to compensatory damages in an amount to be determined at trial as well as disgorgement of all revenues and profits associated with Defendants' interference.

87.     Defendants' misconduct was malicious, oppressive, and in reckless disregard of Plaintiff's rights under California law.  Actual harm has been inflicted on Plaintiff as a result of that misconduct, and Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendants for their actions.

88.     Plaintiff has been and continues to be irreparably injured as a result of Defendants' interference and has no adequate remedy at law.  Plaintiff is therefore entitled to a permanent injunction against further interference by Defendants.

## FIFTH CAUSE OF ACTION

### Intentional Interference With Prospective Economic Advantage Against Pentius and Array

89.     Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

90.     Plaintiff had valid contracts with partner companies such as, but not limited to, Identity Club and its affiliates Arius Group and ID Club, Credit Versio, CreditLife, Novae, and Credit Admiral to which Defendants were not a party, which were likely to bring future economic benefit to Plaintiff.

91.     Pentius and Array solicited business from each of these third parties, knowing them to be partners of Plaintiff with active contracts.  Pentius and Array, with the intent to interfere with Plaintiff's contract, caused actual disruptions to Plaintiff's contracts with these third parties by diverting their business away from Plaintiff and to Pentius and Array by, among other things, offering unfair 3B Reports prices and turn-key copycat websites (without telling the third parties that the websites violated other companies' protected domain rights), as further alleged above.  Pentius and Array's conduct was further wrongful given their failure to comply with security standards and other regulations as detailed above.

92.     At the time of these actions, Pentius and Array knew these third parties to be partners of Plaintiff because it is patently obvious from looking at the third parties' websites that they are associated with Plaintiff.  For example, Credit Versio and Novae are cobrands of Plaintiff, so their websites had domain names that started with smartcredit.com.  Identity Club is a white label of Plaintiff's, and Plaintiff's product as displayed on all of its white labels is unique because it contains patented action buttons that connect consumers directly to their creditors to address credit issues and is the only such product that contains a horizontal sliding credit report. Credit Admiral had a referral relationship with Plaintiff wherein their website would

direct users to Plaintiff's smartcredit.com website.

93.    Defendants' misconduct is the direct and proximate cause of damages to Plaintiff.  For example, before Identity Club began contracting with Pentius and Array, Identity Club paid Plaintiff approximately $400,000 a month in fees, which decreased to below $160,000 a month since they began working with Pentius and Array, amounting to well over $1 million in damages to Plaintiff from the disruption of that relationship alone.

94.    Plaintiff is entitled to compensatory damages in an amount to be determined at trial as well as disgorgement of all revenues and profits associated with Defendants' interference.

95.    Defendants' misconduct was malicious, oppressive, and in reckless disregard of Plaintiff's rights under California law.  Actual harm has been inflicted on Plaintiff as a result of that misconduct, and Plaintiff is therefore entitled to an award of punitive damages in an amount sufficient to punish Defendants for their actions.

96.    Plaintiff has been and continues to be irreparably injured as a result of Defendants' interference and has no adequate remedy at law.  Plaintiff is therefore entitled to a permanent injunction against further interference by Defendants.

## SIXTH CAUSE OF ACTION

**Unfair Competition per Cal. Business & Professions Code § 17200 Against All Defendants**

97.    Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

98.    Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair competition, including by losing partners such as, but not limited to, identityclub.com and its affiliates ariusgroup.com & idclub.com, and therefore has standing to pursue this claim.

99.    Defendants' conduct and actions as alleged herein, including without limitation Defendants' trademark infringement, cybersquatting, copycat websites, unfair pricing, fraud on the public, and violation of other laws as detailed above, constitute unfair, unlawful, and fraudulent conduct.  Defendants have no valid or legitimate purpose for such conduct except to unfairly benefit Defendants at Plaintiff's expense.

100.    Plaintiff is entitled to restitutionary damages and because Defendants are likely to continue with their unlawful conduct absent an injunction, Plaintiff is entitled to a preliminary and permanent injunction.

## SEVENTH CAUSE OF ACTION

### Common Law Unfair Competition Against All Defendants

101.    Plaintiff repeats and incorporates by this reference each and every allegation contained in each of the preceding paragraphs, inclusive, as though set forth in full.

102.    Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair competition, including by losing partners such as, but not limited to, identityclub.com and its affiliates ariusgroup.com & idclub.com, and therefore has standing to pursue this claim.

103.    Defendants' conduct and actions as alleged herein, including without limitation Defendants' trademark infringement, cybersquatting, copycat websites, unfair pricing, fraud on the public, and violation of other laws as detailed above, constitute unfair, unlawful, and fraudulent conduct.  Defendants have no valid or legitimate purpose for such conduct except to unfairly benefit Defendants at Plaintiff's expense.

104.    Plaintiff is entitled to restitutionary damages and because Defendants are likely to continue with their unlawful conduct absent an injunction, Plaintiff is entitled to a preliminary and permanent injunction.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an order and judgment against Defendants as follows:

1.     For an Order that Defendants, and each of them, their owners, partners, agents, servants, distributors, affiliates, employees, representatives, and all those in privity or acting in concert with Defendants or on their behalf, be permanently enjoined and restrained from, directly or indirectly:

a.     Selling, offering to sell, advertising, displaying, or using the Infringing Marks, or any derivative thereof or any other mark similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the sale, advertising, marketing and promotion of their financial services;

b.     Operating or otherwise providing services to the Cybersquatting Domains or any derivative thereof or any other websites similar thereto, alone or in combination with other words, names, styles, titles, designs or marks in connection with the sale, advertising, marketing and promotion of their financial services;

c.     Creating or operating or providing services to any further copycat websites of Plaintiff's websites;

d.     Extorting or attempting to extort Plaintiff's partners with use of any copycat websites or other similar harmful or threatening tactics;

e.     Making any further false statements about Plaintiff;

f.     Purchasing individual credit reports for the purpose of deceptively packaging them as 3B Reports or the equivalent;

g.     Making any further false statements about Defendants' relationships with the CRAs;

h.     Sharing consumer credit report information with third parties without the consumers' express permission;

i.     Operating financial self-help websites with insufficient security

1  measures; and

2          j.     Creating and using multiple merchant processing accounts for

3  each website in an attempt to conceal chargebacks and customer service

4  deficiencies.

5       2.     For an order requiring Defendants to deliver to Plaintiff's attorneys

6  within thirty (30) days after the entry of any injunction, to be impounded or

7  destroyed by Plaintiff, all graphics, literature, signs, labels, prints, packages,

8  wrappers, containers, advertising and promotional materials, products and any other

9  written materials or items in Defendants' possession or control that bear the

10  Infringing Marks, or any other mark similar thereto, together with all means and

11  materials for making or reproducing the same, pursuant to 15 U.S.C. section 1118,

12  and other applicable laws;

13       3.     For an order requiring Defendants to permanently deactivate the

14  Cybersquatting Domains and any other websites that are derivative thereof or use

15  other mark similar thereto, alone or in combination with other words, names, styles,

16  titles, designs or marks in connection with the sale, advertising, marketing and

17  promotion of their financial services;

18       4.     For an order requiring Defendants to file with the Clerk of this Court

19  and serve Plaintiff, within thirty (30) days after the entry of any preliminary or

20  permanent injunction, a report in writing, under oath, setting forth in detail the

21  manner and form in which Defendants have complied with 1 through 3 above;

22       5.     For an award of Defendants' profits and Plaintiff's damages according

23  to proof at trial;

24       6.     For an order requiring Defendants to account for and pay to Plaintiff all

25  gains, profits and advantages derived by Defendants from the unlawful activities

26  alleged herein, and/or as a result of unjust enrichment;

27       7.     For statutory penalties;

28       8.     For an award of pre-judgment interest at the highest rate allowed by

1  law;

2          9.      For punitive damages;

3          10.     For restitution;

4          11.     For an award of Plaintiff's attorneys' fees, costs and expenses,

5  including but not limited to expert witness fees, incurred in this action, pursuant to

6  15 U.S.C. section 1117 and any other applicable statutes; and

7          12.     For such further relief as this Court shall deem just and proper.

8

9  Dated:  April 7, 2022                    Respectfully submitted

10                                          RUTAN & TUCKER, LLP

11

12                                  By: _*/s/ Proud Usahacharoenporn*___
                                        Proud Usahacharoenporn
13                                      Attorneys for Plaintiff
                                        ConsumerDirect, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial

3  on all claims which are triable to a jury in this action.

4

5  Dated:  April 7, 2022                              RUTAN & TUCKER, LLP

6

7                                          By: */s/ Proud Usahacharoenporn*
                                               Proud Usahacharoenporn
8                                              Attorneys for Plaintiff
                                               ConsumerDirect, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rutan & Tucker, LLP**
*attorneys at law*

2530/102119-0036
17690476

SECOND AMENDED COMPLAINT
-33-