ROBERT J. NOLAN (Bar No. 235738)
robert.nolan@dlapiper.com
MATTHEW F. MILLER (Bar No. 172661)
matt.miller@dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, California 94105-2933
Tel: 415.836.2500 | Fax:  415.836.2501

[Additional Attorneys listed on the following page]

Attorneys for Counterclaimant and Defendant
ARRAY US INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMERDIRECT, INC., a Nevada corporation<br><br>                    Plaintiff,<br><br>          v.<br><br>PENTIUS, LLC, a Delaware limited liability company; ARRAY US, INC., a Delaware corporation; SYSTEM ADMIN, LLC, a Florida limited liability company; CTH SKIN CORP. a Delaware corporation; PENTOPS, LLC, a Delaware limited liability company, DAILY STOCKS, INC., a Delaware corporation, NECTRIS, LLC, a Utah limited liability company, CLARITY PROGRESSION, LLC, a Florida limited liability company; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | CASE NO.  8:21-CV-01968-JVS-ADSx<br><br>**DEFENDANT ARRAY US INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIMS FOR:**<br><br>1. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>2. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>3. **TRADE LIBEL**<br>4. **VIOLATION OF CAL. BUS. & PROF. CODE § 17200 (UCL)**<br><br>**JURY TRIAL DEMANDED**<br><br>Complaint Filed: December 1, 2021<br>Trial Date: July 11, 2023 at 8:30 a.m. |
| ARRAY US INC., a Delaware corporation,<br><br>                    Counterclaimant,<br><br>          v.<br><br>CONSUMERDIRECT, INC. a Nevada corporation, and DOES 1-10, inclusive,<br><br>                    Counter-Defendants. | |

ARRAY'S ANSWER AND COUNTERCLAIMS

MICHAEL A. GELLER (*pro hac vice*)
michael.geller@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
Tel: 312.368.2152| Fax: 312.251.2187

OSCAR M. OROZCO-BOTELLO (Bar No. 313104)
oscar.orozco-botello@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
4th Floor, North Tower
Los Angeles, California 90067
Tel: 310.595.3000| Fax: 310.595.3300

Attorneys for Counterclaimant and Defendant
ARRAY US INC.

# ANSWER

Defendant Array US Inc. ("Array"), through its undersigned counsel, hereby answers and asserts affirmative defenses to the Second Amended Complaint ("Amended Complaint") of Plaintiff, ConsumerDirect, Inc. ("ConsumerDirect") (Dkt. No. 93). Paragraph numbers in this document correspond to the paragraph numbers of the Amended Complaint and respond to all allegations of the corresponding Amended Complaint paragraph, up to the Affirmative Defenses and Counterclaim section of this document. Array's answers and affirmative defenses are based on information and knowledge thus far secured by Array, and Array reserves the right to amend to supplement its answers or affirmative defenses based on facts later discovered, pleaded, or offered. To the extent that any express or implied allegations in the Amended Complaint are not specifically admitted herein, Array hereby denies such allegations.

## NATURE OF ACTION

1.    Denied.

## PARTIES

2.    Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 2, and therefore denies those allegations.

3.    Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 3, and therefore denies those allegations.

4.    Admitted that Array is a Delaware corporation with its registered agent located at 1209 Orange Street, Wilmington, Delaware and its principal place of business at 6 St. Johns Lane, New York, NY 10013.

5.    Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 5, and therefore denies those allegations.

6.    Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 6, and therefore denies those allegations.

7.    Array lacks sufficient knowledge or information to form a belief as to

ARRAY'S ANSWER AND COUNTERCLAIMS

the allegations set forth in Paragraph 7, and therefore denies those allegations.

8.      Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 8, and therefore denies those allegations.

9.      Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 9, and therefore denies those allegations.

10.     Denied.

11.     Denied.

12.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 12, and therefore denies those allegations.

13.     Denied.

14.     Denied.

15.     Denied.

## JURISDICTION AND VENUE

16.     Paragraph 16 contains only legal conclusions to which no response is required.  To the extent a response is required, Array lacks information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

17.     Paragraph 17 contains only legal conclusions to which no response is required.  To the extent a response is required, Array denies those allegations.

18.     Paragraph 18 contains only legal conclusions to which no response is required.  To the extent a response is required, Array denies those allegations.

19.     Paragraph 19 contains only legal conclusions to which no response is required.  To the extent a response is required, Array denies those allegations.

## FACTUAL ALLEGATIONS

20.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 20, and therefore denies those allegations.

21.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 21, and therefore denies those allegations.

22.     Array admits that according to the United States Patent and Trademark

ARRAY'S ANSWER AND COUNTERCLAIMS

Office ("USPTO") public records, ConsumerDirect is listed as the owner of U.S. federal trademark registration No. 6068903 for the SMARTCREDIT mark and U.S. federal trademark registration No. 3819295 for the SMARTCREDIT.COM mark. Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 22.

23.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 23, and therefore denies those allegations.

24.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 24, and therefore denies those allegations.

25.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 25, and therefore denies those allegations.

26.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 26, and therefore denies those allegations.

27.     Array admits that it is a competitor of ConsumerDirect. Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 27.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Admitted that Array is not affiliated with ConsumerDirect.  Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 33.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Admitted that ConsumerDirect sent Array a cease-and-desist letter on or around November 15, 2021.  Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 37.

38. Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 38, and therefore denies those allegations.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Admitted that Pentops is a wholly-owned subsidiary of Pentius. Except as so admitted, Array denies the reminder of the allegations set forth in Paragraph 47.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Admitted that Array references "Payment Card Industry Data Security Standards" on its website. Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 56.

57. Denied.

58. Denied.

///

///

///

1

## FIRST CAUSE OF ACTION

2

**Federal Trademark Infringement Against Pentius, Array, System Admin,**

3

**Pentops, CTH Skin Corp., and Daily Stocks**

4

**[15 U.S.C. § 1114]**

5

59.     Array incorporates by reference its responses to all of the foregoing

6

Paragraphs of the Amended Complaint as if fully set forth herein.

7

60.     Denied.

8

61.     Denied.

9

62.     Denied.

10

63.     Denied.

11

64.     Admitted that ConsumerDirect sent Array a cease-and-desist letter on or

12

around November 15, 2021.  Except as so admitted, Array denies the remainder of

13

the allegations set forth in Paragraph 64.

14

## SECOND CAUSE OF ACTION

15

**Violation of the Anti-Cybersquatting Consumer Protection Act Against All**

16

**Defendants**

17

**[15 U.S.C. § 1125(d)]**

18

65.     Array incorporates by reference its responses to all of the foregoing

19

Paragraphs of the Amended Complaint as if fully set forth herein.

20

66.     Denied.

21

67.     Denied.

22

68.     Denied.

23

69.     Denied.

24

70.     Denied.

25

71.     Denied.

26

72.     Admitted that ConsumerDirect sent Array a cease-and-desist letter on or

27

around November 15, 2021.  Except as so admitted, Array denies the remainder of

28

the allegations set forth in Paragraph 72.

## THIRD CAUSE OF ACTION

**False Designation of Origin and Unfair Competition Against Pentius, Array,**

**System Admin, Pentops, CTH Skin Corp., and Daily Stocks**

**[15 U.S.C. § 1125(a)]**

73.   Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

74.   Denied.

75.   Denied.

76.   Denied.

77.   Denied.

78.   Denied.

79.   Denied.

80.   Admitted that ConsumerDirect sent Array a cease-and-desist letter on or around November 15, 2021.  Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 80.

## FOURTH CAUSE OF ACTION

**Intentional Interference with Contract Against Pentius and Array**

81.   Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

82.   Denied.

83.   Denied.

84.   Denied.

85.   Denied.

86.   Denied.

87.   Denied.

88.   Denied.

///

///

1

## FIFTH CAUSE OF ACTION

**Intentional Interference with Prospective Economic Advantage Against Pentius and Array**

89.    Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

90.   Denied.

91.   Denied.

92.   Denied.

93.   Denied.

94.   Denied.

95.   Denied.

96.   Denied.

## SIXTH CAUSE OF ACTION

**Unfair Competition per Cal. Business & Professions Code §17200 Against All Defendants**

97.    Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

98.   Denied.

99.   Denied.

100.   Denied.

## SEVENTH CAUSE OF ACTION

**Common Law Unfair Competition Against All Defendants**

101.   Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

102.   Denied.

103.   Denied.

104.   Denied.

///

## PRAYER FOR RELIEF

Array denies that ConsumerDirect is entitled to any recovery or relief in connection with the allegations set forth in the Amended Complaint, including, but not limited to, the claims alleged therein and the allegations set forth in the Prayer for Relief. Array further prays for judgment in its favor; that ConsumerDirect take nothing on the Complaint; that Array be awarded reasonable attorneys' fees and expenses; and that Array be awarded any other relief that justice so requires or the Court sees fit.

## AFFIRMATIVE DEFENSES

As affirmative, separate, and other defenses to the Amended Complaint asserted against Array, Array states as follows without assuming the burden of proof on matters where it has no such burden. In doing so, Array specifically reserves the right to restate, re-evaluate, or recall any defenses and to assert additional defenses based on information learned or obtained during discovery.

## FIRST AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because ConsumerDirect's damages, if any, were not caused by Array.

## SECOND AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because ConsumerDirect has not suffered irreparable injury and because it has an adequate remedy at law.

## THIRD AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because, at all relevant times, ConsumerDirect has failed to mitigate its purported damages, to the extent that ConsumerDirect suffered any.

## FOURTH AFFIRMATIVE DEFENSE

Array's actions were innocent and non-willful.

## FIFTH AFFIRMATIVE DEFENSE

ConsumerDirect's claims are barred by the doctrine of unclean hands as a result

of, among other things, their attempts at stifling fair competition and making false and defamatory statements about Array to customers, investors and others.

### SIXTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred, in whole or in part, because Array's actions were privileged, justified, excused, were taken for legitimate business reasons not prohibited by law or contract, and/or because Array at all times acted in good faith and did not directly or indirectly perform any act whatsoever that would constitute a violation of any right of ConsumerDirect or any duty owed to ConsumerDirect.

### SEVENTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because the damages alleged, to the extent any exist, were caused by actions of third parties for whom Array is not responsible.

### EIGHTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because no act or omission of Array was the cause, proximate or actual, of the damages, if any exist, alleged by ConsumerDirect.

### NINTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred, in whole or in part, because the alleged CREDITMONITORING.COM mark is generic.

### TENTH AFFIRMATIVE DEFENSE

Defendant alleges, without admitting any liability or obligation, if any, without impairing the general denials herein, that even assuming infringement occurred, such infringement was *de minimis.* Indeed, Defendant is unaware of any instances of actual confusion occurring of among its customers.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendant alleges, without admitting any liability or obligation, if any, without impairing the general denials herein, that ConsumerDirect has engaged in trademark

1   misuse resulting in anticompetitive activities and activities which violate public
2   policy.  Defendant has attempted to use its purported trademarks to as the basis for
3   anticompetitive aims and for improper purposes of stifling and eliminating
4   competition in the marketplace.

## TWELFTH AFFIRMATIVE DEFENSE

6   Array's use, to the extent there is any, of the alleged marks is not trademark use
7   and/or constitutes fair use, and thus cannot be trademark infringement or
8   cybersquatting.

## ADDITIONAL DEFENSES

10   Array reserves the right to assert additional defenses based on information
11   learned or obtained during discovery.

## DEFENDANT'S PRAYER FOR RELIEF

13   WHEREFORE, Defendant prays for judgment as follows:

14   A.   Dismissal of ConsumerDirect's claims on the merits with prejudice;
15   B.   A finding that Array is not liable to ConsumerDirect or that
16        ConsumerDirect's claims are barred, in whole or in part, based on one or
17        more of the affirmative defenses asserted herein;
18   C.   An award to Array of its costs and expenses, including reasonable
19        attorneys' fees and costs pursuant to applicable statutes and law; and
20   D.   Such other and further relief as the Court deems fair and just.

21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

## ARRAY'S COUNTERCLAIMS

Defendant and Counterclaimant Array US Inc. ("Array" or "Counterclaimant") hereby asserts the following counterclaims against Counter-Defendants ConsumerDirect, Inc. and DOES 1-10 (the "Doe Counter-Defendants") (collectively "Counter-Defendants" or "ConsumerDirect") and alleges as follows:

## INTRODUCTION

1.     ConsumerDirect is a reseller of credit data that, as its name suggests, found most of its early success in direct-to-consumer products (in contrast to products that enabled other businesses to provide credit services to their consumers).  Founded in the early 2000s, ConsumerDirect's business has grown stagnant, with the company slow to adopt to more modern offerings and partnerships.   As a result, ConsumerDirect's business has begun to lag that of its competitor Array, a new entrant to the field that has grown rapidly by providing first-class technology to businesses that were long underserved by ConsumerDirect, enabling these clients to provide credit-related services to their customers.   Having stalled in the credit reporting business, ConsumerDirect entered the litigation business.   In this case, against Array, ConsumerDirect has asserted a litany of claims based on far-fetched, if not outright false, allegations.

2.     Yet, making matters far worse, ConsumerDirect has also targeted Array's investors and clients, spreading false statements about Array and threatening to embroil these investors and clients in litigation unless they sever their relationships with Array.  The purpose of these efforts is obvious: unable or unwilling to compete with Array in the market, ConsumerDirect has resorted to wrongful means outside the market.  These tactics, moreover, have proved successful, disrupting Array's business and its relationships and forcing Array to compete with ConsumerDirect before this Court rather than compete with it in the marketplace.   Going well beyond normal competitive behavior, these tactics are unlawful and unfair and, if nothing else, reinforce the pretextual nature of ConsumerDirect's lawsuit against Array.

3. ConsumerDirect's conduct, outlined in detail below, has included numerous defamatory statements regarding Array, including falsely and maliciously claiming to an Array client that Array is under government investigation—which would be news to Array—in an attempt to gain more business from that client. Array is informed and believes and thereupon alleges that ConsumerDirect has also told clients that they should leave Array and engage ConsumerDirect because Array's business is failing and will shutter—a demonstrably misleading and untrue statement.

4. ConsumerDirect has used the guise of filing a lawsuit against Array and Pentius as an artifice or Trojan Horse to sneak in false and spurious allegations having nothing to do with its Lanham Act related claims (that actually concern, at best, Array's clients, not Array) and then explicitly threaten Array's actual and prospective investors and clients to cease doing business with Array upon pain of also being sued. Contrary to ConsumerDirect's apparent misconception, no legal privilege shields this anti-competitive smear campaign and vendetta caused by ConsumerDirect's loss of business to its more innovative competitors.

5. In short, ConsumerDirect has filed this lawsuit in a mistaken effort to cloak its acts in the marketplace with the litigation privilege. In reality, ConsumerDirect's conduct is not so protected.

6. ConsumerDirect has engaged in unlawful and unfair actions directed at investors and clients in the marketplace, including threatening baseless litigation Array's clients and investors.

7. Because ConsumerDirect's conduct is nothing more than an attempt to squelch fair market competition by a newcomer to the industry, Array brings this action for intentional interference with contractual relationships, intentional interference with prospective economic advantage, trade libel, and unfair competition.

## **THE PARTIES**

8. Array is a Delaware corporation with offices in New York, New York.

///

9.      ConsumerDirect is a Nevada corporation with headquarters in Irvine, California.

10.     Upon information and belief, DOES 1-10 are individuals and/or business entities who have participated or assisted in the conduct alleged herein or are otherwise responsible therefor. The identities of DOES 1-10 are presently not and cannot be known to Array, but Array will amend this Counterclaim to show the true names and capacities of DOES 1-10 once such information is ascertained.

11.     Upon information and belief, at all times mentioned herein, each of DOES 1-10 were the agents, servants, subsidiaries, partners, members, associates, co-conspirators, representatives, aider and abettors or employees of one or more of Counter-Defendants, and in connection with the conduct alleged herein, was acting within the course and scope of such relationship, and that each and every act, omission, and thing done by each of DOES 1-10 was ratified by one or more of Counter-Defendants.

## JURISDICTION AND VENUE

12.     Jurisdiction and venue are proper in this judicial district based on the citizenship of the parties and the amount in controversy that exceeds the sum of $75,000, the claims alleged, and that ConsumerDirect may be found and transacts business in this district, pursuant to 28 U.S.C. §§ 1332, 1367, and 1391(b).

## FACTUAL BACKGROUND

**A.      Array Develops an Innovative Solution for Fintech and Financial Services Corporations.**

13.     Array is a Delaware corporation incorporated in 2018. It provides a technology platform that enables its clients (other businesses) to provide their consumers (end-users) with consumer finance and credit tools including access to the consumer's own credit data from the three credit bureaus. Array sells it services to a variety of types of businesses, including financial technology companies, employee benefits providers, financial institutions, and credit unions.

14.     Array's founder, Martin Toha, got his start building computers in his garage. After starting another credit monitoring business called Pentius—which, unlike Array, provides a direct-to-consumer service—Mr. Toha realized there was more room for innovation in the credit space. He was driven by a key question: "why don't fintechs and financial institutions offer more robust credit experiences for their users?" Launching consumer finance and credit tools is a complicated, expensive, and time-consuming endeavor, which includes working with one or more of the credit bureaus, building the requisite technology, and providing robust security for consumer data. Accordingly, there was a gap between what fintech and financial institutions offered and what consumers expected. With this in mind, Mr. Toha started Array, which in turn developed offerings that could improve client experiences and increase client retention substantially. This toolkit of customized and embeddable solutions helps Array's clients deploy innovative consumer financial and credit tools to the market.

15.     Array provides its technology platform to its clients using a variety of applications or tools, which can include customized websites and/or embeddable components within Array's client's existing platform. For example, Array's client may own a particular domain that it wants to use to provide credit reports to consumers, but it needs Array's technology platform to do so. In that case, Array provides access to its technology platform. Along with providing the platform for end-users to access their credit data, Array can, but does not always, design a customized website for its client using the client's chosen domain and brand.

16.     By way of a different example, Array's client may be a bank or a credit union that wants to provide its banking or lending clients with credit monitoring or credit reports. In that case, Array provides its bank or credit union client with access to Array's technology platform and, instead of designing a customized website, provides embedded tools within the bank's or credit union's existing online platform for the end-user to access the credit report-related offerings.

17.     Array's business model is to provide these finance and credit tools to consumers through its partnerships with its clients. Further, Array does not own any domains or websites that sell any products or services directly to consumers. Instead, Array's clients—other businesses—own and register their own websites and domains.

18.     Additionally, unlike ConsumerDirect, in addition to providing a platform for Array's clients to sell credit reports, credit scores, and credit monitoring offerings to end users, Array offers multiple distinct products that its clients can sell to their consumers such as:

- **My Credit Manager:** This product is delivered online or through a mobile app, including a library with over 25 embedded credit tools that illuminate a users' credit report, score components, and alerts.

- **Offers Engine:** This product segments leads by credit profile that allows clients to target offers and workflows and offer their users the right product at the right time.

- **ID Protect:** This product includes identity monitoring, insurance and restoration services to help clients keep users safe and earn loyalty through security.

**B.     ConsumerDirect Continues to Pursue an Outdated Direct-to-Consumer Reseller Model.**

19.     Array is informed and believes, based on the allegations in prior actions, and thereupon alleges that ConsumerDirect is a reseller of credit data. Array is informed and believes and thereupon alleges that ConsumerDirect's technology is outdated and lacks the required innovations to stay competitive in the current market.

20.     According to ConsumerDirect's website, the corporation was allegedly started after its CEO "discovered a common problem on his credit report that prevented him from buying his first home." Array is further informed and believes and thereupon alleges that, unlike Array, ConsumerDirect has a contract with only one of the three credit bureaus.

17

**C.     ConsumerDirect Develops a Plan to Stamp Out an Emerging Competitor.**

21.     Array is informed and believes and thereupon alleges that after Array launched, ConsumerDirect began losing business customers to Array based on Array's ability to deliver a superior product. Threatened by an emerging competitor and facing the loss of market share, ConsumerDirect set into motion a calculated plan to interfere with Array's growing business.

22.     ConsumerDirect manufactured an alleged dispute based on false allegations in an effort to use litigation to stamp out a competitor. Then, at each and every turn, ConsumerDirect has engaged in a smear campaign to spread knowingly false information to Array's investors, clients, and business partners including the credit bureaus.

23.     ConsumerDirect is no stranger to litigation. Indeed, ConsumerDirect, its predecessor entity, and its CEO have been the subject of numerous lawsuits.[1]

**D.     ConsumerDirect threatens Array and Its Investors.**

24.     ConsumerDirect first took aim at Array on November 15, 2021.  On that date, ConsumerDirect sent a demand letter to Array that, on information and belief, knowingly contained a number of false and misleading statements. In an act of sheer spite, ConsumerDirect copied six of Array's potential investors with the demand letter while Array was in the middle of its first round of funding.

25.     In an attempt to dissuade the investors from moving forward with Array, ConsumerDirect explicitly threatened them with litigation falsely claiming them to be

---

[1] *Auctioneers Investment Group, LLC v. David Coulter, et al.*, Case No. 30-2012-00606704-CU-SL-CXC (Cal. Sup. Ct. 2012); *Accelerize New Media, Inc. v. Pathwaydata, Inc. dba Consumer Direct,* Case No. 30-2011-00448034 (Cal. Sup. Ct. 2011); *Midcap Media Finance, LLC v. Pathway Data, Inc. d/b/a Consumer Direct and David Coulter*, Case No. 1:15-cv-00060 (W.D. Tex. Jan. 23, 2015); *Veracity Credit Corp. v. ConsumerDirect, Inc.*, Case No. 8:16-cv-00189 (C.D. Cal. Feb. 4, 2016); *Stradling Yocca Carlson & Rauth, P.C. v. ConsumerDirect, et al.*, Case No. 30-2016-00851144-CU-BC-CJC (Cal. Sup. Ct. 2016); *Callahan, Thompson, Sherman & Caudill, LLP v. Pathwaydata, Inc. Dba ConsumerDirect*, Case No. 30-2013-00628192-CU-PT-CJC (Cal. Sup. Ct. 2013); *People of the State of California v. PathwayData, Inc.*, Case No. 2006-GIC860648-CU-MCO (Cal. Sup. Ct. 2006).

"liable as a co-conspirator for aiding and abetting these unlawful actions with their investments, which was and is being used to fund such activity." ConsumerDirect's twelve-page letter was riddled with false statements that ConsumerDirect knew or should have known were false including that:

- Array was operating illegally (allegedly breaking some law that ConsumerDirect did not and cannot identify);

- Pentius and Array were working in concert to "extort ConsumerDirect's partners;"

- Pentius and Array misrepresent "the pricing of their 3B Reports to further incentivize them to stop doing business with ConsumerDirect;"

- "Pentius and Array have set up a network of shell companies to operate [] spoof websites;"

- Pentius and Array have fraudulently circumvented [] requirements by purchasing credit reports individually, at lower prices, and then packaging them together and selling them to consumers as "3B Reports" at prices substantially lower than the established 3B Reports costs that all other law-abiding credit companies pay; and

- "Array does not have any valid contract with at least one, if not more, of the CRAs."

26. ConsumerDirect's "demand" letter even contained absurd complaints—which, to be clear, are also false—that it knew could never form the basis of a lawsuit by ConsumerDirect including allegations that "Pentius and Array fail to timely answer their customer service lines …" and that Pentius and Array resell consumer information and fail to safeguard and secure consumer data.

27. ConsumerDirect's letter was sent with one purpose, and one purpose only: to engage in predatory and anticompetitive conduct designed to interfere with Array's expanding business.

///

**E.      ConsumerDirect Refuses to Discuss the Matter and Files Suit.**

28.     Although ConsumerDirect's letter was couched in terms of a cease-and-desist demand to avoid potential litigation, ConsumerDirect had no interest in trying to resolve any alleged dispute.

29.     Less than an hour before a scheduled call between ConsumerDirect and Array to discuss ConsumerDirect's allegations in its cease-and-desist letter, ConsumerDirect's counsel canceled the call:

> "Sorry but something came up last minute and I won't be able to do the call this afternoon.  Please send any response to the cease and desist in writing by end of business day today as we had requested in the letter."

30.     When Array was not able to meet ConsumerDirect's arbitrary demands to send a written response by the end of the day (with only a couple of hours' notice), ConsumerDirect immediately filed its initial 27-page Complaint in this Court.

31.     ConsumerDirect's motives were clear—it never had any interest in resolving its concocted allegations. Instead, it always planned to move forward with the lawsuit to spread its false and malicious allegations against Array and to try to insulate its otherwise wrongful conduct to drive Array out of business.

**F.      ConsumerDirect Continues to Threaten Array Investors.**

32.     Since filing suit, ConsumerDirect has continued to interfere with Array's prospective and existing investors by continuing to spread false information, disguised in terms of allegations, and threaten Array's investors if they continue to do business with Array.

33.     ConsumerDirect has not stopped there. After this Court's Order granting ConsumerDirect's application for preliminary injunction, ConsumerDirect has attempted to leverage this preliminary order by sending harassing letters to Array's investors under the guise of a "notice" to persons "acting in concert" with Array.

///

///

**G.      ConsumerDirect Threatens Array Clients and Demands They Cease Doing Business with Array and Return to ConsumerDirect or Else ...**

34.      ConsumerDirect has taken its false, smear campaign to Array's prospective and existing clients by asserting numerous extortionist threats to customers of Array to get them to cease doing business with Array.

35.      For example, in an effort to "win" back a large client that decided to transition some of its business to Array, ConsumerDirect threatened to sue this client unless it immediately ceased doing business with Array. Counsel for ConsumerDirect also contacted the client to directly threaten suit if the client did not sever business with Array and return to ConsumerDirect. Moreover, ConsumerDirect falsely claimed to that client's legal counsel that Array was being investigated by the FTC. The written communications from ConsumerDirect to the client contained numerous falsehoods, threatened legal action, and noted "we reiterate our demand that you [sic] client immediately cease & desist all relations with Pentius & Array."

36.      Likewise, ConsumerDirect has told other clients of Array to stop doing business with Array because Array is going to "get shut down," and has spread other lies about Array to scare clients into considering canceling their agreements with Array. For instance, ConsumerDirect has even spread (and continues to spread) false information to Array's existing and prospective clients at various industry conferences.

**H.      ConsumerDirect Interferes with Array's Relationship with the Credit Bureaus.**

37.      Array is informed and believes and on that basis alleges that while Array was negotiating its contract with at least one of the credit bureaus, ConsumerDirect, which was aware of the contract and contractual negotiations, contacted that credit bureau and interfered with those negotiations–resulting in the credit bureau changing the terms of the agreement that Array was negotiating.

38.      Additionally, ConsumerDirect also contacted as least one other credit

ARRAY'S ANSWER AND COUNTERCLAIMS

bureau with whom Array has a contract, and threatened legal action against it if it continued "acting in concert" with Array.

## I. Array Has Suffered Significant Damages Due to ConsumerDirect's Nefarious Conduct.

39.     As a direct and proximate result of ConsumerDirect's calculated scheme, Array has suffered significant damages in an amount to be determined at trial. For example, as a result of ConsumerDirect's improper actions, Array had to engage in significant and resource-draining remediation efforts for investors and clients. Notwithstanding these efforts, Array has also lost business from clients and potential clients.

40.     Similarly, diligence efforts for investments and new business opportunities were heightened as an outcome of ConsumerDirect's contacts.

41.     ConsumerDirect continues to engage in nefarious conduct, contacting investors, Array's clients, and others, making false and defamatory statements about Array and making extortionist threats in an effort to retain its own clients and to steal Array's clients through unlawful and unfair conduct.

## FIRST COUNTERCLAIM

### Intentional Interference with Contractual Relations

42.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

43.     Array had valid contracts with clients for the provision of its consumer finance and credit tools. Envious that Array obtained business through fair and proper competition, ConsumerDirect contacted Array's clients with the intent to interfere with Array and its clients' contractual relationships.

44.     ConsumerDirect was aware of the contract between Array and its clients, at the time that it sent the letter(s) threatening the clients, and demanding that the clients, cease doing business with Array and instead conduct its business with ConsumerDirect. Indeed, ConsumerDirect, at the time that it sent the letter littered

ARRAY'S ANSWER AND COUNTERCLAIMS

with falsehoods threatening a client, was in a contractual relationship with the client's subsidiary. ConsumerDirect contacted Array's client with full knowledge of the contractual relationships, in an attempt to regain business that ConsumerDirect lost, including the client's full portfolio of business, under threat of legal action rather than fair competition.

45. ConsumerDirect also interfered with an agreement Array was negotiating with one of the credit bureaus, as set forth above, and had direct knowledge of the negotiations regarding that agreement at the time of the interference.

46. ConsumerDirect also knew of Array's agreements for funding with numerous investors, as set forth above, and interfered directly with those contractual relationships.

47. Fully aware that Array had such relationships, ConsumerDirect copied significant actual and prospective investors in an attempt to deprive Array of funding and the ability to compete against ConsumerDirect.

48. ConsumerDirect copied the investors in the cease-and-desist letter littered with falsehoods claiming that the investors and potential investor's funding activities would somehow also subject them to liability. ConsumerDirect's transparent motive was to choke funding for a competitor instead of lawfully and fairly competing with it. ConsumerDirect's intent to drive a wedge between Array and its investors on the verge of a substantial capital raised succeeded; Array and its executives were forced to expend myriad hours and company resources trying to reassure its investors that ConsumerDirect's threats were baseless.

49. ConsumerDirect's unlawful conduct prevented performance of the contract between Array and its clients, investors and the credit bureau and made it more expensive and difficult for Array to perform the contracts.

50. ConsumerDirect contacted Array's clients, investors and the credit bureau fully intending to disrupt and interfere with the contractual relationships with Array.

ARRAY'S ANSWER AND COUNTERCLAIMS

51.     ConsumerDirect's misconduct is the direct and proximate cause of damages to Array.

52.     Array's damages include lost investments, lost profits, expenses, lost goodwill, and prospective profits, and other damages in amounts to be determined at trial.

## SECOND COUNTERCLAIM

### Intentional Interference with Prospective Economic Advantage

53.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 52 as though fully set forth herein.

54.     Array had an existing or prospective economic relationships with its investors and potential investors, as well as clients and potential clients and the credit bureaus.

55.     ConsumerDirect knew that Array had the existing or prospective economic relationships including because some of the clients were active or former clients of ConsumerDirect.

56.     Fully aware that Array had such relationships, ConsumerDirect copied significant actual and prospective investors in an attempt to deprive Array of funding and the ability to more effectively compete against ConsumerDirect.

57.     ConsumerDirect copied the investors in the cease-and-desist letter littered with falsehoods claiming that the investors and potential investor's funding activities would somehow also subject them to liability. ConsumerDirect's transparent motive was to choke funding for a competitor instead of lawfully and fairly competing with it. ConsumerDirect's intent to drive a wedge between Array and its investors on the verge of a substantial capital raised succeeded; Array and its executives were forced to expend myriad hours and company resources trying to reassure its investors that ConsumerDirect's threats were baseless.

58.     Array also had relationships with numerous prospective clients for the provision of its custom consumer finance and credit tools.  Envious that Array

1   obtained business through fair and proper competition, ConsumerDirect contacted

2   Array's clients with the intent to interfere with Array and its clients' contractual

3   relationships.

4          59.    ConsumerDirect was aware of these potential clients, and interfered with

5   them by, among other things, making the above-described false and defamatory

6   statements about Array to dissuade those potential clients from entering into

7   contractual relationships with Array.

8          60.    As a direct and proximate result of ConsumerDirect's improper and false

9   communications, investors were dissuaded from investing in Array and Array lost

10  potential clients.

11         61.    Array's damages include lost investments, lost profits, expenses, lost

12  goodwill and other damages in amounts to be determined at trial.

13                              **THIRD COUNTERCLAIM**

14                                    **Trade Libel**

15         62.    Array hereby realleges and incorporates by reference the allegations set

16  forth in paragraphs 1 through 61 as though fully set forth herein.

17         63.    ConsumerDirect harmed Array by making false and disparaging

18  statements in the marketplace regarding Array, its investors, its clients, and its

19  business.

20         64.    When ConsumerDirect made these statements it clearly and necessarily

21  understood that they disparaged the quality of Array's products and services.

22         65.    These statements were made to persons and entities other than Array,

23  including investors, clients and credit bureaus.

24         66.    ConsumerDirect knew the statements were false, misleading, and untrue

25  at the time it made the statements.

26         67.    ConsumerDirect knew or should have known that third parties would

27  rely on these material, false and misleading statements, and, in fact, intended for them

28  to do so in an effort to harm Array and its business.

68.    Array suffered direct and indirect financial harm as a result of the reliance on these false and misleading statements.

69.    ConsumerDirect's conduct was a substantial factor in causing Array's harm.

70.    ConsumerDirect's conduct was willful, malicious, and wrongful with the intent to irreparably damage Array, including tarnishing Array's goodwill and force it out of fair competition, such that punitive damages to punish ConsumerDirect are warranted and appropriate.

## FOURTH COUNTERCLAIM

### Unfair Competition in Violation of California

### Business and Professions Code § 17200

71.    Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70 as though fully set forth herein.

72.    ConsumerDirect committed one or more acts of unfair competition within the meaning of California Business & Professions Code § 17200 ("UCL"). ConsumerDirect's acts and practices constitute unlawful, unfair and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, falsely claiming that Array has engaged in fraudulent business practices and does not provide adequate customer service.

73.    ConsumerDirect's acts and practices are actionable under the unlawful prong of the UCL as they constitute intentional interference with contractual relations and economic advantage and trade libel.

74.    ConsumerDirect's acts and practices were fraudulent within the meaning of the UCL because they were designed to deceive and defraud Array's consumers and investors.

75.    ConsumerDirect knew or should have known through the exercise of reasonable care that its statements were false.

76.    Array has suffered injury in fact and lost money as a result of

ConsumerDirect's unlawful acts and practices and has been irreparably harmed and will continue to suffer irreparable harm by reasons of these violations.

## **PRAYER FOR RELIEF**

Array hereby prays for judgment in its favor and for the following relief:

A.   For monetary relief including, but not limited to, actual, compensatory, and punitive damages, and restitution, as permitted by law, in amounts to be determined at trial.

B.   For a permanent injunction enjoining and restraining ConsumerDirect, its officers, agents, servants, employees, attorneys, and other persons who are acting in concert or participation with them perpetually from:

 i. Falsely claiming that Array is engaged in fraudulent conduct;

 ii. Falsely claiming that Array is engaged in unlawful conduct;

 iii. Falsely claiming that Array does not provide adequate support;

 iv. Disparaging Array, its officers, agents, servants, employees, attorneys, and any other persons who are acting in concert or participation with them, its services, or its products to actual and potential clients, consumers, or competitors

C.   For attorneys' fees, and costs of suit.

D.   For pre- and post-judgment interest, as permitted by law.

E.   For such other relief as the Court may deem just and proper.

Dated:  May 9, 2022   **DLA PIPER LLP (US)**

    By: */s/ Robert J. Nolan*
     ROBERT J. NOLAN
     MATTHEW F. MILLER
     MICHAEL A. GELLER
     OSCAR M. OROZCO-BOTELLO

     Attorneys for Counterclaimant and Defendant
     ARRAY US INC.

## DEMAND FOR JURY TRIAL

Array requests a trial by jury on any claim, counterclaim, or issue triable by a jury.

Dated:  May 9, 2022                    **DLA PIPER LLP (US)**

By: *Is/ Robert J. Nolan*
ROBERT J. NOLAN
MATTHEW F. MILLER
MICHAEL A. GELLER
OSCAR M. OROZCO-BOTELLO

Attorneys for Counterclaimant and Defendant
ARRAY US INC.