1

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**
Robert M. Schwartz (Bar No. 117166)
   robertschwartz@quinnemanuel.com
Moon Hee Lee (Bar No. 318020)
   moonheelee@quinnemanuel.com
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000

2

3

4

5

6

*Attorneys for Defendant and Counterclaimant
Array US Inc.*

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

CONSUMERDIRECT, INC., a Nevada corporation

12

          Plaintiff,

13

     v.

14

PENTIUS, LLC, a Delaware limited liability company; ARRAY US, INC., a Delaware corporation; SYSTEM ADMIN, LLC, a Florida limited liability company; CTH SKIN CORP. a Delaware corporation; PENTOPS, LLC, a Delaware limited liability company, DAILY STOCKS, INC., a Delaware corporation, NECTRIS, LLC, a Utah limited liability company, CLARITY PROGRESSION, LLC, a Florida limited liability company; and DOES 1 through 10, inclusive,

15

16

17

18

19

20

21

          Defendants.

22

ARRAY US INC., a Delaware corporation,

23

          Counterclaimant,

24

     v.

25

CONSUMERDIRECT, INC. a Nevada corporation, and DOES 1-10, inclusive,

26

27

          Counter-Defendants.

28

CASE NO. 8:21-CV-01968-JVS-ADSx

**DEFENDANT ARRAY US INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS FOR:**

1. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

2. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

3. **TRADE LIBEL**

4. **VIOLATION OF CAL. BUS. & PROF. CODE § 17200 (UCL)**

**JURY TRIAL DEMANDED**

Complaint Filed: December 1, 2021
Trial Date: July 11, 2023 at 8:30 a.m.

**<u>INTRODUCTION</u>**

1.	This litigation pits two diametrically different business models against one another in the credit monitoring industry, which includes businesses that enables consumers to access and manage their credit scores.

2.	For many years, ConsumerDirect, Inc. ("ConsumerDirect") has been an incumbent in this industry.  Its approach has been to own websites where consumers looking to know their credit score and manage their credit can enroll in and pay for ConsumerDirect's service.

3.	In contrast, starting in 2020 Array US Inc.'s ("Array") approach has been to provide software and technology infrastructure to established and emerging financial institutions (*e.g.*, banks, credit unions, and credit card issuers) that, in turn, enable them to offer more advanced and user-friendly credit score and monitoring services *directly* to *their* customers.  In short, ConsumerDirect works primarily with consumers, whereas Array works exclusively with other businesses to help those businesses retain consumer attention in the websites and mobile apps through which those businesses already engage with their customers—seamlessly and often without additional charge.

4.	Array has made this possible through agreements with the three major credit reporting bureaus, through innovation, and by demonstrating to its clients that Array offers a best in class product.  Array's rapid success attests to the fact that businesses have wanted to offer these integrated services to their customers but have not had an easily deployable and customizable solution—until Array entered the market.

5.	Under Array's approach, millions of consumers who want to know their credit scores need not leave their bank's or credit card's ecosystem.  They have no need to navigate to one of ConsumerDirect's websites or pay ConsumerDirect an additional fee for this information.  And Array's suite of credit services offers features that ConsumerDirect does not have.

6.      From ConsumerDirect's perspective, Array is thus an existential threat. But instead of finding a way to offer a better and more competitive product, ConsumerDirect's business plan consists of two equally shameful tactics:

     i.      Last year ConsumerDirect filed this lawsuit against some of Array's customers whose domain names ConsumerDirect alleges are too similar to its own, and then claimed falsely that Array was directly or indirectly liable for their actions.  Array disputes the bona fides of ConsumerDirect's claims and will continue to fight them.

     ii.      On a parallel path, ConsumerDirect began telling lies about Array to the sole suppliers of U.S. consumer credit information—the three credit reporting agencies or bureaus, Experian, TransUnion, and Equifax—about Array's business practices and data security systems, with the goal of making them suspicious of doing business with Array and making it more onerous for Array to do so.  ConsumerDirect told similar lies to Array's current and prospective clients, with the goal of making them equally unwilling to use Array to provide their customers with credit monitoring services.  ConsumerDirect has gone so far as to tell one Array client to stop doing business with Array because Array is under investigation by the Federal Trade Commission.  To the contrary, as far as the parties could know, the FTC is conducting no such inquiry.

7.      Whatever the merit—or lack thereof—of ConsumerDirect's lawsuit, ConsumerDirect has no right to lie about Array to the credit bureaus or its actual or potential clients.  These falsehoods include statements that Array engages in fraudulent and unlawful practices and that Array's business is shuttering down.

8.      ConsumerDirect's untruths have caused Array to lose business opportunities, forced Array to expend resources to protect relationships, and required Array to engage in damage control to protect its reputation.

9.      ConsumerDirect's stagnant business struggles to keep pace with its

competitor's better offerings.  As a result, ConsumerDirect's business is lagging behind Array, who helps businesses that were long underserved or flat out neglected by ConsumerDirect.

10.     It is for the marketplace to decide, based on truthful information, whether ConsumerDirect's time has come and gone.  ConsumerDirect may not seek to prolong its demise, if market conditions dictate that result, by competing against Array through lies and distortions.

11.     ConsumerDirect may believe that its lies about Array are a cheap way to squelch competition without investing in innovation.  But the law does not allow ConsumerDirect to engage in such misconduct.  Accordingly in answering ConsumerDirect's Second Amended Complaint ("Amended Complaint") (Dkt. No. 93), Array brings counterclaims to stop ConsumerDirect from its illicit behavior and to recover from the significant harm ConsumerDirect has caused.

## ANSWER

Paragraph numbers in this document correspond to the paragraph numbers of the Amended Complaint and respond to all allegations of the corresponding Amended Complaint paragraph, up to the Affirmative Defenses and Counterclaim section of this document.  Array's answers and affirmative defenses are based on information and knowledge thus far secured by Array, and Array reserves the right to amend to supplement its answers or affirmative defenses based on facts later discovered, pleaded, or offered.  To the extent that any express or implied allegations in the Amended Complaint are not specifically admitted herein, Array hereby denies such allegations.

## NATURE OF ACTION

1.     Denied.

## PARTIES

2.     Array lacks sufficient knowledge or information to form a belief as to

-4-

the allegations set forth in Paragraph 2, and therefore denies those allegations.

3.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 3, and therefore denies those allegations.

4.     Admitted that Array is a Delaware corporation with its registered agent located at 1209 Orange Street, Wilmington, Delaware and its principal place of business at 6 St. Johns Lane, New York, NY 10013.

5.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 5, and therefore denies those allegations.

6.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 6, and therefore denies those allegations.

7.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 7, and therefore denies those allegations.

8.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 8, and therefore denies those allegations.

9.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 9, and therefore denies those allegations.

10.    Denied.

11.    Denied.

12.    Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 12, and therefore denies those allegations.

13.    Denied.

14.    Denied.

15.    Denied.

## JURISDICTION AND VENUE

16.    Paragraph 16 contains only legal conclusions to which no response is required.  To the extent a response is required, Array lacks information sufficient to form a belief as to the truth of those allegations, and therefore denies them.

17.    Paragraph 17 contains only legal conclusions to which no response is

1  required.  To the extent a response is required, Array denies those allegations.

2       18.     Paragraph 18 contains only legal conclusions to which no response is

3  required.  To the extent a response is required, Array denies those allegations.

4       19.     Paragraph 19 contains only legal conclusions to which no response is

5  required.  To the extent a response is required, Array denies those allegations.

6                              **FACTUAL ALLEGATIONS**

7       20.     Array lacks sufficient knowledge or information to form a belief as to

8  the allegations set forth in Paragraph 20, and therefore denies those allegations.

9       21.     Array lacks sufficient knowledge or information to form a belief as to

10 the allegations set forth in Paragraph 21, and therefore denies those allegations.

11      22.     Array admits that according to the United States Patent and Trademark

12 Office ("USPTO") public records, ConsumerDirect is listed as the owner of U.S.

13 federal trademark registration No. 6068903 for the SMARTCREDIT mark and U.S.

14 federal trademark registration No. 3819295 for the SMARTCREDIT.COM mark.

15 Except as so admitted, Array denies the remainder of the allegations set forth in

16 Paragraph 22.

17      23.     Array lacks sufficient knowledge or information to form a belief as to

18 the allegations set forth in Paragraph 23, and therefore denies those allegations.

19      24.     Array lacks sufficient knowledge or information to form a belief as to

20 the allegations set forth in Paragraph 24, and therefore denies those allegations.

21      25.     Array lacks sufficient knowledge or information to form a belief as to

22 the allegations set forth in Paragraph 25, and therefore denies those allegations.

23      26.     Array lacks sufficient knowledge or information to form a belief as to

24 the allegations set forth in Paragraph 26, and therefore denies those allegations.

25      27.     Array admits that it is a competitor of ConsumerDirect.  Except as so

26 admitted, Array denies the remainder of the allegations set forth in Paragraph 27.

27      28.     Denied.

28      29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Admitted that Array is not affiliated with ConsumerDirect. Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 33.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Admitted that ConsumerDirect sent Array a cease-and-desist letter on or around November 15, 2021.   Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 37.

38.     Array lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 38, and therefore denies those allegations.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Admitted that Pentops is a wholly-owned subsidiary of Pentius. Except as so admitted, Array denies the reminder of the allegations set forth in Paragraph 47.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

1   53.   Denied.

2   54.   Denied.

3   55.   Denied.

4   56.   Admitted that Array references "Payment Card Industry Data Security

5   Standards" on its website.  Except as so admitted, Array denies the remainder of the

6   allegations set forth in Paragraph 56.

7   57.   Denied.

8   58.   Denied.

9   **FIRST CAUSE OF ACTION**

10   **Federal Trademark Infringement Against Pentius, Array, System Admin,**

11   **Pentops, CTH Skin Corp., and Daily Stocks**

12   **[15 U.S.C. § 1114]**

13   59.   Array incorporates by reference its responses to all of the foregoing

14   Paragraphs of the Amended Complaint as if fully set forth herein.

15   60.   Denied.

16   61.   Denied.

17   62.   Denied.

18   63.   Denied.

19   64.   Admitted that ConsumerDirect sent Array a cease-and-desist letter on or

20   around November 15, 2021.  Except as so admitted, Array denies the remainder of

21   the allegations set forth in Paragraph 64.

22   **SECOND CAUSE OF ACTION**

23   **Violation of the Anti-Cybersquatting Consumer Protection Act Against All**

24   **Defendants**

25   **[15 U.S.C. § 1125(d)]**

26   65.   Array incorporates by reference its responses to all of the foregoing

27   Paragraphs of the Amended Complaint as if fully set forth herein.

28   66.   Denied.

67.   Denied.

68.   Denied.

69.   Denied.

70.   Denied.

71.   Denied.

72.   Admitted that ConsumerDirect sent Array a cease-and-desist letter on or around November 15, 2021.  Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 72.

## THIRD CAUSE OF ACTION

**False Designation of Origin and Unfair Competition Against Pentius, Array, System Admin, Pentops, CTH Skin Corp., and Daily Stocks**

**[15 U.S.C. § 1125(a)]**

73.   Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

74.   Denied.

75.   Denied.

76.   Denied.

77.   Denied.

78.   Denied.

79.   Denied.

80.   Admitted that ConsumerDirect sent Array a cease-and-desist letter on or around November 15, 2021.  Except as so admitted, Array denies the remainder of the allegations set forth in Paragraph 80.

## FOURTH CAUSE OF ACTION

**Intentional Interference with Contract Against Pentius and Array**

81.   Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

82.   Denied.

1    83.    Denied.

2    84.    Denied.

3    85.    Denied.

4    86.    Denied.

5    87.    Denied.

6    88.    Denied.

7                    **FIFTH CAUSE OF ACTION**

8    **Intentional Interference with Prospective Economic Advantage Against Pentius**

9                              **and Array**

10    89.    Array incorporates by reference its responses to all of the foregoing

11   Paragraphs of the Amended Complaint as if fully set forth herein.

12    90.    Denied.

13    91.    Denied.

14    92.    Denied.

15    93.    Denied.

16    94.    Denied.

17    95.    Denied.

18    96.    Denied.

19                    **SIXTH CAUSE OF ACTION**

20    **Unfair Competition per Cal. Business & Professions Code §17200 Against All**

21                            **Defendants**

22    97.    Array incorporates by reference its responses to all of the foregoing

23   Paragraphs of the Amended Complaint as if fully set forth herein.

24    98.    Denied.

25    99.    Denied.

26    100.   Denied.

27

28

ARRAY'S ANSWER AND AMENDED COUNTERCLAIMS

## SEVENTH CAUSE OF ACTION

### Common Law Unfair Competition Against All Defendants

101.   Array incorporates by reference its responses to all of the foregoing Paragraphs of the Amended Complaint as if fully set forth herein.

102.   Denied.

103.   Denied.

104.   Denied.

## PRAYER FOR RELIEF

Array denies that ConsumerDirect is entitled to any recovery or relief in connection with the allegations set forth in the Amended Complaint, including, but not limited to, the claims alleged therein and the allegations set forth in the Prayer for Relief.   Array further prays for judgment in its favor; that ConsumerDirect take nothing on the Complaint; that Array be awarded reasonable attorneys' fees and expenses; and that Array be awarded any other relief that justice so requires or the Court sees fit.

## AFFIRMATIVE DEFENSES

As affirmative, separate, and other defenses to the Amended Complaint asserted against Array, Array states as follows without assuming the burden of proof on matters where it has no such burden.  In doing so, Array specifically reserves the right to restate, re-evaluate, or recall any defenses and to assert additional defenses based on information learned or obtained during discovery.

## FIRST AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because ConsumerDirect's damages, if any, were not caused by Array.

## SECOND AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because ConsumerDirect has not suffered irreparable injury and because it has an adequate remedy at law.

## THIRD AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because, at all relevant times, ConsumerDirect has failed to mitigate its purported damages, to the extent that ConsumerDirect suffered any.

## FOURTH AFFIRMATIVE DEFENSE

Array's actions were innocent and non-willful.

## FIFTH AFFIRMATIVE DEFENSE

ConsumerDirect's claims are barred by the doctrine of unclean hands as a result of, among other things, their attempts at stifling fair competition and making false and defamatory statements about Array to customers, investors and others.

## SIXTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred, in whole or in part, because Array's actions were privileged, justified, excused, were taken for legitimate business reasons not prohibited by law or contract, and/or because Array at all times acted in good faith and did not directly or indirectly perform any act whatsoever that would constitute a violation of any right of ConsumerDirect or any duty owed to ConsumerDirect.

## SEVENTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because the damages alleged, to the extent any exist, were caused by actions of third parties for whom Array is not responsible.

## EIGTHTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred because no act or omission of Array was the cause, proximate or actual, of the damages, if any exist, alleged by ConsumerDirect.

## NINTH AFFIRMATIVE DEFENSE

The relief sought by ConsumerDirect is barred, in whole or in part, because the alleged CREDITMONITORING.COM mark is generic.

## TENTH AFFIRMATIVE DEFENSE

Defendant alleges, without admitting any liability or obligation, if any, without impairing the general denials herein, that even assuming infringement occurred, such infringement was *de minimis*. Indeed, Defendant is unaware of any instances of actual confusion occurring of among its customers.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant alleges, without admitting any liability or obligation, if any, without impairing the general denials herein, that ConsumerDirect has engaged in trademark misuse resulting in anticompetitive activities and activities which violate public policy. Defendant has attempted to use its purported trademarks to as the basis for anticompetitive aims and for improper purposes of stifling and eliminating competition in the marketplace.

## TWELFTH AFFIRMATIVE DEFENSE

Array's use, to the extent there is any, of the alleged marks is not trademark use and/or constitutes fair use, and thus cannot be trademark infringement or cybersquatting.

## ADDITIONAL DEFENSES

Array reserves the right to assert additional defenses based on information learned or obtained during discovery.

## DEFENDANT'S PRAYER FOR RELIEF

WHEREFORE, Defendant prays for judgment as follows:

A. Dismissal of ConsumerDirect's claims on the merits with prejudice;

B. A finding that Array is not liable to ConsumerDirect or that ConsumerDirect's claims are barred, in whole or in part, based on one or more of the affirmative defenses asserted herein;

C. An award to Array of its costs and expenses, including reasonable attorneys' fees and costs pursuant to applicable statutes and law; and

D. Such other and further relief as the Court deems fair and just.

## ARRAY'S COUNTERCLAIMS

With knowledge as to its own conduct and upon information and belief as to all other matters, Array hereby asserts the following counterclaims against Counter-Defendants ConsumerDirect and ROES 1-10 (collectively "ConsumerDirect"):

## NATURE OF THE ACTION

1.      Array refers to the Introduction above, which summarizes the nature of Array's counterclaims against ConsumerDirect.

## THE PARTIES

2.      Array is a Delaware corporation with offices in New York, New York.

3.      Upon information and belief, ConsumerDirect is a Nevada corporation with headquarters in Irvine, California.

4.      Upon information and belief, ROES 1-10 are individuals and/or business entities who have participated or assisted in the conduct alleged herein or are otherwise responsible therefor.  The identities of ROES 1-10 are presently not and cannot be known to Array, but Array will amend this Counterclaim to show the true names and capacities of ROES 1-10 once such information is ascertained.

5.      Upon information and belief, at all times mentioned herein, each of ROES 1-10 were the agents, servants, subsidiaries, partners, members, associates, co-conspirators, representatives, aider and abettors or employees of one or more of Counter-Defendants, and in connection with the conduct alleged herein, was acting within the course and scope of such relationship, and that each and every act, omission, and thing done by each of ROES 1-10 was ratified by one or more of Counter-Defendants.

## JURISDICTION AND VENUE

6.      Jurisdiction and venue are proper in this judicial district based on the citizenship of the parties and the amount in controversy that exceeds the sum of $75,000, the claims alleged, and that ConsumerDirect may be found and transacts business in this district, pursuant to 28 U.S.C. §§ 1332, 1367, and 1391(b).

7.      This Court has personal jurisdiction over ConsumerDirect because ConsumerDirect brought this action in this Court and thereby consented to its jurisdiction.

## FACTUAL BACKGROUND

**A.    Array Develops Innovative Credit-Monitoring Solutions for Fintech and Financial Services to Offer Their End-Consumers.**

8.      The concept of maintaining good credit is ubiquitous.  One's credit score has become important not only for buying a car or house but also for renting an apartment and even getting a job.  Every adult in the United States wants their credit score to be as high as possible.  A perfect credit score is 850.  Many of us are aware of our score and keep regular track of it.

9.      For an industry that potentially reaches every American adult, the consumer credit monitoring industry is not large.  There are only a few players: the three major credit bureaus that generate consumer credit reports and dozens of entities like Array and ConsumerDirect that provide products and services that leverage data from one or more of the credit bureaus and develop software to deliver data to banks, credit card issuers, and other consumer-facing companies to enable their customers to access their credit scores and monitor changes.

10.     In such a small industry, tight-knit relationships matter.  Trust is hard to gain and is easily lost.  Industry participants like ConsumerDirect know that rumors spread rapidly.

11.     Launched in 2020, Array provides software and technology infrastructure to consumer-facing businesses that in turn allow their customers to access their credit scores and monitor their credit activity.  Array's clients are not the end-users themselves.  Array sells its products and services to businesses who serve the public, such as banks, credit card issuers, financial technology companies, employee benefits providers, and credit unions.

12.     To these financial institutions and other companies, Array licenses embeddable software development kits powered by application program interfaces ("APIs") (in simplest terms, technology that adds functions to an application) and other out-of-the-box support services.  Array's clients can then offer a credit monitoring service to their customers as a complement to the clients' other services, either at an affordable price or no charge at all.  Thus, if a bank wants its customers to be able to access their credit scores from within the bank's website or mobile app, Array provides the technology and related support—including a pipeline for the end customer to access their credit data from the credit bureaus—to enable the bank to embed that feature into its online and mobile platforms.  Hence what Array provides are prototypical "white label" products or services that another company will rebrand as its own and offer to its customers.

13.     Martin Toha started Array because he realized there was more room for innovation in the industry for delivering credit information to consumers.  He was driven by a key question: "why can't fintechs and financial institutions offer a more robust credit experience for their users?"  Launching consumer finance and credit tools is a complicated, expensive, and time-consuming endeavor, which includes working with one or more of the three credit bureaus, building the technology, and providing robust security for consumer data.  These challenges resulted in a gap between what fintech and financial institutions offered and what consumers wanted. Toha believed he could overcome these difficulties, so he started Array.  Array then built a toolkit of customized and embeddable solutions that its clients can deploy to provide innovative consumer financial and credit tools to their customers.

14.     Array provides its technology platform to its clients using a variety of applications or tools, which can include customized websites and/or embeddable components within Array's client's platform.

15.     For example, Array's client may own an Internet domain that it wants to use to provide credit reports to consumers, but it needs Array's technology

platform to do so.  In that case, Array licenses its technology platform.  Along with providing the platform for end-users to access their credit data, Array can, but does not always, deploy a customized website for its client using the client's chosen domain and brand, which the client secures and designs on their own.

16.     In other cases, Array's client may be a bank or a credit union that wants to provide its banking or lending clients with credit monitoring or credit reports.  In that case, Array provides its bank or credit union client with access to Array's technology platform and, instead of designing a customized website, embeds tools within the bank's or credit union's existing online platform for the end-user to access the credit report-related offerings within the bank's or credit union's existing web page.

17.     Array's business model is to provide these finance and credit tools to it business partners, who ultimately deliver services to consumers, often at no additional charge.  Further, Array does not own any domains or websites that provide credit monitoring directly to consumers.  Instead, Array's clients—other businesses—own and register their own websites and domains.

18.     In addition to providing a platform for Array's clients to sell credit reports, credit scores, and credit monitoring offerings to end users, Array offers other products that its clients can sell to their consumers, which include:

- **My Credit Manager:**  This product is delivered online or through a mobile app, including a library with over 25 embedded credit tools that illuminate a users' credit report, score components, and alerts.
- **Offers Engine:**  This product allows Array's clients to target their users with the right product at the right time.
- **ID Protect:**  This product includes identity monitoring, insurance, and ID restoration services to help clients keep users safe and earn loyalty through security.

**B.      ConsumerDirect Runs a Weak and Outdated Direct-to-Consumer Reseller Business.**

19.      ConsumerDirect does none of the things, described above, that form the core of Array's business.

20.      Instead, ConsumerDirect is little more than a reseller of credit data. Most of its business is selling directly to consumers and charging them a fee for their credit reports.

21.      ConsumerDirect may partner with some financial services companies to provide credit management tools to customers. But its products are not based on modern technology like Array's that a client can seamlessly embed into its existing websites and applications to provide its customers with services or credit information at little to no extra cost. For example, a bank's iPhone app can use Array's technology, in part, to provide the customer a full financial picture, from up-to-date credit information alongside the customer's savings balance.

22.      ConsumerDirect also does not offer the variety or number of solutions and features that Array does, like Offers Engine above. Relying on old technology and outdated channels, ConsumerDirect provides access to credit information the way it has always done—through websites that consumers themselves use to track their credit scores. Like street lamp lighters, ConsumerDirect's model is obsolete.

23.      Unlike Array, ConsumerDirect actually competes against its clients. At the same time it provides some tools to its clients, it undercuts them by selling credit reports directly to the clients' customers. Array's model is not so inherently conflicted; Array sells its products and technology only to other businesses.

24.      On information and belief, ConsumerDirect, unlike Array, has a contract with only one of the three credit bureaus.

**C.      Instead of innovating its business, ConsumerDirect attempts to compete for customers by getting into the defamation business.**

25.     After Array launched, ConsumerDirect began losing business customers who opted instead to work with Array and provide end-users with Array's high-tech credit monitoring services.  Threatened by an emerging competitor and facing the loss of market share, ConsumerDirect was left with two choices: innovate and compete fairly, or viciously attack the newcomer.  It chose the latter.

26.     Ever since Array launched its toolkit of products and services that could be seamlessly integrated into financial institutions' existing websites and apps, ConsumerDirect has engaged in a smear campaign to spread knowingly false information about Array throughout the industry.  These statements included false claims disparaging Array, its products, and its integrity.  ConsumerDirect has cast a broad net to incapacitate Array.  ConsumerCredit targeted both the credit bureaus Array must work with to obtain consumer credit information (Array's "suppliers") and Array's current and potential clients.

27.     These false statements have nothing to do with the pending litigation ConsumerDirect brought against Array—though those claims also lack merit and show only that ConsumerDirect chose to attack Array rather than to fairly compete. Array's counterclaims arise from false and damaging statements ConsumerDirect made outside this litigation or anything connected to it.  These statements concern Array's products and services, as well as Array's business practices. ConsumerDirect fabricated these statements solely to disrupt Array's existing and potential business relationships.  None of these statements has a lawful purpose. They include the ones described below:

### *ConsumerDirect Spreads Falsehoods About Array to its Business Clients*

28.     ConsumerDirect has targeted Array's current and potential customers with false and disparaging statements about Array and Array's products and services.

29.     At an industry conference earlier this year, for example, which presented opportunities to forge new relationships and reinforce existing ones,

ConsumerDirect sought out Array's current and potential customers, telling them about Array's supposed improper business practices. ConsumerDirect accused Array behind its back of improperly using credit bureau data, including by "trimerging" the three credit bureaus' data (and ultimately paying less for the information) as part of an allegedly fraudulent scheme to trick consumers and undercut competitors.

30.     ConsumerDirect's employee also stated that Array was displaying sensitive, private consumer data contrary to industry and legal standards. ConsumerDirect claimed that Array improperly disclosed data, including consumers' bank account and social security numbers. If any of this were true, it would present serious risks to any company doing business with Array. ConsumerDirect's message was clear: stay away from Array.

31.     None of what ConsumerDirect said is true. Array is a cutting-edge fintech company that does not engage in unlawful conduct.

32.     Unfortunately, ConsumerDirect's choice to conjure these outrageous lies about Array harmed Array significantly. Array failed to form new business relationships—not a single one—after this industry event. This was not normal, particularly after having receiving so much interest from so many participants.

33.     ConsumerDirect's smear campaign reverberated after the conference. Other businesses who have been negotiating with or in talks with Array suddenly became cold. In one such relationship, Array's client made it clear that ConsumerDirect's statements caused concern about doing business with Array. Array was able to renegotiate the contract but only after significant damage control and under much less favorable terms for Array.

34.     Although Array's investigation is ongoing, Array believes that ConsumerDirect damaged other existing and potential business relationships. ConsumerDirect has disparaged Array and its products and services to Array's

1  current and potential clients and partners to disrupt or prevent the formation of those

2  relationships.

3  **ConsumerDirect Spreads Lies About Array's Ability To Continue In Business**

4       35.    ConsumerDirect has spread misstatements in the market about Array's

5  standing with the credit bureaus and regulators, stating that the credit bureaus would

6  cease doing business with Array and that regulators were going to shut it

7  down.  ConsumerDirect even claimed to one of Array's clients that Array was under

8  FTC investigation.

9       36.    ConsumerDirect's misstatements go directly to Array's ability to

10  continue as a business, not merely the quality of its products and services, making

11  ConsumerDirect's motive obvious: to weaken Array's current relationships and

12  foreclose new ones.  Not surprisingly, ConsumerDirect urged the one client to stop

13  doing business with Array.

14       37.    ConsumerDirect's outright lies harm Array, its reputation, and its

15  ability to form business relationships.

16  **ConsumerDirect Disparages Array to the Credit Bureaus**

17       38.    In addition to lying about Array to its current and potential customers,

18  ConsumerDirect also directed its campaign of falsehoods about Array to the major

19  credit bureaus.  In the consumer credit world, all roads start with the three credit

20  bureaus.  These "3Bs" are the largest and most important source of the consumer-

21  level data needed to produce the reports and information companies like Array and

22  ConsumerDirect supply to consumers and customers.  In other words, the 3Bs are

23  the suppliers for the entire credit reporting and servicing industry.  Array cannot

24  have a viable business without having an agreement with one or more of these

25  companies.

26       39.    Array has recently been working to expand its relationship with the

27  credit bureaus.

28

ARRAY'S ANSWER AND AMENDED COUNTERCLAIMS

40.     As these negotiations were coming to a close, ConsumerDirect injected itself into the process with lies about Array.

41.     ConsumerDirect's statements include the same or similar lies ConsumerDirect spread about Array to Array's current and potential clients.  Array is also informed that ConsumerDirect told one or more credit bureaus the following falsehoods about Array: (1) Array fails to answer its customer service lines adequately, (2) Array engages in merchant processing fraud to somehow hide improper behavior from the bureaus, (3) Array sells raw consumer data to third parties without consumer consent and while misrepresenting how it handles data to consumers, (4) Array fails to employ meaningful security controls to adequately protect the confidentiality and integrity of consumer data, and (5) Array has violated or is in violation of state and federal laws and regulations.

42.     These false statements caused significant damage to Array.  Just as Array's negotiations were wrapping up with one of the credit bureaus, the bureau halted the negotiations and demanded a slew of concessions.  These fresh demands were based on the false statements ConsumerDirect had conjured up.

## FIRST COUNTERCLAIM FOR RELIEF
### For Intentional Interference with Contractual Relations
### (Regarding ConsumerDirect's Conduct Toward Clients)

43.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

44.     Array had valid contracts with clients for the provision of its consumer finance and credit tools.  Envious that Array obtained business through fair and proper competition, ConsumerDirect contacted Array's clients with the intent of interfering with Array and its clients' contractual relationships.

45.     ConsumerDirect was aware of the contracts between Array and its clients and business partners at the time that it made false and defamatory statements about Array to interfere with those contracts.  ConsumerDirect contacted

Array's clients and partners with full knowledge of the contractual relationships, in an attempt to regain business that ConsumerDirect lost and to stymie Array's continued growth and success.

46.     ConsumerDirect's unlawful conduct interfered with the performance of the contracts between Array and its clients and partners and made it more expensive and difficult for Array to perform its obligations.

47.     ConsumerDirect contacted Array's clients and partners fully intending to disrupt and interfere with the contractual relationships with Array.

48.     ConsumerDirect's misconduct is the direct and proximate cause of damages to Array.

49.     Array's damages include lost investments, lost profits, expenses, lost goodwill, and prospective profits, and other damages in amounts to be determined at trial.

## SECOND COUNTERCLAIM FOR RELIEF
### For Intentional Interference with Prospective Economic Advantage
### (Regarding ConsumerDirect's Conduct Toward Clients)

50.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

51.     Array had existing or prospective economic relationships with clients and potential clients.

52.     ConsumerDirect knew that Array had the existing or prospective economic relationships including because some of the clients were active or former clients of ConsumerDirect.

53.     Array also had relationships with numerous prospective clients for the provision of its consumer finance and credit tools.  Envious that Array obtained business through fair competition, ConsumerDirect contacted Array's clients and potential clients with the intent of interfering with Array and its clients' contractual relationships.

54.     ConsumerDirect was aware of these potential clients, and interfered with them by, among other things, making the above-described false and defamatory statements about Array to dissuade those potential clients from entering into contractual relationships with Array.

55.     As a direct and proximate result of ConsumerDirect's improper and false communications, investors were dissuaded from investing in Array and Array lost potential clients.

56.     Array's damages include lost investments, lost profits, expenses, lost goodwill and other damages in amounts to be determined at trial.

## THIRD COUNTERCLAIM FOR RELIEF

### For Trade Libel

### (Regarding ConsumerDirect's Conduct Toward Clients)

57.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

58.     ConsumerDirect harmed Array by making false and disparaging statements in the marketplace regarding Array, to its clients and business partners.

59.     When ConsumerDirect made these statements it clearly and necessarily understood that they disparaged the quality of Array's products, services, and integrity.

60.     These statements were made to persons and entities other than Array, including clients, prospective clients, and business partners.

61.     ConsumerDirect knew the statements were false, misleading, and untrue at the time it made the statements.

62.     ConsumerDirect knew or should have known that third parties would rely on these material, false and misleading statements, and, in fact, intended for them to do so in an effort to harm Array and its business.

63.     Array suffered direct and indirect financial harm as a result of the reliance on these false and misleading statements, in amounts to be proven at trial.

64.     ConsumerDirect's conduct was a substantial factor in causing Array's harm.

65.     ConsumerDirect's conduct was willful, malicious, and wrongful with the intent to irreparably damage Array, including tarnishing Array's goodwill and force it out of fair competition, such that punitive damages to punish ConsumerDirect are warranted and appropriate.

## FOURTH COUNTERCLAIM FOR RELIEF

### For Unfair Competition in Violation of California
### Business and Professions Code § 17200 ("UCL")
### (Regarding ConsumerDirect's Conduct Toward Clients)

66.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37 as though fully set forth herein.

67.     ConsumerDirect committed one or more acts of unfair competition within the meaning of California Business & Professions Code § 17200 ("UCL"). ConsumerDirect's acts and practices constitute unlawful, unfair and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, falsely claiming that Array has engaged in fraudulent business practices and does not provide adequate customer service.

68.     ConsumerDirect's acts and practices are actionable under the unlawful prong of the UCL as they constitute intentional interference with contractual relations and economic advantage and trade libel.

69.     ConsumerDirect's acts and practices were fraudulent within the meaning of the UCL because they were designed to deceive and defraud Array's consumers and partners.

70.     ConsumerDirect knew or should have known through the exercise of reasonable care that its statements were false.

71.     Array has suffered injury in fact and lost money as a result of ConsumerDirect's unlawful acts and practices and has been irreparably harmed and will continue to suffer irreparable harm by reasons of these violations.

## FIFTH COUNTERCLAIM FOR RELIEF
### For Intentional Interference with Contractual Relations
### (Regarding ConsumerDirect's Conduct Toward
### the Credit Bureaus)

72.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 and 38 through 42 as though fully set forth herein.

73.     Array had valid contracts with credit bureaus for the purchase of consumer credit data.  Envious that Array obtained business through fair competition, ConsumerDirect contacted the bureaus with the intent to interfere with Array and its contractual relationships.

74.     ConsumerDirect was aware of the contracts between Array and the bureaus at the time that it made false statements about Array in order to interfere with those contracts.  ConsumerDirect contacted the bureaus with full knowledge of the contractual relationships, in an attempt to regain business that ConsumerDirect lost and to stymie Array's continued growth and success.

75.     ConsumerDirect's unlawful conduct prevented performance of the contracts between Array and the bureaus and made it more expensive and difficult for Array to perform the contracts.

76.     ConsumerDirect contacted the bureaus fully intending to disrupt and interfere with the contractual relationships with Array.

77.     ConsumerDirect's misconduct is the direct and proximate cause of damages to Array.

78.     Array's damages include lost investments, lost profits, expenses, lost goodwill, and prospective profits, and other damages in amounts to be determined at trial.

ARRAY'S ANSWER AND AMENDED COUNTERCLAIMS

## SIXTH COUNTERCLAIM FOR RELIEF
### For Intentional Interference with Prospective Economic Advantage
### (Regarding ConsumerDirect's Conduct Toward
### the Credit Bureaus)

79.    Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 and 38 through 42 as though fully set forth herein.

80.    Array had an existing or prospective economic relationships with at least one of the credit bureaus.

81.    ConsumerDirect knew that Array had the existing or prospective economic relationships with the bureaus.

82.    Envious that Array obtained business through fair and proper competition, ConsumerDirect contacted the bureaus with the intent to interfere with Array's contractual relationships.

83.    ConsumerDirect was aware of these potential contracts, and interfered with them by, among other things, making the above-described false and defamatory statements about Array to dissuade the bureaus from entering into contractual relationships with Array.

84.    As a direct and proximate result of ConsumerDirect's improper and false communications, at least one credit bureau sought and received significant concessions from Array that it would not have otherwise.

85.    Array's damages include lost investments, lost profits, expenses, lost goodwill and other damages in amounts to be determined at trial.

## SEVENTH COUNTERCLAIM FOR RELIEF
### For Trade Libel
### (Regarding ConsumerDirect's Conduct Toward
### the Credit Bureaus)

86.    Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 and 38 through 42 as though fully set forth herein.

87.     ConsumerDirect harmed Array by making false and disparaging statements regarding Array to the credit bureaus.

88.     When ConsumerDirect made these statements it clearly and necessarily understood that they disparaged the quality of Array's products, services, and integrity.

89.     These statements were made to persons and entities other than Array.

90.     ConsumerDirect knew the statements were false, misleading, and untrue when it made the statements.

91.     ConsumerDirect knew or should have known that the Credit Bureaus would rely on these material, false and misleading statements, and, in fact, intended for them to do so in an effort to harm Array and its business.

92.     Array suffered direct and indirect financial harm as a result of the reliance on these false and misleading statements.

93.     ConsumerDirect's conduct was a substantial factor in causing Array's harm.

94.     ConsumerDirect's conduct was willful, malicious, and wrongful with the intent to irreparably damage Array, including tarnishing Array's goodwill and force it out of fair competition, such that punitive damages to punish ConsumerDirect are warranted and appropriate.

## EIGHTH COUNTERCLAIM FOR RELIEF

### For Unfair Competition in Violation of California
### Business and Professions Code § 17200
### (Regarding ConsumerDirect's Conduct Toward
### the Credit Bureaus)

95.     Array hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 and 38 through 42 as though fully set forth herein.

96.     ConsumerDirect committed one or more acts of unfair competition within the meaning of California Business & Professions Code § 17200 ("UCL").

ConsumerDirect's acts and practices constitute unlawful, unfair and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, falsely claiming that Array has engaged in fraudulent business practices and does not provide adequate customer service.

97.    ConsumerDirect's acts and practices are actionable under the unlawful prong of the UCL as they constitute intentional interference with contractual relations and economic advantage and trade libel.

98.    ConsumerDirect's acts and practices were fraudulent within the meaning of the UCL because they were designed to deceive and defraud the credit bureaus.

99.    ConsumerDirect knew or should have known through the exercise of reasonable care that its statements were false.

100.   Array has suffered injury in fact and lost money as a result of ConsumerDirect's unlawful acts and practices and has been irreparably harmed and will continue to suffer irreparable harm by reasons of these violations.

## PRAYER FOR RELIEF

Array hereby prays for judgment in its favor and for the following relief:

A.    For monetary relief including, but not limited to, actual, compensatory, and punitive damages, and restitution, as permitted by law, in amounts to be determined at trial.

B.    For a permanent injunction enjoining and restraining ConsumerDirect, its officers, agents, servants, employees, attorneys, and other persons who are acting in concert or participation with them perpetually from:

1.    Stating or implying that Array has engaged or is engaging in fraudulent conduct;

2.    Stating or implying that Array has engaged or is engaging in unlawful conduct;

3.   Stating or implying that Array provides or has provided inadequate protection of its clients' and their customers' data

4.   Stating or implying that Array does not provide or has not provided adequate customer support;

5.   Disparaging Array, its officers, agents, servants, employees, attorneys, and any other persons who are acting in concert or participation with them, its services, or its products to actual and potential clients, consumers, or competitors.

C.   For attorneys' fees, and costs of suit.

D.   For pre- and post-judgment interest, as permitted by law.

E.   For such other relief as the Court may deem just and proper.

DATED: June 21, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert M. Schwartz
Moon Hee Lee

By: _____
Robert M. Schwartz
Attorneys for Defendant Array, US Inc.

1

**DEMAND FOR JURY TRIAL**

Array requests a trial by jury on any claim, counterclaim, or issue triable by a jury.

DATED: June 21, 2022

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Robert M. Schwartz
Moon Hee Lee

By: _____
Robert M. Schwartz
Attorneys for Defendant Array, US Inc.

-31-