RUTAN & TUCKER, LLP
Proud Usahacharoenporn (State Bar No. 278204)
pusaha@rutan.com
Briana Richmond (State Bar No. 301824)
brichmond@rutan.com
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035

Attorneys for Plaintiff/Counter-Defendant
CONSUMERDIRECT, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMERDIRECT, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs<br><br>PENTIUS, LLC, a Delaware limited liability company; ARRAY US, INC., a Delaware corporation; SYSTEM ADMIN, LLC, a Florida limited liability company; CTH SKIN CORP., a Delaware corporation; PENTOPS, LLC, a Delaware limited liability company; DAILY STOCKS, INC., a Delaware corporation; NECTRIS, LLC, a Utah limited liability company; CLARITY PROGRESSION, LLC, a Florida limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:21-cv-01968 (JVS) (ADSx)<br>Honorable James V. Selna<br>Courtroom 10C<br><br>**REPLY IN SUPPORT OF CONSUMERDIRECT, INC.'S MOTION TO DISMISS ARRAY US, INC.'S AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**Hearing**<br>Date: August 22, 2022<br>Time: 1:30 p.m.<br>Ctrm: 10C |
| ARRAY US, INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>vs<br><br>CONSUMERDIRECT, INC., a Nevada corporation, and DOES 1 through 10, inclusive,<br><br>Counter-Defendants. | Complaint Filed: December 1, 2021<br>Trial Date: July 11, 2023 |

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

Case No. 8:21-cv-01968 (JVS) (ADSx)
REPLY IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff/Counter-Defendant ConsumerDirect, Inc. ("ConsumerDirect") submits this reply in support of its Motion for an Order dismissing the First through Eighth Claims for Relief in the Amended Counterclaim (Dkt No. 159, the "Counterclaim") filed Defendant/Counterclaimant Array US, Inc. ("Array") pursuant to Rule 12(b)(6). Array's Opposition is based on citations to inapposite law and allegations in its Counterclaim that do not support Array's arguments. For reasons stated below, Array's Counterclaim fails to state any valid claims against ConsumerDirect and the Motion should be granted.

## II. THE FIRST AND FIFTH CLAIMS FOR RELIEF FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS FAIL TO STATE A VALID CLAIM

As explained in the Motion, Array's First and Fifth Claims for Relief for Intentional Interference with Contractual Relations fail to state any valid claim because they lack factual allegations supporting the following necessary elements: (1) the existence of any valid contract; (2) ConsumerDirect's knowledge of the alleged contracts; and (3) actual breach or disruption of the contracts and resulting damages.

With regard to the existence of a valid contract, Array argues that it alleged "interference with Array's agreements with its clients," citing to paragraphs 11-12 and 16-17 of the Counterclaim. (Dkt No. 163, p.11/25.) These paragraphs do not identify any client contracts with which ConsumerDirect interfered, rather they allege in general terms the types of clients that Array has, i.e., "businesses who serve the public, such as banks, credit card issuers, financial technology companies, employee benefits providers, and credit unions." (Dkt No. 159, ¶¶ 11-12, 16-17.) There are no allegations anywhere, and even Array cannot point to any, that actually identify which of these presumably hundreds of vaguely-described clients are the subject of its interference claims.

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

-1-

Case No. 8:21-CV-01968 (JVS) (ADSx)
REPLY IN SUPPORT OF MOTION TO DISMISS

The case law that Array cites in support of the argument that it is not required to specifically identify the third parties is inapplicable.  Ordinarily, the complaint "must identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties," and the failure to supply any "facts concerning the identity of any third party with whom they contracted . . . requires dismissal of the claim" since "to understand whether [counterclaimants'] performance was disrupted require[s] the district court to determine what contractual rights [they] posses[ed]."  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.,* 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015).  In each of the cases cited by Array (Dkt No. 163, pp. 12-13/25), the failure to identify by name the third parties was not fatal to the claims because at least some facts were alleged regarding the contractual nature that was disrupted that allowed the defendant to determine what interference was being alleged against them.  Here, there are no such facts that would excuse Array's failure to identify the third parties.

Specifically, the only example given in the Counterclaim of how ConsumerDirect allegedly interfered with any client "contract" is that "Other businesses who have been negotiating with or in talks with Array suddenly became cold.  In one such relationship, Array's client made it clear that ConsumerDirect's statements caused concern about doing business with Array.  Array was able to renegotiate the contract but only after significant damage control and under much less favorable terms for Array."  (Dkt No. 159, ¶ 33.)  In other words, Array's own allegations establish that at the time of the alleged interference, it did not yet have any contract with this client, but was ***in negotiations*** for a contract.  There are no other client contracts alleged either by name or otherwise.  As such, Array failed to allege the existence of any valid contract with any client that was interfered with.

Array's claim with regard to the credit bureau agreements likewise fails.  Array argues that it alleged "interference with Array's contracts with the three main credit bureaus—Experian, TransUnion, and Equifax." (Dkt No. 163, p. 12/25.)

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

-2-

Case No. 8:21-CV-01968 (JVS) (ADSX)
REPLY IN SUPPORT OF MOTION TO DISMISS

However, the Counterclaim only alleged interference with one credit bureau (without specifying which one), and again confirmed that as of the time of the purported interference, Array did not even have a contract with that bureau but was merely in talks for one: "Just as Array's negotiations were wrapping up with one of the credit bureaus, the bureau halted the negotiations and demanded a slew of concessions. These fresh demands were based on the false statements ConsumerDirect had conjured up." (Dkt No. 159, ¶ 42.) Thus, there were no valid agreements with the credit bureaus that were interfered with either.

Even if Array had adequately alleged the existence of any contract, which it has not, its claims still fail because Array failed to allege any facts showing ConsumerDirect's knowledge of the alleged contracts. Contrary to Array's argument, there is a wealth of case law holding that facts must be alleged showing that the defendant had knowledge of the agreements at issue. *See, e.g., Taie Weie Enter. Co. v. Tech. Aouatic Associated Mfg.,* No. CV203427 RSWL JCX, 2020 WL 13311702 at *8 (C.D. Cal. Oct. 22, 2020) ("Both TAAM's interference claims require factual allegations that Taie Weie had knowledge of the alleged contract or relationship between TAAM and the third-party"); *Swipe & Bite, Inc. v. Chow,* 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (granting motion to dismiss because plaintiff failed to "allege any facts showing that [the defendant] had knowledge of the agreements with these specific customers").

Array claims that it alleged facts supporting ConsumerDirect's knowledge of the contracts in Paragraphs 9, 25, 29, 35-36, 38, 41, and 44-45 of the Counterclaim, but none of those paragraphs contain any single fact supporting the allegations that ConsumerDirect had knowledge of any existing agreement between Array and its clients or the credit bureaus. (Dkt No. 163, pp. 13-14/25.) Array also argues that ConsumerDirect must have known that Array had agreements with the credit bureaus because all credit reporting companies must have an agreement with one or more of the bureaus. (*Id.*) But there are no facts alleged showing that

ConsumerDirect knew which of the three credit bureaus Array had an agreement with (to the contrary, part of ConsumerDirect's claim is that Array falsely represents it has agreements with all three bureaus when in fact it does not [Dkt No. 93, ¶ 54]). Nor can Array allege these facts because, as stated above, there were no existing agreements with any client or credit bureau at the time of the alleged interference.

Lastly, the Motion argues that Array failed to allege facts establishing actual breach or disruption of the contracts, or any resulting damage to Array because Array only alleges generally that it had to renegotiate terms, but does not specify what those terms were or why or how they caused any harm to Array.  (Dkt No. 159, ¶¶ 34, 42.)  As held in *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008), it is insufficient to merely allege harm "because [] ongoing business and economic relationships with Customers have been disrupted;" something more is required such as allegations that the contracts were terminated or defaulted.  Even the case that Array cites is in accord.  *Diamond Resorts U.S. Collection Dev., LLC v. Pandora Mktg., LLC,* No. CV 20-5486 DSF (ADS), 2021 WL 3193224, at *6 (C.D. Cal. June 15, 2021) (finding the allegations sufficient because the plaintiff alleged "customers have terminated or defaulted on their contractual relations"). Array points to Paragraphs 8, 32-34 and 42 of the Counterclaim, however, all that is alleged in these paragraphs is that Array "failed to form new business relationships," that "business who have been negotiating with or in talks with Array suddenly became cold," and that Array had to "renegotiate" contracts it was in the process of negotiating.  There is not a single allegation establishing any breach or default of any existing agreement.

For these reasons, the intentional interference with contractual relations claims should be dismissed.

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

-4-

Case No. 8:21-CV-01968 (JVS) (ADSx)
REPLY IN SUPPORT OF MOTION TO DISMISS

## III. THE SECOND AND SIXTH CLAIMS FOR RELIEF FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE FAIL TO STATE A VALID CLAIM

Array's Second and Sixth Claims for Relief for Intentional Interference with Prospective Economic Advantage fail to state a claim for the same reasons since these claims require similar elements. Specifically, Array failed to allege what specific economic relationship ConsumerDirect interfered with, facts showing knowledge of that relationship, facts showing how those relationships were disrupted because of anything ConsumerDirect did, or any independently wrongful act.

Array argues that it was not required to specify by name the relationships that are the subject of the claim. However, this Court has held otherwise. *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.,* 117 F.Supp.3d 1092, 1116 (C.D. Cal. 2015). Array's attempt to distinguish this case by arguing that it was wholly reliant on *Westside Ctr. Associates v. Safeway Stores 23, Inc.,* 42 Cal. App. 4th 507 (1996) is misplaced. (Dkt No. 163, pp. 16-17/25.) *UMG* relied on *Westside* for the proposition that "Allegations that a defendant interfered with a relationship with an 'as yet unidentified' customer will not suffice." For the proposition at issue here—that Array needs to specify the relationships that are the subject of its claims—*UMG* cited to numerous other federal cases holding the same thing. *UMG, supra,* at 1117, citing *Damabeh v. 7–Eleven, Inc.,* No. 12–CV–01739 LHK, 2013 WL 1915867, at *10 (N.D.Cal. May 8, 2013); see also *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,* No. CV 10–5696 CRB, 2013 WL 3460707, at *7 (N.D.Cal. July 9, 2013). The one case on which Array relies, *Luxpro Corp. v. Apple Inc.*, No. C 10-03058 JSW, 2011 WL 1086027, at *7 (N.D. Cal. Mar. 24, 2011), held that the individual third parties need not be specifically alleged if a discrete group of third parties is alleged, but here, Array does not even specify any particular group of customers that are the subject of its claims.

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

-5-

Case No. 8:21-CV-01968 (JVS) (ADSx)
REPLY IN
SUPPORT OF MOTION TO DISMISS

For the same reasons stated above, Array also fails to allege adequate facts establishing ConsumerDirect's knowledge of the unspecified relationship(s), or how the relationship(s) were actually disrupted, or how that disruption actually caused harm to Array.

Lastly, Array fails to allege any independently wrongful act. *See A. F. Arnold & Co. v. Pac. Pro. Ins., Inc.*, 27 Cal.App.3d 710, 716 (1972) ("the facts pleaded by a plaintiff must show an intent to do something which takes the defendant's acts beyond those of a mere competitor securing business"). Array argues that its trade libel, unfair competition, and interference claims constitute the wrongful acts, but those claims also fail for the reasons stated herein.

## IV.   *THE THIRD AND SEVENTH CLAIMS FOR RELIEF FOR TRADE LIBEL FAIL TO STATE A VALID CLAIM*

Array's Third and Seventh Claims for Relief for Trade Libel fail because Array did not identify the person(s) who allegedly made the libelous statements on ConsumerDirect's behalf, the person(s) to whom the statements were made, and the time and location of each statement. *See, e.g., Eldorado Stone v. Renaissance Stone, Inc.,* No. 04–cv–2562 JM, 2005 WL 5517731, 2005 U.S. Dist. LEXIS 45237, at *10–11 (S.D. Cal. Aug. 9, 2005) (dismissing trade libel claim where plaintiff failed to identify the author or speaker, recipient, time, and location of each allegedly libelous statement); *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F.Supp.2d 929, 937 (N.D. Cal. 2008) (same). Array does not even try to distinguish these cases; rather, Array argues that "the Ninth Circuit has not held that every element of a trade libel claim must satisfy a heightened pleading standard" without even citing any applicable case law. (Dkt No. 163, p. 19/25.)

Further, a trade libel claim requires that the plaintiff plead special damages, which Array failed to do. As explained in the Motion, this requires Array to "identify particular customers and transactions of which it was deprived as a result of the libel," yet the Counterclaim is devoid of any such detail. *See Piping Rock Partners,*

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

-6-

Case No. 8:21-CV-01968 (JVS) (ADSx)
REPLY IN
SUPPORT OF MOTION TO DISMISS

*Inc. v. David Lerner Assocs., Inc.*, 946 F.Supp.2d 957, 981 (N.D. Cal. 2013), aff'd, 609 F. App'x 497 (9th Cir. 2015) ("Counterplaintiffs must 'identify particular customers and transactions of which it was deprived as a result of the libel.'"); *First Advantage Background Servs. Corp. v. Priv. Eyes, Inc.*, 569 F.Supp.2d 929, 938 (N.D. Cal. 2008) (requiring details to be plead regarding the amount of business the plaintiff had before and after the alleged libel). None of the paragraphs of the Counterclaim Array points to in its Opposition contain any of these required details.

## V. THE FOURTH AND EIGHTH CLAIMS FOR RELIEF FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 FAIL TO STATE A VALID CLAIM

Lastly, Array's Fourth and Eighth Claims for Relief for Violation of California Business and Professions Code section 17200 fail because Array fails to allege the monetary loss required to confer standing, fails to allege any unfair, unlawful, or fraudulent act, and fails to allege any recoverable relief.

In response to ConsumerDirect's argument that Array failed to plead specific facts establishing actual monetary loss required for standing, Array cites to *L. Offs. of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544 (2013). In that case, the court found that the allegations were sufficient because the plaintiff "alleged that he had been forced to pay increased advertising costs and to reduce his prices for services in order to compete, and that he had lost business and the value of his law practice had diminished." *Id.* at 561. Here, on the other hand, all Array alleged with respect to both its customers and the credit bureaus is that Array renegotiated a customer contract "under much less favorable terms for Array" and that the credit bureau "demanded a slew of concessions." (Dkt No. 159, ¶¶ 33, 42.) But there are no allegations explaining how these renegotiated terms caused Array any monetary damage whatsoever. Thus, unlike in *Higbee,* Array has not alleged sufficient facts showing an injury in fact.

Moreover, Array fails to allege any requisite unlawful, unfair, or fraudulent

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

-7-

Case No. 8:21-CV-01968 (JVS) (ADSx)
REPLY IN SUPPORT OF MOTION TO DISMISS

business act. Array argues that the "unlawful" conduct is that ConsumerDirect engaged in interference and trade libel. However, such common law claims are insufficient to support a violation of the unlawful prong. *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1044 (9th Cir. 2010). Moreover, the interference and trade libel claims fail for the reasons stated above; thus, the unfair competition claim also fails to the extent dependent on those claims.

As for the unfair prong, Array does not explain how ConsumerDirect's conduct constitutes unfair conduct. Instead, Array argues anticompetitive effects such as interference with consumers' ability to access data through Array's services. (Dkt No. 163, 22-23/25.) Array cites to *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.,* 55 Cal. App. 5th 446, 418 (2020) for the argument that such "reduced output, increased prices, or decreased quality in the relevant market" constitutes "direct evidence of anticompetitive effects," but *Flagship* was not even an unfair competition case. Nor does Array even attempt to tie these purported "effects" to any actually unfair conduct by ConsumerDirect.

Regarding the fraudulent prong, Array argues that it alleged "ConsumerDirect engages in conduct by which 'members of the public are likely to be deceived,'" citing generally to its argument on the trade libel claim. (Dkt No. 163, p.23/25.) However, ConsumerDirect's alleged statements to some unidentified customers or potential customers of Array can hardly constitute fraud on the consumer public of the type that can form the basis of an unfair competition claim. Moreover, Array's trade libel allegations lack the detail required to support the heightened pleading required for fraud (since it does not even meet the standard pleading requirements for reasons stated above). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (At a minimum, the claimant must plead specific facts, such as time, place, persons, statements, and explanations of why any representations are misleading).

As for the lack of an available remedy, the Motion argues that the injunction restraining ConsumerDirect from "[s]tating or implying that Array has engaged or

is engaging in fraudulent conduct," "unlawful conduct," "that Array provides or has provided inadequate protection of its clients' and their customers' data," or "that Array does not provide or has not provided adequate customer support" is unavailable because it violates the litigation privilege and free speech rights given it seeks to enjoin ConsumerDirect from pursuing the very claims it has asserted in this action. (Dkt No. 159, pp. 29-30; Dkt No. 163, pp. 19-24/25.) According to Array, the injunction does not concern ConsumerDirect's claims because the injunction seeks to enjoin statements relating to "Array's business practices and data security systems" whereas "ConsumerDirect's claims against Array allege that the Defendants' domain names are too similar to its own." (Dkt No. 163, p. 19/25.) Array's argument inexplicably ignores that ConsumerDirect's allegations relating to the infringing domain names only constitute half of ConsumerDirect's claims. The other half of the claims (i.e., Claims 4 through 7) all concern the exact issues about Array's business practices and data security that are the subject of Array's requested injunction. (Dkt No. 93, ¶¶ 49-58.)

## VI. CONCLUSION

For the foregoing reasons, the First through Eighth Claims for Relief in Array's Counterclaim should be dismissed. Array already had a chance to amend and still could not even come close to stating valid claims, and, further, Array does not even explain in its Opposition what facts it could allege that would save any of the claims. Therefore, the dismissal should be with prejudice.

Dated: August 8, 2022

RUTAN & TUCKER, LLP

By: */s/ Proud Usahacharoenporn*
Proud Usahacharoenporn
Attorneys for Plaintiff/Counter-Defendant CONSUMERDIRECT, INC.

Rutan & Tucker, LLP
attorneys at law

2530/102119-0036
18125804.1 a08/08/22

-9-

Case No. 8:21-CV-01968 (JVS) (ADSx)
REPLY IN SUPPORT OF MOTION TO DISMISS