UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Motion to Dismiss Array's Amended Counterclaim [161]**

Plaintiff/Counter-Defendant ConsumerDirect, Inc. ("ConsumerDirect") moves to dismiss the Amended Counterclaim (Dkt. 159, "Counterclaim") filed by Defendant/Counterclaimant Array US, Inc. ("Array") for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Mot., Dkt. 161, at 1. Array opposes the motion. See Opp'n, Dkt. 163, at 1. ConsumerDirect presents a reply in support of its Motion. See Reply, Dkt. 165.

For the following reasons, the Court **GRANTS in part and DENIES in part** the motion.

## I. BACKGROUND

### A. Procedural History

ConsumerDirect filed this action against various defendants, including Array, alleging trademark infringement, interference, unfair competition, and other related offenses. See Compl., Dkt. 1.

ConsumerDirect moved for a preliminary injunction and the Court granted that motion, finding that ConsumerDirect had shown a likelihood of success on the merits of its claims. Dkt. 89,

Array asserts the following counterclaims against ConsumerDirect: (1) intentional interference with contractual relations (First Counterclaim, id. ¶¶ 43–49; Fifth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-cv-01968-JVS (ADSx)                                    Date  August 25, 2022

Title  ConsumerDirect, Inc. v. Pentius, LLC et al.

Counterclaim, id. ¶¶ 72–78); (2) intentional interference with prospective economic advantage (Second Counterclaim, id. ¶¶ 50–56; Sixth Counterclaim, id. ¶¶ 79–85); (3) trade libel (Third Counterclaim, id. ¶¶ 57–65; Seventh Counterclaim, id. ¶¶ 86–94); (4) unfair competition in violation of California Business and Professions Code § 17200 ("UCL") (Fourth Counterclaim, id. ¶¶ 66–71; Eighth Counterclaim, id. ¶¶ 95–100). Array states each cause of action twice, once regarding ConsumerDirect's conduct toward clients (see First–Fourth Counterclaims), and separately regarding its conduct towards the credit bureaus (see Fifth–Eighth Counterclaims). Id.

### B.      Counterclaim's Factual Allegations

Array's Answer and Amended Counterclaims alleges the following. Answer and Am. Countercl., Dkt. 159, (pp. 1–13, "Answer"), (pp. 14–31, "Counterclaim").

This litigation involves two different business models in the credit monitoring industry. Answer, ¶ 1. For many years, ConsumerDirect has been an incumbent in the industry. Id. ¶ 2. Its approach has been to own websites where consumers looking to know their credit score and manage their credit can enroll in and pay for ConsumerDirect's service. Id. Since 2020, Array's approach has been to provide software and technology infrastructure to financial institutions that, in turn, enable them to offer more advanced and user-friendly credit score and monitoring services directly to their customers. Id. ¶ 3. While ConsumerDirect works primarily with consumers, Array works exclusively with other businesses to help them retain consumer attention in the websites and mobile applications through with those businesses already engaged with their consumers—seamlessly and often without additional charge. Id. Array has made this possible through agreements with the three major credit reporting bureaus, through innovation, and by demonstrating to its clients that it offers a best in class product. Id. ¶ 4. Under Array's approach, consumers have no need to navigate to one of ConsumerDirect's websites or to pay it an additional fee for their credit information. Id. ¶ 5.

After Array launched, ConsumerDirect began losing business customers to Array. Countercl., ¶ 25. Since then, ConsumerDirect has engaged in a smear campaign to spread knowingly false information about Array throughout the industry. Id. ¶ 26. These false statements include false claims disparaging Array, its products, and its integrity. Id. ¶¶ 26–27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:21-cv-01968-JVS (ADSx) Date August 25, 2022

Title ConsumerDirect, Inc. v. Pentius, LLC et al.

At an industry conference earlier this year, for example, ConsumerDirect sought out Array's current and potential customers and told them lies about Array's business practices. Id. ¶ 29. ConsumerDirect accused Array of improperly using credit bureau data, including by "trimerging" the three credit bureau's data (and ultimately paying less for the information) as part of an allegedly fraudulent scheme to trick consumers and undercut competitors. Id. ConsumerDirect's employee also falsely stated that Array was displaying sensitive, private consumer data contrary to industry and legal standards. Id. ¶ 30. ConsumerDirect also claimed that Array improperly disclosed data, including consumers' bank account and social security numbers. Id. None of these claims is true. Id. ¶ 31. Because of these lies, Array did not form any new business relationships after this event, which was not normal, particularly after receiving so much interest from participants. Id. ¶ 32. After the conference, other businesses that had been negotiating with or in talks with Array suddenly became cold. Id. ¶ 33. One client made it clear that ConsumerDirect's statements caused it to be concerned about doing business with Array. Id. Array was able to renegotiate the contract, but only after doing significant damage control and agreeing to much less favorable terms for itself. Id. Although Array's investigation is ongoing, it believes that ConsumerDirect damaged other existing and potential business relationships by disparaging Array and its products and services. Id. ¶ 34.

ConsumerDirect also spread lies in the market about Array's standing with the credit bureaus and regulators, stating that the credit bureaus would cease doing business with Array, that regulators were going to shut it down, and that it was under investigation by the FTC. Id. ¶ 35. ConsumerDirect spread these lies about Array's ability to continue as a business for the purpose of weakening Array's current relationships and foreclose new ones. Id. ¶ 36. These lies harm Array, its reputation, and its ability to form business relationships. Id. ¶ 37.

In addition to lying about Array to its current and potential customers, ConsumerDirect also spread falsehoods about Array to the major credit bureaus. Id. ¶ 36. The three major credit bureaus (the "3Bs") are the largest and most important source of consumer-level data needed to produce the reports and information that companies like Array and ConsumerDirect supply to customers and consumers. Id. ¶ 38. Array cannot have a viable business without an agreement with one or more of these companies. Id. Array has recently been working to expand its relationships with the credit bureaus. Id. ¶ 39. As these negotiations were coming to a close, ConsumerDirect interfered with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-cv-01968-JVS (ADSx)　　　　　　　　　Date  August 25, 2022

Title  ConsumerDirect, Inc. v. Pentius, LLC et al.

process by spreading lies about Array to the credit bureaus. Id. ¶ 40. ConsumerDirect's statements include the same or similar lies ConsumerDirect spread about Array to Array's current and potential clients. Id. ¶ 41. ConsumerDirect also told one or more credit bureaus the following falsehoods about Array: (1) Array fails to answer its customer service lines adequately; (2) Array engages in merchant processing fraud to somehow hide improper behavior from the bureaus; (3) Array sells raw consumer data to third parties without consumer consent and while misrepresenting how it handles data to consumers; (4) Array fails to employ meaningful security controls to adequately protect the confidentiality and integrity of consumer data; and (5) Array has violated or is violating state and federal laws and regulations. Id. ¶ 41. These false statements caused significant damage to Array. Id. ¶ 42. Just as its negotiations were wrapping up with one of the credit bureaus, the bureau halted the negotiations and demanded a slew of concessions based on the false statements ConsumerDirect had told it. Id.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

### III. DISCUSSION

ConsumerDirect moves to dismiss Array's Counterclaims pursuant to Rule 12(b)(6), because they are "completely devoid of any of the required detail" and thus to do not state a valid, plausible claim. Mot. at 1.

**A.      Intentional Interference with Contractual Relations (First and Fifth Counterclaims)**

CounsumerDirect argues that Arrays First and Fifth Counterclaims for intentional interference with contractual relations should be dismissed for "fail[ing] to state any valid claim because they lack the factual allegations necessary to support the elements" of such a claim. Mot. at 4.

A claim for intentional interference with contract requires: (1) a valid and existing contract with a third party; (2) that the defendant had knowledge of the contract, (3) that the defendant committed an intentional act designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the customer relationship, and (5) damages. See Soil Retention Prods., Inc. v. Brentwood Indus., No. 3:20-CV-02435-BEN-WVG, 2021 WL 689914, at *17 (S.D. Cal. Feb. 23, 2021). Notably, "an actor's breach of contract, without more, is not 'wrongful conduct' capable of supporting a tort." Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd., 2021 WL 5231689, at *1 (Cal. Ct. App. Nov. 10, 2021) (citing Erlich v. Menezes, 21 Cal. 4th 543, 551–552 (1999); Cates Construction, Inc. v. Talbot Partners, 21 Cal. 4th 28, 54 (1999)).

As to the first element, ConsumerDirect contends that the Counterclaims are insufficient for two reasons. First, it argues that Array alleges only the existence of ongoing contractual negotiations when ConsumerDirect interfered, not any valid contract. Mot. at 4 (citing Countercl., ¶¶ 34, 42). However, the First and Fifth Counterclaims allege that at the time of the alleged interference, "Array had valid contracts with clients for the provision of its consumer finance and credit tools" (id. ¶ 44), and "had valid contracts with credit bureaus for the purchase of consumer credit data" (id. ¶ 73). Thus, while Array does allege that it was in the process of negotiating some contracts, it also alleges the existence of valid, executed contracts. See id. ¶¶ 44, 73. Second, ConsumerDirect argues that Array's failure to identify specific contracts and customers is fatal to the claim. Mot. at 4–5. In support of this argument, Array cites UMG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

Recordings v. Global Eagle Ent., Inc., which states that "counterclaimants must identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties." 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015). However, the central inquiry is not whether the pleading specifically identifies the third parties, but whether it sufficiently indicates the contractual rights that are at issue. PHD Marketing, Inc. v. Vital Pharms, Inc., 2021 WL 8693518, at *9 (C.D. Cal. Mar. 3, 2021) (citing Unite Eurotherapy, Inc. v. Walgreen Co., 2017 WL 513008, at *2–3 (S.D. Cal. Feb. 7, 2017); Nestle USA, Inc. v. Crest Foods, Inc., 2017 WL 3267665, at *12 (C.D. Cal. July 28, 2017)).

     Array's allegations here are sufficient to determine what contractual rights are at issue. Array sufficiently alleges that the First Counterclaim is based on Array's agreements with its clients by which it licenses its software and technology infrastructure for their clients to use to offer credit monitoring services to their customers. Countercl., ¶¶ 4, 11, 16–17, 44. Similarly, it adequately identifies that its Fifth Counterclaim is based on interference with Array's contracts with the three major credit bureaus to obtain consumer credit and related information. Id. ¶¶ 9, 73. These allegations are similar to those that courts have found to sufficiently identify a valid contract to state a claim for interference with contractual relations. See, e.g., Qwest Commc'ns Corp. v. Herakles, LLC, 2008 WL 783347, at *11 (E.D. Cal. Mar. 20, 2008) (finding allegations of "existing relationships with a finite group of potential customers sufficient" to survive a motion to dismiss); Zoom Imaging Sols., Inc. v. Roe, 2020 WL 489238, at *3 (E.D. Cal. Jan. 30, 2020) (denying a motion to dismiss a claim for intentional interference with contractual relations where the plaintiff alleged that "at least seventy-four [unnamed] customers ha[d] cancelled their agreements with [the plaintiff]"); Byton N. Am. Co. v. Breitfeld, 2020 WL 3802700, at *6 (C.D. Cal. Apr. 28, 2020) (denying a motion to dismiss a claim for intentional interference with contractual relations where the plaintiff did not name the parties to the contracts at issue).

     With regards to the second element, ConsumerDirect argues that "Array failed to allege any facts demonstrating ConsumerDirect's knowledge of the alleged contracts." Mot. at 4–5. As to its client contracts, Array alleges that "ConsumerDirect was aware of the contracts between Array and its clients and business partners at the time it made false and defamatory statements." Countercl., ¶ 45. Array supports this conclusion with specific factual allegations. For example, its allegations that ConsumerDirect "sought out" Array's clients and told them to "stop doing business" with Array show that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

ConsumerDirect knew they were Array's clients. Id. ¶¶ 25, 29, 35–36, 44–45, Intro. ¶¶ 6(ii), 7. Similarly, Array adequately pleads facts showing ConsumerDirect's knowledge of its contractual relationships with the credit bureaus. Array alleges that "ConsumerDirect was aware of the contracts between Array and the bureaus at the time it made false statements about Array." Id. ¶ 74. It also alleges that ConsumerDirect knew that all viable credit monitoring businesses must have an agreement with at least one of the three credit bureaus to obtain the necessary consumer credit information. Id. ¶¶ 9, 38. This is sufficient to allege ConsumerDirect's knowledge of its existing contracts.

ConsumerDirect contends that "[t]he Counterclaim also fails to allege facts establishing actual breach or disruption of the contracts, or any resulting damage to Array." Mot. at 5. To adequately plead "actual breach or disruption," a party may allege that the interference made performance of its contract "more expensive or burdensome," an actual breach is not required. Pac. Gas & Elec. Co. v. Bear Sterns & Co., 50 Cal. 3d 1118, 1127 (1990). As to its client contracts, Array alleges that "ConsumerDirects unlawful conduct interfered with the performance of the contracts between Array and its clients and partners and made it more expensive and difficult for Array to perform its obligations." Countercl., ¶ 46. It further alleges that "Array's client made it clear that ConsumerDirect's statements caused concern about doing business with Array" and that "Array was able to renegotiate the contract but only after significant damage control and under much less favorable terms for Array." Id. ¶ 33. Regarding the credit bureaus, Array alleges that "ConsumerDirect's unlawful conduct prevented performance of the contracts between Array and the bureaus and made it more expensive and difficult for Array to perform the contracts." Id. ¶ 75. These allegations are sufficient to plead "actual breach or disruption" of the client contracts. Compare Behr Proc. Corp. v. RPM Int'l Inc., 2014 WL 12584385, at *2–4 (C.D. Cal. May 20, 2014) (finding defendant's allegations that plaintiff's alleged interference damaged its "business and goodwill" and "made [defendant]'s performance of the contract more expensive and/or difficult" to sufficiently plead disruption) with Upper Deck Co. v. Panini Am., Inc., 469 F. Supp. 3d 963, 982 (S.D. Cal. June 29, 2020) (dismissing interference with contractual relations claim when plaintiff did "not allege that its contract with [a third party] ha[d] been terminated, that its terms ha[d] changed, or that performance ha[d] become more costly or burdensome as a result of" the alleged interference).

Accordingly the Court **DENIES** ConsumerDirect's motion to dismiss Array's First and Fifth Counterclaims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-cv-01968-JVS (ADSx)                              Date  August 25, 2022

Title  ConsumerDirect, Inc. v. Pentius, LLC et al.

**B.  Intentional Interference with Prospective Economic Advantage (Second and Sixth Counterclaims)**

ConsumerDirect next argues that the Second and Fifth Counterclaims for intentional interference with prospective economic advantage should be dismissed for similar reasons.

Under California law, the elements of a claim for intentional interference with prospective economic advantage are "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." Roy Allan Slurry Seal, Inc. v. Am. Asphalt South, Inc., 2 Cal. 5th 505, 213 (2017).

Unlike tortious interference with contractual relations requires pleading the existence of a legally binding contract, this tort only requires an "economic relationship between the [the party asserting the claim] and some third party, [which carries] the probability of future economic benefit to [the claimant]." Ixchel Pharma, LLC v. Biogen, Inc., 9 Cal. 5th 1130, 1141 (2020) (internal quotation omitted). ConsumerDirect argues that Array fails to do this for the same reasons it stated that Array failed to identify any valid contracts to state its interference with contractual relations claim—i.e., it did not identify specific relationships. However, the Court rejects those arguments here for the same reasons it did so above. Array alleges that ConsumerDirect interfered with its relationships with the three major credit bureaus to acquire consumer credit information, and relationships with potential clients to license their software and infrastructure. "A number of courts have held that specifying a third party group is sufficient to state a claim [for intentional interference with prospective economic advantage], even if the plaintiff does not individually name each member of the group." Luxpro Corp. v. Apple Inc., 2011 WL 1085027, at *7 (N.D. Cal. 2011) (finding allegations that defendant interfered with existing economic relationships with its "retailers, distributors and suppliers" sufficient to plead the first element of intentional interference with prospective economic advantage claim) (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

ConsumerDirect argues that "[f]or the same reasons stated above, Array also fails to allege adequate facts establishing ConsumerDirect's knowledge of the unspecified relationship(s), or how the relationship(s) were actually disrupted or how that disruption actually caused harm to Array." Mot. at 6. The counterclaims adequately plead knowledge by alleging that ConsumerDirect knew that Array needed an agreement with one or more of the bureaus and "targeted" them to "incapacitate" Array but cutting off its ability to obtain credit data (Countercl., ¶¶ 9, 26, 38); and that "ConsumerDirect knew that Array had the existing or prospective economic relationships including because some of the clients were active or former clients of Consumer Direct" (id. ¶ 52). Likewise, Array adequately pleads actual disruption by alleging, for example: "investors were dissuaded from investing in Array and Array lost potential clients" (id. ¶ 55); "at least one credit bureau sought and received significant concessions from Array that it would not have otherwise" (id. ¶ 84). See Logistick, Inc. v. AB Airbags, Inc., 543 F. Supp. 3d 881, 893 (S.D. Cal. June 15, 2021) (finding allegations that defendant made false statements about plaintiff's products sufficient to allege actual disruption because it was "reasonable to infer that [the] allegedly false statement . . . could damage competitors, like [p]laintiff"); Visto Corp. v. Sproqit Techs., Inc., 360 F. Supp. 2d 1064, 1067–68 (N.D. Cal. 2005) (noting that interference with existing and prospective relationships with customers and investors is likely sufficient to show actual disruption). Array alleges that these disruptions caused it to suffer "lost investments, lost profits, expenses, lost goodwill, and other damages." Id. ¶¶ 53, 85.

Finally, ConsumerDirect argues that "Array fails to allege any independently wrongful act." Mot. at 6. An "independently wrongful" act is on that is "proscribed by some constitutional, statutory, regulatory, or common law, or other determinable legal standard." Korea Supply, 29 Cal. 4th at 1138. Because the Court finds that Array has sufficiently pleaded its UCL claim based on the "unfair" prong based on this same conduct, the Court also finds that Array sufficiently pleads an independently wrongful act.

For these reasons, the Court finds that Array's allegations adequately plead a plausible claim for intentional interference of prospective economic advantage and **DENIES** ConsumerDirect's motion to dismiss the Second and Sixth Counterclaims.

**C.     Trade Libel (Third and Seventh Counterclaims)**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

ConsumerDirect next moves to dismiss Array's Third and Seventh Counterclaims for trade libel.

California law defines trade libel "as 'an intentional disparagement of the quality of property, which results in pecuniary damage.'" Aetna Cas. & Sur. Co. v. Centennial Ins. Co., 838 F.3d 346, 351 (9th Cir. 1988) (quoting Erlich v. Etner, 224 Cal. App. 2d 69, 73 (1964)). The elements of trade libel are (1) a false publication, (2) that induces others not to deal with the party, and (3) special damages. Id. The California Supreme Court has cautioned that construing these elements too broadly could lead to "vexatious lawsuits over perceived slights" between competitors. See Hartford Cas. Ins. Co. v. Swift Distrib., Inc., 49 Cal. 4th 277, 294 (2014) (internal quotations omitted). Accordingly, certain elements of trade libel claims require specific allegations. Rumble, Inc. v. Daily Mail & Gen. Trust PLC, 2020 U.S. Dist. LEXIS 89832, at *11 (C.D. Cal. Feb. 12, 2020). For example, the "disparaging" element requires alleging "a false or misleading statement that . . . clearly derogates [the party's] product or business." Id. (quoting Hartford, 59 Cal. 4th at 284).

A trade libel claim must "be based on specific statements." See Films of Distinction v. Allegro Film Prods., 12 F. Supp. 2d 1068, 1081 (C.D. Cal. 1998). Here, Array does not adequately allege a trade libel claim because it does not point to any specific statement underlying its claim. See Rumble, 2020 U.S. Dist. LEXIS, at *13 (dismissing trade libel claim as deficient because it did not reference any specific statements made by defendant to plaintiff); First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008) (dismissing trade libel claim under 12(b)(b) because it failed to give "any indication of who from [the defendant company] made the allegedly libelous statements, to whom they made those statements, when they made the statements, or what exactly they said").

"A cause of action for trade libel requires pleading and showing special damages." Piping Rock Partners, Inc. v. David Lerner Associates, Inc., 946 F. Supp. 2d 957, 981 (N.D. Cal. 2013). "Under federal pleading requirements, '[w]hen items of special damages are claimed, they shall be specifically stated.'" Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) (quoting Fed. R. Civ. P. 9(g)). "Thus, while the requirement that plaintiff plead special damages arises from state law governing a claim for product disparagement, the requirement that special damages be specifically pleaded stems from Fed. R. Civ. P. 9(g)." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

The Court finds that Array has not pleaded special damages with sufficient particularity under Rule 9(g).  The Counterclaim does not allege any specific pecuniary loss as required by this standard.  Rather, it contains "bare allegation[s]" of lost business opportunities, relationships, and reputation.  See Storm Mfg. Group v. Weather Tec Corp., 2013 U.S. Dist. LEXIS 136882, at *27 (C.D. Cal. Sep. 23, 2013).  With regards to this claim, Array alleges that defendants' statements caused it to "suffer[] direct and indirect financial harm."  Id. ¶¶ 63, 92.  These allegations do not rise to the level of identifying "particular purchasers" or "specific transactions" as the cause of action requires.  See Storm Mfg., 2013 U.S. Dist. LEXIS 136882, at *27 (quoting Erlich, 224 Cal. App. 2d at 73–74).  Further, Array's alleged reputational harm is insufficient because an action for trade libel may only be brought to redress pecuniary harm.  Microtec Research, Inc. v. Nationwide Mut. Ins. Co., 40 F.3d 968, 972 (9th Cir. 1994) (noting that an action for trade libel "is based on pecuniary damage").

The Court thus **GRANTS** ConsumerDirect's motion to dismiss the Third and Seventh Counterclaims.

**D.     Violation of California UCL (Fourth and Eighth Counterclaims)**

ConsumerDirect contends that Array's UCL claims (Fourth and Eighth Counterclaims) must be dismissed for (1) failing to allege the monetary loss required to confer standing, (2) failing to state a claim under any prong of the UCL.  Mot. at 7.

California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The three prongs of the UCL are independent of each other and may be asserted as separate claims.  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).

*1.     UCL Standing*

First, ConsumerDirect argues that Array lacks standing to bring its UCL claim because it has not alleged an injury in fact or monetary loss as a result of the unfair competition.  Mot. at 7.

Private enforcement actions under the UCL may only be brought by those who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:21-cv-01968-JVS (ADSx)     Date August 25, 2022

Title ConsumerDirect, Inc. v. Pentius, LLC et al.

have suffered direct economic injury. Cal. Med. Ass'n v. Aetna Health of Cal. Inc., 63 Cal. App. 5th 660, 666 (2021) (citing Amalgamated Transit Union, Local 1756, AFL-CIO v. Sup. Ct., 46 Cal. 4th 993, 1000 (2009); Cal. Bus & Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted exclusively . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.")). This standing requirement is narrower than Article III standing; "[w]hereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property . . . a UCL plaintiff's 'injury in fact' [must] specifically involve 'lost money or property.'"

Array's UCL Counterclaims allege that it "has suffered injury in fact and lost money as a result of ConsumerDirect's unlawful acts and practices and has been irreparably harmed and will continue to suffer irreparable harm by reasons of these violations." Id. ¶¶ 71, 100. ConsumerDirect argues that these allegations alone are conclusory and insufficient to allege an economic injury in fact. See Mot. at 8–9. In its Opposition, Array contends that it has adequately alleged injury in fact by alleging the following in the introduction to its counterclaims: (1) "ConsumerDirect's untruths have caused Array to lose business opportunities, forced Array to expend resources to protect relationships, and required Array to engage in damage control to protect its reputation" (Mot. at 17 (citing Countercl., ¶¶ 8, 32–34)); and (2) "that as a result of ConsumerDirect's false statements about Array, it had to negotiate and accept less favorable terms" with the credit bureaus (id. (citing Countercl., ¶ 42). This is sufficient to allege economic injury under the UCL. See Kwikset, 51 Cal. 4th at 324 (A party has suffered economic injury if it "acquire[d] in a transaction less . . . than [the party] otherwise would have."); Law Offices of Mathew Higbee v. Expungement Assistance Servs., 214 Cal. App. 4th 544, 560–61 (2013) (allegation that "unlawful business practices had taken customers away from [the plaintiff]").

    2.    *UCL Violations*

Array alleges that "ConsumerDirect's acts and practices constitute unlawful, unfair and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, falsely claiming that Array has engaged in fraudulent business practices and does not provide adequate customer service." Countercl., ¶¶ 67, 96. The UCL provides a separate theory of liability under each of its three prongs—unfair, unlawful, and fraudulent. Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

Cir. 2007).

  a. *Unlawful Prong*

  With regard to the UCL's "unlawful prong," ConsumerDirect argues that Array did not allege that it "violated any laws." Mot. at 8. However, Array alleges that "ConsumerDirect's acts and practices are actionable under the unlawful prong of the UCL as they constitute intentional interference with contractual relations and economic advantage and trade libel." Countercl., ¶ 68. The "unlawful" prong of the UCL treats violations of other federal, state, regulatory, or court-made law as unlawful business practices independently actionable under state law. Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003) (citation omitted). Accordingly, Array's claims for intentional interference with contractual relations and prospective relationships and trade libel all suffice to allege an "unlawful" business practice. See CRST Van Expedited, Inc. v. Werner Enters., Inc., 479 F.3d 1099, 1107 (9th Cir. 2007) (holding that intentional interference with contract may form the basis of a UCL claim under the unlawful prong).

  b. *Fraudulent Prong*

  The fraudulent prong of the UCL requires pleading a "fraudulent business practice," meaning "one that is likely to deceive members of the public." Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1235 (2009). To have standing under the UCL's fraud prong, a claim must plead "actual reliance by the [party] seeking relief under [the statute]." Id. Because this claim is based on fraud, the circumstances surrounding the fraud must be alleged with particularity. Fed. R. Civ. P. 9(b); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to UCL claims based on fraud).

  In support of its claim under the "fraudulent" prong, Array alleges that "ConsumerDirect's acts and practices were fraudulent within the meaning of the UCL because they were designed to deceive and defraud Array's consumers and partners." Countercl., ¶ 69. Array argues that it "satisfies the fraud prong by alleging that ConsumerDirect engages in conduct by which 'members of the public are likely to be deceived.'" Opp'n at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

Array does not have standing to challenge Array's statements under the fraudulent prong of the UCL because Array does not allege its own reliance. See O'Connor v. Uber Techs, Inc., 58 F. Supp. 3d 989, 1003 (dismissing a UCL fraudulent prong claim brought by Uber drivers because the drivers "ha[d] not alleged their own reliance on Uber's misrepresentations" but only the reliance of "Uber's *customers*") (emphasis in original); ZL Technologies v. Gartner, Inc., 2009 WL 3706821, at *11 (N.D. Cal. Nov. 4, 2009) (dismissing a UCL fraudulent prong claim where the plaintiff "allege[d] not its own reliance upon the Alleged Defamatory Statements, but that of third parties—potential customers—resulting in a loss of profits and injury to [plaintiff]").

Further, Array does not allege facts in sufficient detail to meet the heightened pleading standard for fraud. While Array alleges that ConsumerDirect made various misrepresentations about it to existing and future clients and the credit bureaus, it does not allege the time, place, persons, statements, and explanations of why the representations are misleading. See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). With the exception of one misrepresentation which Array attributes to "ConsumerDirect's employee," Array alleges that each misrepresentation was made by "ConsumerDirect." This is insufficient under Rule 9(b)'s heightened pleading standard. See UMG Recs., Inc. v. Global Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1108 (C.D. Cal. June 22, 2015) ("Where fraud has allegedly been perpetrated by a corporation, [the claim] must allege the names of the employees or agents who purportedly made the fraudulent representations, or at a minimum identify them by their titles and/or job responsibilities.") (collecting cases).

      c.    *Unfair Prong*

As to the "unfair" prong, Array argues that it "sufficiently pleaded a violation under the unfair prong" by "explain[ing] that ConsumerDirect's conduct 'significantly threatens or harms competition.'" Opp'n at 18 (citing Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal 4th 163, 187 (2005)). Where a competitor brings an action under the unfair prong of the UCL claiming anticompetitive practices, the California Supreme Court has instructed:

> [T]o guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of

Case 8:21-cv-01968-JVS-ADS   Document 167   Filed 08/25/22   Page 15 of 17   Page ID #:2206

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
|---|---|---|---|
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

> some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's "unfair" act or practice invokes section 17200, the word "unfair" in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

Id. at 186–87. Notably, it is not just conduct that threatens a violation of an actual antitrust law that supports a UCL unfairness claim. Equally actionable is conduct that "violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Id. at 186–87. "Injury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws." Id. at 186.

The Counterclaim's allegations sufficiently state a claim under Cel-Tech. Array alleges that ConsumerDirect, a long-time incumbent in the credit monitoring industry, felt threatened by Array's recent entrance and innovations. See, e.g., Countercl., ¶¶ 2, 3. It alleges that Array's products allow financial institutions "to offer more advanced and user-friendly credit score and monitoring services" to their customers, often at no additional expense. Id. ¶¶ 3, 5. Array further alleges that because it does this, "millions of customers . . . have no need to navigate to one of ConsumerDirect's websites or pay ConsumerDirect an additional fee for this information." Id. ¶ 5. Thus, it alleges, ConsumerDirect perceived Array as "an existential threat," "[b]ut instead of finding a way to offer a better and more competitive product," ConsumerDirect "spread lies about Array" to the credit bureaus and Array's current and prospective clients. Id. ¶ 6. Array argues that "[a]s a result, end-customers will not be able to access their credit information from within their financial institutions digital ecosystems and [will be] unable to reap the benefits of Array's innovations that are offered to the end-customers for free." Mot. at 18–19. The crux of Array's allegations is that ConsumerDirect sought to eliminate a new market entrant and deprive consumers of better, lower-priced services so that it did not have to offer a more competitive product. Notably, Array alleges harm to the market as a whole rather than just individual injury to a competitor. This is sufficient to allege that ConsumerDirect's conduct violates "the policy or spirit of [antitrust] laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition." Hodsdon v. Mars, Inc., 891 F.3d 857, 866 (9th Cir. 2018) (citing

Case 8:21-cv-01968-JVS-ADS Document 167 Filed 08/25/22 Page 16 of 17 Page ID #:2207

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:21-cv-01968-JVS (ADSx)    Date  August 25, 2022

Title  ConsumerDirect, Inc. v. Pentius, LLC et al.

Cel-Tech, 20 Cal. 4th at 187); see also Metricolor LLC v. L'oreal S.A., 2020 WL 3802942, at *17 (C.D. Cal. July 7, 2020) ("Although [plaintiff] does not plead specific product or geographic markets, market power, or other allegations typical of claims alleging violations of state or federal antitrust laws, a claim pursuant to the UCL's unfair prong does not necessarily require such specific allegations); FTC v. Qualcomm Inc., 969 F.3d 974, 988 (9th Cir. 2020) ("Antitrust law . . . is aimed at encouraging innovation, industry, and competition") (internal quotation marks omitted); Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP, 592 F.3d 991, 1000 (9th Cir. 2010) ("The very purpose of the antitrust laws . . . is . . . to foster and ensure competition on the merits") (citation omitted); TYR Sport Inc. v. Warnaco Swimwear Inc., 679 F. Supp. 2d 1120, 1132 (C.D. Cal. 2009) ("[O]ne form of antitrust injury is coercive activity that prevents its victims from making free choices between market alternatives.") (citing Amarel v. Connell, 102 F.3d 1494, 1509 (9th Cir.1996)).

   3.   *UCL Remedies*

Lastly, the remedies for UCL violations are limited to injunctive relief and restitution, not monetary damages. Chambers v. Whirlpool Corp., 980 F.3d 645, 2020 WL 6578223, at *7 (9th Cir. 2020). "Restitution is the 'return [of] money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" Loomis, 420 F. Supp. 3d at 1077. ConsumerDirect argues that Array's UCL claim "fail[s] because Array failed to allege any recoverable remedy." Mot. at 9. Array seeks a permanent injunction enjoining and restraining ConsumerDirect from "stating or implying that": "Array has engaged or is engaging in fraudulent conduct"; "Array has engaged in or is engaging in unlawful conduct"; "Array provides or has provided inadequate protection of its clients' and their customers' data"; "Array does not provide or has not provided adequate customer support"; or otherwise "disparaging Array, its officers, agents . . . its services, or its products to actual and potential clients, consumers, or competitors." Countercl., at 29. ConsumerDirect contends that this "requested injunction is unavailable to Array given it would violate the litigation privilege and protected free speech rights." Mot. at 10 (citing Cal. Civ. Code § 47(b); Evans v. Evans, 162 Cal. App. 4th 1157, 1168 (2008) ("An order prohibiting a party from making or publishing false statements is a classic type of an unconstitutional prior restraint"). It also argues that "Array's request for an injunction enjoining ConsumerDirect from '[d]isparaging Array' is unconstitutionally vague and overbroad."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-01968-JVS (ADSx) | Date | August 25, 2022 |
| Title | ConsumerDirect, Inc. v. Pentius, LLC et al. | | |

Id. (citing Evans, 162 Cal. App. 4th at 1169 (holding that an injunction prohibiting any defamatory statements is "invalid as unconstitutionally vague and overbroad"). However, Evans, the case ConsumerDirect cites, continues to say that a party's "right to free speech would not be infringed by a properly limited injunction prohibiting defendant from repeating statements about plaintiff that were determined at trial to be defamatory." Evans, 162 Cal. App. 4th at 1168 (citing Balboa Island Village Inn, Inc. v. Lemen, 40 Cal. 4th 1141, 1155–46 (2007)). Here, Array's claims are based on certain statements that it claims are false and libelous. Accordingly, it may properly seek a "properly limited injunction prohibiting [ConsumerDirect] from repeating statements about [Array]" to the extent the are determined to be defamatory.

For these reasons, the Court **DENIES** ConsumerDirect's motion to dismiss Array's UCL claims under the unlawful and unfair prongs and **GRANTS** the motion with respect to the fraudulent prong.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the motion with leave to amend. The Court finds that oral argument would not be helpful in this matter. Fed R. Civ. P. 78; L.R. 7-15.

**IT IS SO ORDERED.**