**REESE MARKETOS LLP**
Pete Marketos (*Admitted Pro Hac Vice*)
pete.marketos@rm-firm.com
Tyler Bexley (*Admitted Pro Hac Vice*)
tyler.bexley@rm-firm.com
Margaret Terwey
margaret.terwey@rm-firm.com
750 North St. Paul Street, Suite 600
Dallas, Texas 75201
Tel: 214-382-9810
Fax: 214-501-0731

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Moon Hee Lee
moonheelee@quinnemanuel.com
Robert M. Schwartz
robertschwartz@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

Rex Lee (*Admitted Pro Hac Vice*)
rexlee@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Tel: 212-849-7000
Fax: 212-849-7100
*Attorneys for ARRAY US INC.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMERDIRECT, INC., <br>             Plaintiff, <br><br> v. <br><br> ARRAY US, INC. *et al.*, <br>             Defendants. | Civil Action No. 8:21-CV-01968 <br><br> **DEFENDANT ARRAY US, INC.'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> Complaint Filed:   December 1, 2021 <br> Trial Date:        October 26, 2023 <br><br> Assigned to Hon. James V. Selna <br><br> Courtroom 10C |

## NOTICE OF MOTION AND MOTION

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE THAT**, as may be heard by the Court, Courtroom 10C, 10th Floor, located at 411 West 4th Street, Santa Ana, CA 92701-4516, Defendant Array US Inc. will and hereby does move for judgment as a matter of law on ConsumerDirect's claim for intentional interference with an existing contract.

This Motion is made on the grounds that Plaintiff ConsumerDirect, Inc. has failed to present any evidence to support an essential element on which it has the burden of proof for its intentional interference with an existing contract claim. Accordingly, under Federal Rule of Civil Procedure 50, the Court should grant judgment as a matter of law on that claim against ConsumerDirect and in favor of Array.

The Motion is made pursuant to Federal Rules Civil Procedure 50, and is based on this Notice of Motion and Motion, the testimony and other evidence presented during ConsumerDirect's case-in-chief, all other pleadings, records, and papers filed in this action, and upon such matters as may be presented to the Court at a hearing on this Motion.

Dated: November 3, 2023        **REESE MARKETOS LLP**

                               */s/ Tyler Bexley*
                               Tyler Bexley

                               Attorney for ARRAY US INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

To prevail on its claim for intentional interference with an existing contract against Array, ConsumerDirect must prove an actual breach or disruption of its contractual relationship with Kevin Carroll's company, IdentityClub. Dkt. 438 at 5–6 (quoting *Mossimo Holdings, LLC v. Haralambus*, No. CV 14-05912 DDP (JE), 2017 WL 1240739, at *5 (C.D. Cal. Apr. 4, 2017), *aff'd*, 735 F. App'x 383 (9th Cir. 2018)). As set forth in the Pretrial Conference Order, ConsumerDirect's claim is premised on its argument that Array disrupted the White Label Agreement between ConsumerDirect and IdentityClub (the "White Label Agreement") by offering "unfair pricing," which caused Kevin Carroll, the owner of Identity Club, to transfer website traffic to Array instead of ConsumerDirect. Dkt. 438 at 9; Dkt. 246 at 16.

ConsumerDirect has completed its case-in-chief and has failed to present evidence to support the required elements of its claim. As an initial matter, ConsumerDirect's "unfair pricing" narrative fails as a matter of law and finds no support in the evidence. The indisputable evidence has shown that, at the time Array entered into a contract with Kevin Carroll in October 2020, (1) Pentius was permitted to merge 1B reports into 3B reports without paying premium pricing,[1] and (2) there was no price floor in the agreement between Pentius and TransUnion.[2] And as a matter of law, Array was permitted to display consumer credit data fulfilled under the Pentius-TransUnion contract because Array was an "affiliate" of Pentius as that term is defined in the contract.[3] Without its "unfair pricing" narrative, ConsumerDirect simply has no viable claim.

---

[1] Trial Tr. Day 4 Vol. II at 7:6–19 (Greaux).

[2] *Id.* at 42:6–9 (Greaux).

[3] JX485, at 1 (defining affiliate as "any corporation, partnership or legal entity, which is controlled or owned by Pentius, Inc. or shall have common control and/or common ownership to Pentius, Inc"); Trial Tr. Day 4 Vol. II at 37:10–14, 62:18–25 (Greaux).

More fundamentally, ConsumerDirect also failed to present any evidence of a breach or disruption of the White Label Agreement. ConsumerDirect's own witnesses conceded that none of the actions undertaken by Carroll or his company, DataOne, LLC, violated the terms of the White Label Agreement. Accordingly, a reasonable jury does not have legally sufficient evidence to find for ConsumerDirect on its claim for intentional interference with an existing contract for three reasons: (1) ConsumerDirect's agreement with IdentityClub does not govern Data One; (2) Carroll was free to create a new business entity to do business with Array; and (3) Carroll was not subject to a requirement to send ConsumerDirect a minimum amount of business. The Court should therefore resolve this claim against ConsumerDirect and grant this motion for judgment as a matter of law in favor of Array.

## I.   BACKGROUND

One of ConsumerDirect's remaining claims in this case is that Defendants intentionally interfered with ConsumerDirect's contract with its customer, IdentityClub. Dkt. 438 at 4. In 2019, ConsumerDirect and Kevin Carroll, on behalf of Consumer Edge, Inc., executed the White Label Agreement and created a white label for its website, www.identityclub.com. JX172. The White Label Agreement was executed by Kevin Carroll on behalf of Consumer Edge, Inc. *Id.* at 16. Carroll and Array later executed a service agreement on behalf of a different entity, DataOne LLC, under which Array would provide white label services to the website idclub.com. JX218.

ConsumerDirect contends that Array intentionally interfered with ConsumerDirect's existing contract by offering lower (or, according to ConsumerDirect, "unfair") prices to induce Carroll to sign a new white label agreement with Array. ConsumerDirect claims that Array induced a "breach or disruption" because "Mr. Carroll notified ConsumerDirect in January 2021 that he wished to terminate the relationship and transferred website traffic to Array. This resulted in ConsumerDirect's revenue from IdentityClub decreasing significantly,

causing ConsumerDirect approximately $4.3 to 7.7 million in lost profits." Dkt. 246 at 16; *see also* Dkt. 438 at 9.

At trial, ConsumerDirect conceded that Consumer Edge, Inc. never terminated the White Label Agreement with ConsumerDirect and that the agreement is still in existence today. Trial Tr. Day 2 AM 116:24-117:10 (Ortiz). Thus, ConsumerDirect's sole remaining theory of liability for its intentional interference with an existing contract claim is that the White Label Agreement was disrupted because Carroll directed website traffic to Array through idclub.com instead of to ConsumerDirect through identityclub.com. There was no evidence presented at trial to support this theory.

## II. LEGAL STANDARD

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50. "'Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion.'" *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008), *cert. denied by Roberts v. Torres*, 556 U.S. 1183 (2009) (quoting *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002)). "In other words, '[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the nonmoving party's favor.'" *Id.* (quoting *El–Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005)). "Failure of proof on an essential element of a claim entitles the moving party to judgment as a matter of law." *United National Maintenance, Inc. v. San Diego Convention Center Corp., Inc.*, 2012 WL 12845620, at *3 (S.D. Cal. Sep. 5, 2012) (citing *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

### III. ARGUMENT

To prevail on a claim for interference with contract, ConsumerDirect must prove that the contracting party, IdentityClub, breached or violated a provision of the White Lablem Agreement. *See Rachford v. Air Line Pilots Ass'n, Int'l*, 248 F. App'x 473, 475 (9th Cir. 2008) (affirming dismissal of interference claim that was premised on the disruption of a purported obligation that did not exist under the contract). ConsumerDirect has not even identified a provision of the White Label Agreement that IdentityClub breached or violated, and there is no evidence of any such violation.

**A.  The White Label Agreement governed only Consumer Edge and IdentityClub.com, not DataOne or IDClub.com.**

First, ConsumerDirect's theory of liability fails because, as ConsumerDirect's own witnesses conceded, Kevin Carroll is free to contract and do business with Array through DataOne. The White Label Agreement only controls Consumer Edge, Inc. and the IdentityClub.com domain. Nothing in the White Label Agreement references or applies to DataOne, LLC or idclub.com—the entity and website that contracted with Array.

DataOne is not bound by the terms of the White Label Agreement. Section 1.11 of the White Label Agreement provides for an "Exclusive Period" during which IdentityClub agrees to "use ConsumerDirect as its exclusive provider of the Product for three (3) years from the commencement of the Agreement unless agreed to otherwise by both parties[.]" JX172 at 2. Under the terms of the White Label Agreement, the term "Partner" refers to "ConsumerEdge, Inc." and "Product" means "a version of ConsumerDirect's website Smartcredit.com built in a white label format for Partner with the specifications included on Schedule E – named 'www.IdentityClub.com,' which is attached and incorporated into this Agreement." *Id.* at 1-2. In contrast, Carroll's agreement with Array relates to a different entity and a different website. The client with Array is defined as "DataOne LLC" and the website URL is listed as "idclub.com." JX218. In the portion of Carroll's deposition

played during trial, Carroll testified that there was no relationship between DataOne, LLC and identityclub.com. Carroll Dep. 93:21-23.

The evidence at trial supports this interpretation of the two agreements. ConsumerDirect's witness, Angela Ortiz, conceded at trial that the exclusive period in ConsumerDirect's White Label Agreement applied *only* to the website identityclub.com. Trial Tr. Day 2 Vol. I at 117:24-119:20 (Ortiz). The website subject to Carroll's agreement with Array—idclub.com—is not listed in the White Label Agreement and is thus not subject to it. *Id.* In fact, another ConsumerDirect witness, Steve Reger, conceded that if Carroll wanted to do business with ConsumerDirect related to the website idclub.com, Carroll would have had to sign an entirely new white label agreement with ConsumerDirect. Trial Tr. Day 2 Vol. II at 44:14-23 (Reger).

The parties involved in this litigation are sophisticated businesses. Had ConsumerDirect intended a broader exclusivity provision that reached affiliates of Consumer Edge, Inc. or other websites beyond identityclub.com, it could have drafted the White Label Agreement to include that language. It did not. "When a contract is reduced to writing," the intent of the parties "is to be ascertained from the writing alone, if possible." *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (quoting Cal. Civ. Code § 1639). Where a contract's language is "clear and explicit, it governs." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992); *see also* Cal. Civ. Code §1638. Here, the White Label Agreement, by its own clear and explicit terms, did not bind DataOne, LLC or idclub.com. Accordingly, Array's conduct in contracting with DataOne, LLC or idclub.com—or DataOne, LLC's conduct in directing traffic via idclub.com to Array—did not cause a breach or disruption of ConsumerDirect's White Label Agreement with IdentityClub, and judgment on ConsumerDirect's intentional interference claim should be granted against it.

B.  **Nothing in the White Label Agreement prevented Kevin Carroll from starting a new entity to do business under a new white label with Array.**

ConsumerDirect's theory also fails because ConsumerDirect has presented no evidence that the White Label Agreement limited Kevin Carroll's ability to create a new entity that could do business with Array through a different website under a new agreement. As discussed, the exclusivity provisions in the White Label Agreement were limited to Consumer Edge, Inc. and identityclub.com. JX172 at 1-2. There were no provisions that prevented Carroll from creating a new company and a new website to do business with a different provider. *See* JX172; Trial Tr. Day 2 Vol. I at 119:13-20 (Ortiz) (testifying that she did not know of anything that was "unfair about starting a new business and then turning into a contract on behalf of that business with Array").

In fact, the evidence shows that ConsumerDirect itself endorses this practice and encourages its own potential clients to create new business entities to move business from their existing partners to ConsumerDirect. For example, in an email describing her attempts to get business from another company, "Smart Financial Technologies," Ortiz noted that the company's business was currently with an Array White Label and ConsumerDirect would have to "create a separate business entity since they have exclusivity with our competitor." *See* JX104; Trial Tr. Day 2 Vol. I at 120:17-121:21 (Ortiz). Ortiz conceded that conduct is exactly what Carroll did in structuring his business with Array. *Id.* at 121:22-122:1. And, as discussed previously, Carroll would have had to sign an entirely new agreement with ConsumerDirect if he had wanted ConsumerDirect to create a white label for idclub.com. Trial Tr. Day 2 Vol. II at 44:14-23 (Reger).

The evidence shows, and ConsumerDirect concedes, that Carroll's conduct in doing business with Array through Data One did not breach IdentityClub's White Label Agreement with ConsumerDirect. At most, ConsumerDirect appears to suggest that Array interfered with a prospective business relationship between

ConsumerDirect and idclub.com, but ConsumerDirect's claim for intentional interference with a prospective business relationship has been dismissed from the case. Dkt. 311 at 24. Based on the clear and explicit language of the White Label Agreement, the Court should grant judgment in favor of Array on ConsumerDirect's intentional interference claim because Carroll's creation of a new entity to do business with Array did not breach or disrupt ConsumerDirect's White Label Agreement with IdentityClub.

### C. Nothing in the White Label Agreement required Kevin Carroll to maintain a minimum volume of business with ConsumerDirect.

Finally, ConsumerDirect's theory fails because there are no provisions in the White Label Agreement that required Kevin Carroll to send a minimum volume of business to ConsumerDirect.[4] ConsumerDirect presented no evidence that Carroll failed to perform under the White Label Agreement. Although the White Label Agreement provides that Consumer Edge, Inc. must use ConsumerDirect "as its exclusive provider" of white label services for identityclub.com during the term of the Agreement, JX 172 at 2, there are no provisions requiring that identityclub.com direct a certain or minimum volume of business to ConsumerDirect, *see generally* JX172. In other words, by complaining that Array is liable for its lost identityclub.com traffic, ConsumerDirect is attempting to obtain more than it bargained for in the White Label Agreement.

IdentityClub never terminated the White Label Agreement, and identityclub.com continues to operate as a white label of ConsumerDirect. Trial Tr.

---

[4] On the eve of trial, ConsumerDirect attempted to introduce a new theory that Array is liable for interference with the White Label Agreement because it allegedly caused IdentityClub to breach Section 3.2.2 in the White Label Agreement, which governs *marketing* obligations, not volume. Dkt. 455. This new theory was not included in the Pretrial Conference Order, and the Court ruled that it was excluded from the case. Trial Tr. Day 3 Vol. I at 4:2-5. And even if the Court had not excluded this theory, Section 3.2.2 does not impose a volume requirement.

Day 2 Vol. I at 116:24–117:10 (Ortiz). Mr. Carroll's decision to send certain affiliate business to his idclub.com white label with Array does not breach any provision of the ConsumerDirect White Label Agreement and is not a disruption of that contract.

## IV. CONCLUSION

For the foregoing reasons, Array respectfully requests that the Court grant judgment as a matter of law in favor of Array and against ConsumerDirect as to ConsumerDirect's claim for intentional interference with an existing contract.

Dated: November 3, 2023           **REESE MARKETOS LLP**

                                  */s/ Tyler Bexley*
                                  Tyler Bexley

                                  Attorney for ARRAY US INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Array US Inc., certifies that this brief contains 2,339 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 3, 2023           **REESE MARKETOS LLP**

                                  */s/ Tyler Bexley*
                                  Tyler Bexley

                                  Attorney for ARRAY US INC.